**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Attorney for Plaintiff*
- additional counsel on signature page -

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE W. MAY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KUSHCO HOLDINGS, INC., NICHOLAS KOVACEVICH, CHRISTOPHER TEDFORD, JIM MCCORMICK, and CHRIS MARTIN. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joe W. May ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and

announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding KushCo Holdings, Inc. ("KushCo" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired KushCo securities between July 13, 2017 and April 9, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     KushCo was founded in 2010 and is headquartered in Garden Grove, California.  The Company was formerly known as Kush Bottles, Inc. and changed its name to KushCo Holdings, Inc. in September 2018.

3.     KushCo primarily engages in the wholesale distribution of packaging supplies in the United States, Canada, Europe, and internationally.  KushCo offers pop-top bottles; child resistant exit, paper exit, and foil barrier bags; tubes; and polystyrene, silicone-lined polystyrene or glass containers.  KushCo also provides vaporizer cartridges,

heating technologies, batteries, and disposable units; and hydrocarbon gases, including isobutene, n-butane, propane, ethanol, pre-mixes, custom blends, and other solvents.

4.      KushCo's products are used by urban farmers, green house growers, and medical and recreational cannabis dispensaries.  In addition, KushCo operates a creative design agency for cannabis and non-cannabis clients that provide brand strategy, design and marketing, Web application development, and e-commerce solutions.  KushCo sells its products directly, as well as through website and re-distributors.

5.      In the past several years, KushCo has expanded its services through the acquisition of several companies in the cannabis industry.  For example, in May 2017, KushCo acquired CMP Wellness LLC ("CMP Wellness"), a privately-held manufacturer and distributor of Med-ePen brand vaporizer pens, cartridges, tanks, and accessories. Then, in May 2018, KushCo acquired Summit Innovations, LLC ("Summit"), a distributor of hydrocarbon products, such as propane and butane, to the legal cannabis industry. Finally, in July 2018, KushCo acquired The Hybrid Creative ("Hybrid"), a self-described premier creative agency for cannabis ventures, including branding, marketing, web, and strategy.

6.       Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) KushCo made material accounting errors in connection with its acquisitions of CMP Wellness, Summit, and Hybrid; (ii) as a result, KushCo's previously

issued financial statements as of and for the fiscal years ended August 31, 2018 and August 31, 2017, included in the Company's Annual Reports on Form 10-K for such periods, and financial statements as of and for the quarterly periods ended May 31, 2017, November 30, 2017, February 28, 2018, May 31, 2018 and November 30, 2018, included in the Company's Quarterly Reports on Form 10-Q for such periods, could not be relied upon; (iii) KushCo's net loss for the fiscal year ended August 31, 2018, was more than twice as high than previously reported; (iv) KushCo and its management's assurances that its financial statements for those fiscal years and periods were accurate and fairly reported could not be relied upon; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

7.     On April 9, 2019, KushCo issued a press release, attached as an exhibit to the Company's Current Report on Form 8-K (the "April 2019 8-K"), announcing the Company's decision to restate prior period financial statements for fiscal years 2017 and 2018 for non-cash items related to acquisitions of CMP Wellness, Summit, and Hybrid.

8.     Specifically, the April 2019 8-K disclosed that KushCo had inaccurately accounted for certain shared-settled contingent consideration relating to its CMP Wellness, Summit, and Hybrid acquisitions, by recording their respective earnout arrangements as equity rather than as liabilities, stating, in relevant part:

> On April 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of KushCo Holdings, Inc. (the "Company"), after discussion with management of the Company and the Company's independent registered public accounting firm, RBSM LLP ("RBSM"), concluded that ***the Company's previously issued audited consolidated financial statements as***

*of and for the fiscal years ended August 31, 2018 and 2017 included in the Company's Annual Reports on Form 10-K for such periods and unaudited condensed consolidated interim financial statements as of and for the fiscal periods ended May 31, 2017, November 30, 2017, February 28, 2018, May 31, 2018 and November 30, 2018 included in the Company's Quarterly Reports on Form 10-Q for such periods should no longer be relied upon. Similarly, management's reports on the effectiveness of internal controls over financial reporting, earnings releases, and investor communications describing the financial statements for the periods described above should no longer be relied upon.*

As part of preparing its condensed consolidated interim financial statements as of and for the fiscal period ended February 28, 2019, *the Company identified inadvertent errors in the accounting for certain shared-settled contingent consideration ("Contingent Consideration") relating to the Company's acquisition of CMP Wellness in May 2017, Summit Innovations in May 2018, and Hybrid Creative in July 2018. In connection with those acquisitions, Contingent Consideration relating to the respective earnout arrangements were recorded as equity. Upon further evaluation, the Company determined that the Contingent Consideration should have been accounted for as liabilities with changes in the fair value recorded in the Company's consolidated statements of operations.*

\* \* \*

The Company expects the corrected misstatements to have the following impact on its restated annual consolidated financial statements:

- *Increase net loss from $10.2 million to $24.3 million during its fiscal year ended August 31, 2018*;
- Increase net income from $0.1 million to $1.7 million during its fiscal year ended August 31, 2017;
- No impact on its net revenue or gross profit for any of the restated fiscal periods; and
- No impact on its cash flows from operations for any of the restated fiscal periods.

The Company intends to file such amended reports as soon as practicable.

*Management has concluded that the Company's internal control over financial reporting and its disclosure controls and procedures were not*

*effective as of the end of the respective restatement periods.* The Company will amend any disclosures pertaining to its evaluation of such internal controls and procedures, as appropriate, in connection with the amended 10-K and 10-Q filings. In February 2019, the Company engaged a national accounting advisory firm to assist with the design and implementation of its internal controls over financial reporting based on the criteria established in *Internal Control - Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission.

(Emphases added).

9.     On this news, KushCo's stock price fell $0.45 per share, or 7.76%, to close at $5.35 on April 10, 2019.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of KushCo' securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  KushCo is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired KushCo securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant KushCo is a Nevada corporation with its principal executive offices located at 11958 Monarch Street, Garden Grove, California 92841.  KushCo's securities trade in an efficient market on the OTC Market Group's OTCQB Over-the-Counter Bulletin Board ("OTCQB") under the symbol "KSHB."

17.     Defendant Nicholas Kovacevich ("Kovacevich") has served as the Chief Executive Officer ("CEO") of KushCo at all relevant times, and has served as Chairman of KushCo since November 18, 2017.  Kovacevich is one of KushCo's co-founders.

18.     Defendant Christopher Tedford ("Tedford") has served as the Chief Financial Officer ("CFO") of KushCo since November 2018.

19.     Defendant Jim McCormick ("McCormick") served as the CFO of KushCo from August 2017 until November 2018, and as Chief Operating Officer of KushCo from January 2018 until March 2019.

20.     Defendant Chris Martin ("Martin") served as the CFO of KushCo from July 2014 until July 2017.

21.     The Defendants referenced above in ¶¶ 17-20 are sometimes referred to herein collectively as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS
### Background

23.     KushCo was founded in 2010 and is headquartered in Garden Grove, California. The Company was formerly known as Kush Bottles, Inc. and changed its name to KushCo Holdings, Inc. in September 2018.

24.     KushCo primarily engages in the wholesale distribution of packaging supplies in the United States, Canada, Europe, and internationally. The Company offers

pop-top bottles; child resistant exit, paper exit, and foil barrier bags; tubes; and polystyrene, silicone-lined polystyrene or glass containers.  It also provides vaporizer cartridges, heating technologies, batteries, and disposable units; and hydrocarbon gases, including isobutene, n-butane, propane, ethanol, pre-mixes, custom blends, and other solvents.

25.     KushCo's products are used by urban farmers, green house growers, and medical and recreational cannabis dispensaries.  In addition, it operates a creative design agency for cannabis and non-cannabis clients that provide brand strategy, design and marketing, Web application development, and e-commerce solutions.  KushCo sells its products directly, as well as through Website and re-distributors.

26.     In the past several years, KushCo has expanded its services through the acquisition of several companies in the cannabis industry.  For example, in May 2017, KushCo acquired CMP Wellness, a privately-held manufacturer and distributor of Med-ePen brand vaporizer pens, cartridges, tanks, and accessories.  Then, in May 2018, KushCo acquired Summit, a distributor of hydrocarbon products, such as propane and butane, to the legal cannabis industry.  Finally, in July 2018, KushCo acquired Hybrid, a self-described premier creative agency for cannabis ventures, including branding, marketing, web, and strategy.

**Materially False and Misleading Statements Issued During the Class Period**

27.     The Class Period begins on July 13, 2017, when KushCo filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating

results for the quarterly period ended May 31, 2017 (the "3Q 2017 10-Q").  For the period, KushCo reported a net income of $0.01 million, or $0.00 per diluted share, on net revenue of $4.72 million, compared to a net income of $0.02 million, or $0.00 per diluted share, on net revenue of $2.32 million for the same period the prior fiscal year.

28.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration equity, the 3Q 2017 10-Q stated, in relevant part:

> In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent equity consideration of $10,763,760. The fair value of the contingent equity consideration is recorded in additional paid in capital.

> The acquisition is accounted for under the acquisition method of accounting in accordance with Accounting Standards Codification Topic 805, Business Combinations ("ASC 805"). As such, CMP's assets acquired and liabilities assumed are recorded at their acquisition-date fair values. The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of assets acquired and liabilities assumed is allocated to goodwill. Pursuant to ASC 805, the contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

29.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration liability, the 3Q 2017 10-Q stated, in relevant part:

The Company has a contingent consideration liability of $1,785,375, which consists of contingent cash consideration of $1,735,375 resulting from the acquisition of CMP . . . . The contingent consideration liability is calculated based on the weighted average probability of meeting certain milestones. This liability is remeasured at each reporting period. The Company had no financial assets or liabilities that are measured at fair value on a recurring basis as of August 31, 2016.

* * *

During the three months ended May 31, 2017, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,785,375 from its inception date of May 1, 2017 and May 3, 2017.

30.     Additionally, while the 3Q 2017 10-Q noted that KushCo's internal control over financial reporting was not effective for that period because of, *inter alia*, missing policies and levels of supervision, it nonetheless minimized current and future risks associated with those weaknesses.  For example, the 3Q 2017 10-Q assured investors that KushCo "believe[s] that the weaknesses identified . . . have not had any material effect on our financial results," and that "[m]anagement believes that despite our material weaknesses . . . our financial statements for the three and nine month periods ended May 31, 2017 are fairly stated, in all material respects, in accordance with U.S. GAAP."  The

3Q 2017 10-Q also stressed that KushCo was "currently reviewing our disclosure controls and procedures related to these material weaknesses" and expected "to implement changes in the current fiscal year, including identifying specific areas within our governance, accounting and financial reporting processes to add adequate resources to potentially mitigate these material weaknesses." The 3Q 2017 10-Q also reassured investors that its management would "continue to monitor and evaluate the effectiveness of our internal controls and procedures and our internal controls over financial reporting on an ongoing basis," and that management was "committed to taking further action and implementing additional enhancements or improvements, as necessary and as funds allow."

31.    As part of "Management's Remediation Plan," the 3Q 2017 10-Q highlighted that KushCo would:  (i) "appoint additional qualified personnel to address inadequate segregation of duties and implement modifications to our financial controls to address such inadequacies"; (ii) "adopt a written whistleblower policy and code of ethics"; and (iii) "appoint an independent board of directors, including board committees related to financial controls and reporting."  The 3Q 2017 10-Q promised that "[t]he remediation efforts set out herein *will* be implemented in the current 2017 fiscal year" (emphasis added).

32.    The 3Q 2017 10-Q also contained merely generic, boilerplate warnings that an error in financial reporting could occur despite KushCo's implementation of internal controls, stating, in relevant part:

Because of its inherent limitations, internal controls over financial reporting may not prevent or detect misstatements. Projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate. All internal control systems, no matter how well designed, have inherent limitations. Therefore, even those systems determined to be effective can provide only reasonable assurance with respect to financial statement preparation and presentation.

33.    Appended as exhibits to the 3Q 2017 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein Defendants Kovacevich and Martin certified that "[t]he [3Q 2017 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934," and that "[t]he information contained in the [3Q 2017 10-Q] fully presents, in all material respects, the financial condition and results of operations or the Company."

34.    On November 28, 2017, KushCo filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended August 31, 2017 (the "2017 10-K"). For fiscal year 2017, KushCo reported a net income of $0.07 million, or $0.00 per diluted share, on net revenue of $18.80 million, compared to a net income of $0.07 million, or $0.00 per diluted share, on net revenue of $8.22 million for fiscal year 2016.

35.    With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration equity, the 2017 10-K stated, in relevant part:

In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout

targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 $1,905,000 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. The fair value of the contingent equity consideration is recorded in additional paid in capital.

\* \* \*

The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of tangible and intangible assets acquired and liabilities assumed is allocated to goodwill. The amount of contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration (number of common shares) was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

36.    With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration liability, the 2017 10-K stated, in relevant part:

The Company has a contingent consideration liability of $1,820,000, which consists of contingent cash consideration of $1,820,000 resulting from the acquisition of CMP . . . . The contingent consideration liability is calculated based on the weighted average probability of meeting certain milestones. This liability is remeasured at each reporting period. The Company had no other financial assets or liabilities that are measured at fair value on a recurring basis as of August 31, 2017 and 2016.

\* \* \*

During the year ended August 31, 2017, the Company recognized a change in the fair value of its contingent consideration liability of $169,625, which increased liability from $1,735,375 to $1,905,000. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000.

37.     Additionally, the 2017 10-K contained substantively the same warnings and reassurances as in ¶¶ 30- 32 above regarding its still-ineffective internal control over financial reporting, including the assurance that KushCo "believe[s] that the weaknesses identified . . . have not had any material effect on our financial results," and that "[m]anagement believes that despite our material weaknesses . . . our financial statements for the year ended August 31, 2017 are fairly stated, in all material respects, in accordance with U.S. GAAP."  However, where the 3Q 2017 10-Q repeatedly asserted that KushCo would make its remedial changes in the Company's 2017 fiscal year, the 2017 10-K now promised that KushCo would implement these changes in the Company's 2018 fiscal year.

38.     Appended as exhibits to the 2017 10-K were signed SOX certifications wherein Defendants Kovacevich and McCormick "certifie[d] to [their] knowledge that the [2017 10-K] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the

information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On January 16, 2018, KushCo filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended November 30, 2017 (the "1Q 2018 10-Q").  For the period, KushCo reported a net income of $0.10 million, or $0.00 per diluted share, on net revenue of $8.85 million, compared to a net loss of $0.16 million, or $0.00 per diluted share, on net revenue of $2.47 million for the same period the prior fiscal year.

40.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration equity, the 1Q 2018 10-Q stated, in relevant part:

> In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 $1,905,000 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. The fair value of the contingent equity consideration is recorded in additional paid in capital.

> * * *

> The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of tangible and intangible assets acquired and liabilities assumed is allocated to goodwill. The amount of contingent consideration was recorded at its estimated fair value as of the acquisition

date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration (number of common shares) was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

41.    With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration liability, the 1Q 2018 10-Q stated, in relevant part:

The Company has a contingent consideration liability of $1,820,000, which consists of contingent cash consideration of $1,820,000 resulting from the acquisition of CMP . . . . The contingent consideration liability is calculated based on the weighted average probability of meeting certain milestones. This liability is remeasured at each reporting period. The Company had no other financial assets or liabilities that are measured at fair value on a recurring basis as of November 30, 2017.

* * *

During the three months ended November 30, 2017, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,820,000.

42.    As with the 3Q 2017 10-Q and 2017 10-K, the 1Q 2018 10-Q once again noted that KushCo's internal control over financial reporting was not effective. Unlike the 3Q 2017 10-Q and 2017 10-K, however, the 1Q 2018 10-Q did not promise to address

the material weaknesses in its financial reporting within the current fiscal year, stating, in relevant part:

> The material weaknesses that existed on August 31, 2017 are described in Part II, Item 9A – Controls and Procedures in our most recent Annual Report on Form 10-K, filed on November 29, 2017. Due to a lack of financial resources and size, we are not able to, and do not intend to, immediately take any action to remediate these material weaknesses. We will not be able to do so until we acquire sufficient financing to do so. We will implement further controls as circumstances, cash flow, and working capital permit.

43.     Nonetheless, as with the 3Q 2017 10-Q and 2017 10-K, the 1Q 2018 10-Q once again reassured investors that their financial statements could be relied upon, minimizing both present and future risks associated with their financial reporting:

> Notwithstanding the assessment that our disclosure controls and procedures were not effective and that there were material weaknesses as identified in this report, we believe that our financial statements fairly present our financial position, results of operations and cash flows for the periods covered thereby in all material respects.
>
> We have taken steps to enhance our internal control over financial reporting and plan to take additional steps to remediate the material weaknesses. Specifically:
>
> > (i)     We appointed additional independent members with public company board experience to our board of directors,
> >
> > (ii)     We added staff to our finance team, and outsourced to third party the assessment of certain complex transactions under US GAAP
> >
> > (iii)     On January 2018, we hired a controller with public company experience
>
> We believe that the measures described above will strengthen our internal control over financial reporting. We expect that our efforts, including design, implementation and testing will continue throughout fiscal year 2018.

44.     Appended as exhibits to the 1Q 2018 10-Q were signed SOX certifications wherein Defendants Kovacevich and McCormick "certifie[d] to [their] knowledge that the Company's [1Q 2018 10-Q] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the information contained in the [1Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     On April 13, 2018, KushCo filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended February 28, 2018 (the "2Q 2018 10-Q").  For the period, KushCo reported a net loss of $7.61 million, or $0.12 per diluted share, on net revenue of $10.36 million, compared to a net income of $0.00 million, or $0.00 per diluted share, on net revenue of $2.97 million for the same period the prior fiscal year.

46.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration equity, the 2Q 2018 10-Q stated, in relevant part:

> In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000. During the six months ended February, a payment of $170,000 was made towards this liability, resulting in a net liability of $1,650,000. During the three months

ended February 28, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,650,000.

\* \* \*

The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of tangible and intangible assets acquired and liabilities assumed is allocated to goodwill. The amount of contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration (number of common shares) was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

47.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration liability, the 2Q 2018 10-Q stated, in relevant part:

The Company has a contingent consideration liability of $1,650,000 which consists of contingent cash consideration of $1,650,000 resulting from the acquisition of CMP . . . . The contingent consideration liability is calculated based on the weighted average probability of meeting certain milestones. This liability is remeasured at each reporting period. The Company had no other financial assets or liabilities that are measured at fair value on a recurring basis as of February 28, 2018.

* * *

During the year ended August 31, 2017, the Company recognized a change in the fair value of its contingent consideration liability of $169,625, which increased liability from $1,735,375 to $1,905,000. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000. During the six months ended February, a payment of $170,000 was made towards this liability, resulting in a net liability of $1,650,000. During the three months ended February 28, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,650,000.

48.     Additionally, the 2Q 2018 10-Q contained substantively the same warnings and reassurances as in ¶¶ 30-32 above regarding its still-ineffective internal control over financial reporting, including the assurance that "[n]otwithstanding the assessment that our disclosure controls and procedures were not effective and that there were material weaknesses as identified" in the 2017 10-K, "we believe that our financial statements fairly present our financial position, results of operations and cash flows for the periods covered thereby in all material respects."

49.     The 2Q 2018 10-Q also touted KushCo's enhanced remedial efforts since the 1Q 2018 10-Q, stating, in relevant part:

We have taken steps to enhance our internal control over financial reporting and plan to take additional steps to remediate the material weaknesses. Specifically:

(i)     We appointed additional independent members with public company board experience to our board of directors, such that our board of directors is now composed of a majority of independent directors;

(ii)    On March 9, 2018, our board of directors formed an Audit Committee composed entirely of independent directors that will, among other things, assist the board of directors in its oversight of the integrity of our financial statements and our financing reporting processes and systems of internal control;

(iii)    We have adopted a Code of Business Conduct and Ethics and a whistleblower policy;

(iv)    We added staff to our finance team, and outsourced to third party the assessment of certain complex transactions under US GAAP; and

(v)    On January 2018, we hired a controller with public company experience

We believe that the measures described above will strengthen our internal control over financial reporting. We expect that our efforts, including design, implementation and testing will continue throughout fiscal year 2018.

50.    Appended as exhibits to the 2Q 2018 10-Q were signed SOX certifications wherein Defendants Kovacevich and McCormick "certifie[d] to [their] knowledge that the Company's [2Q 2018 10-Q] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the information contained in the [2Q 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company. "

51.    On July 13, 2018, KushCo filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended May 31, 2018 (the "3Q 2018 10-Q").  For the period, KushCo reported a net loss of $2.17 million, or $0.03 per diluted share, on net revenue of $12.91 million, compared to a

net income of $0.01 million, or $0.00 per diluted EPS, on net revenue of $4.72 million for the same period the prior fiscal year.

52.     With regard to KushCo's acquisition of CMP Wellness and the Company's subsequent contingent consideration equity, the 3Q 2018 10-Q stated, in relevant part:

> In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000. During the six months ended February, a payment of $170,000 was made towards this liability, resulting in a net liability of $1,650,000. During the three months ended May 31, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,650,000.
>
> * * *
>
> The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of tangible and intangible assets acquired and liabilities assumed is allocated to goodwill. The amount of contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in

retrospective adjustments to the provisional amounts recorded at the acquisition date.

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration (number of common shares) was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

53.     With regard to KushCo's acquisition of Summit and the Company's subsequent contingent consideration, the 3Q 2018 10-Q stated, in relevant part:

The [Summit] acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations.   The consideration paid to the Members of Summit at the closing included the Cash Consideration, consisting of an aggregate of $1.4 million in cash, net of cash received and the Share Consideration, consisting of an aggregate of 1,280,000 shares common stock. $500,000 of the Cash Consideration and approximately 640,000 shares of common stock from the Share Consideration were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants contained in the Merger Agreement. The Members may become entitled to receive earn-out consideration of up to an additional 1,280,000 shares of common stock, in the aggregate, based on the net revenue performance of the Summit business during a one-year period following the closing.

The Company estimated the probability of the contingent consideration at 100% and recorded the earn-out consideration of the additional 1,280,000 shares of common stock in stockholders' equity.

54.     With regard to KushCo's acquisition of CMP Wellness and Summit, and the Company's subsequent contingent consideration liability, the 3Q 2018 10-Q stated, in relevant part:

The Company has a contingent consideration liability of $2,150,000 which consists of contingent cash consideration of $1,650,000 resulting from the

acquisition of CMP and $500,000 resulting from the acquisition of Summit. The contingent consideration liability is calculated based on the weighted average probability of meeting certain milestones. This liability is remeasured at each reporting period. The Company had no other financial assets or liabilities that are measured at fair value on a recurring basis as of May 31, 2018.

* * *

During the nine months ended May 31, 2018, a payment of $170,000 was made towards this liability, an increase of $500,000 resulted from the Summit acquisition, resulting in a net liability of $2,150,000. During the three months ended May 31, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $2,150,000.

55.     The 3Q 2018 10-Q also contained substantively the same warnings and reassurances as in ¶¶ 30-32 above regarding its still-ineffective internal control over financial reporting, including the assurance that "[n]otwithstanding the assessment that our disclosure controls and procedures were not effective and that there were material weaknesses as identified" in the 2017 10-K, "we believe that our financial statements fairly present our financial position, results of operations and cash flows for the periods covered thereby in all material respects."  Additionally, the 3Q 2018 10-Q also touted the same enhanced remedial measures as the 2Q 2018 10-Q, quoted in ¶ 49 above.

56.     Appended as exhibits to the 3Q 2018 10-Q were signed SOX certifications wherein Defendants Kovacevich and McCormick "certifie[d] to [their] knowledge that the Company's [3Q 2018 10-Q] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the

information contained in the [3Q 2018 10-Q]  fairly presents, in all material respects, the

financial condition and results of operations of the Company. "

57.     On November 29, 2018, KushCo filed its Annual Report on Form 10-K with

the SEC, reporting the Company's financial and operating results for the fiscal year ended

August 31, 2018 (the "2018 10-K").  For fiscal year 2018, KushCo reported a net loss of

$10.20 million, or $0.16 per diluted share, on net revenue of $52.08 million, compared to

a net income of $0.07 million, or $0.00 per diluted share, on net revenue of $18.80 for

fiscal year 2017.

58.     With regard to KushCo's acquisition of CMP Wellness and the Company's

subsequent contingent consideration equity, the 2018 10-K stated, in relevant part:

> In accordance with ASC 805, management has evaluated the estimated fair
> value of the contingent consideration based a probability-weighted
> assessment of the occurrence of CMP reaching certain gross profit earnout
> targets. The Company initially recorded a contingent liability for the
> contingent cash consideration of $1,735,375 $1,905,000 and recorded
> contingent equity consideration of $10,763,760. Based on information
> obtained during the fourth fiscal quarter, the Company revised its estimate of
> the contingent cash consideration from $1,735,375 to $1,905,000, and its
> estimate of the contingent equity consideration from $10,763,760 to
> $11,852,400. The fair value of the contingent equity consideration is recorded
> in additional paid in capital.
>
> * * *
>
> The results of operations of CMP were consolidated beginning on the date of
> the merger. Acquisition-related transaction costs are not included as a
> component of consideration transferred, but are accounted for as an expense
> in the period in which the costs are incurred. Any excess of the acquisition
> consideration over the fair value of tangible and intangible assets acquired
> and liabilities assumed is allocated to goodwill. The amount of contingent
> consideration was recorded at its estimated fair value as of the acquisition

date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.

\* \* \*

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration (number of common shares) was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

59.     With regard to KushCo's acquisition of Summit, the 2018 10-K noted an estimated fair value contingent equity consideration of $3,193,907, and a total fair value of consideration and total estimated acquisition consideration of $10,680,666, as adjusted for August 31, 2018, compared to an estimated fair value contingent equity consideration of $7,155,200, and a total fair value of consideration and total estimated acquisition consideration of $15,755,618, as initially reported May 2, 2018.[1]  The 2018 10-K also stated, in relevant part:

The [Summit] acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations.  The

---

[1] For the Summit acquisition, the 3Q 2018 10-Q did not explicitly list an estimated fair value contingent equity consideration of $7,155,200, nor a total fair value of consideration and total estimated acquisition consideration of $15,755,618, as initially reported May 2, 2018.  Instead, the 3Q 2018 10-Q listed these two values as KushCo's contingent company stock consideration and total purchase price, respectively, from the Summit acquisition.

consideration paid to the Members of Summit at the closing included the Cash Consideration, consisting of an aggregate of $905,231 in cash, net of cash received, $187,849 in cash held back and the Share Consideration, consisting of an aggregate of 1,280,000 shares common stock. $187,849 of the Cash Consideration and approximately 640,000 shares of common stock from the Share Consideration were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants contained in the Merger Agreement. The Members may become entitled to receive earn-out consideration of up to an additional 1,280,000 shares of common stock, in the aggregate, based on the net revenue performance of the Summit business during a one-year period following the closing.

60.     With regard to KushCo's acquisition of Hybrid, the 2018 10-K noted an estimated fair value contingent equity consideration of $920,000, and a total fair value of consideration and total estimated acquisition consideration of $4,178,492.  The 2018 10-K also stated, in relevant part:

The [Hybrid] acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations.  The consideration paid to the Members of Hybrid at the closing included the Cash Consideration, consisting of an aggregate of $847,187 in cash, net of cash received, $82,106 in cash held back and the Share Consideration, consisting of an aggregate of 360,000 shares common stock. $82,106 of the Cash Consideration and 162,000 shares of common stock from the Share Consideration were held back by the Company issuable on January 1, 2019. The Members may become entitled to receive earn-out payments of up to $1.37 million, through a combination of cash and stock payments, based on the net revenue performance of the Hybrid business during the period September 1, 2018 through August 31, 2019.

61.     Additionally, the 2018 10-K noted that KushCo's internal control over financial reporting was still ineffective, but that it suffered from fewer material weaknesses, now including only "inadequate segregation of duties consistent with control

objectives" and a "lack of multiple levels of supervision and review." The 2018 10-K also assured investors that while "[c]ertain of the material weaknesses in internal control over financial reporting as of August 31, 2018 . . . remain unchanged from August 31, 2017," KushCo's nonetheless "believe[s] that the weaknesses identified . . . have not had any material effect on our financial results," and that "[m]anagement believes that despite our material weaknesses set forth above, our financial statements for the fiscal year ended August 31, 2018 are fairly stated, in all material respects, in accordance with U.S. GAAP."

62.    Moreover, the 2018 10-K contained substantively the same merely generic, boilerplate warnings that an error in financial reporting could occur despite KushCo's implementation of internal controls, as quoted in ¶ 32 above. The 2018 10-K also noted that it would continue management's remediation plan for its remaining material weaknesses in internal control over financial reporting in KushCo's 2019 fiscal year.

63.    Appended as exhibits to the 2018 10-K were signed SOX certifications wherein Defendants Kovacevich and Tedford "certifie[d] to [their] knowledge that the Company's [2018 10-K] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

64.    Finally, on January 8, 2019, KushCo filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended November 30, 2018 (the "1Q 2019 10-Q"). For the period, KushCo reported

a loss of $8.19 million, or $0.10 per diluted share, on net revenue of $25.32 million, compared to a net income of $0.10 million, or $0.00 per diluted share, on net revenue of $8.85 million for the same period the prior fiscal year.

65.     With regard to KushCo's contingent consideration from its acquisition of CMP Wellness, Summit, and Hybrid, the 1Q 2019 10-Q stated, in relevant part:

> The Company has contingent consideration outstanding associated with its prior business combinations.  The Company accounts for business combinations under the acquisition method and allocates the total purchase price for acquired businesses to the tangible and identified intangible assets acquired and liabilities assumed, based on their estimated fair values as of the acquisition date. A liability for contingent consideration, if applicable, is recorded at fair value as of the acquisition date and, evaluated each period for changes in the fair value and adjusted as appropriate.

> The Company's contingent consideration as of November 30, 2018 was $672,849, consisting of $187,849 from the Summit acquisition and $485,000 from the Hybrid acquisition.

> The Company's contingent consideration as of August 31, 2018 was $754,955, consisting of $187,849 from the Summit acquisition and $532,106 from the Hybrid acquisition.

66.     Additionally, the 1Q 2019 10-Q noted that KushCo's internal control over financial reporting was still ineffective because it suffered from the same material weaknesses identified in the 2018 10-K, as quoted in ¶ 61 above.  The 1Q 2019 10-Q nonetheless continued to tout KushCo's remediation measures, which included the same measures identified in KushCo's 2Q 2018 10-Q and 3Q 2018 10-Q, as quoted in ¶ 49 above, with the addition of KushCo's "hiring of [the Company's] new Chief Financial

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Officer, Christopher Tedford, with significant sales and distribution experience who will focus on the development of the finance and accounting function."

67. Additionally, while the 1Q 2019 10-Q did not contain the same assurances as its previous reports, quoted above, that KushCo and its management believed their financial statements and representations were accurate and fairly presented despite material weaknesses in KushCo's internal controls, the 1Q 2019 10-Q nonetheless assured investors that "[t]here ha[d] been no change in [KushCo's] internal control over financial reporting" regarding "the effectiveness of [KushCo's] internal control over financial reporting" that occurred during the period, "that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

68. Appended as exhibits to the 1Q 2019 10-Q were signed SOX certifications wherein Defendants Kovacevich and Tedford "certifie[d] to [their] knowledge that the Company's [1Q 2019 10-Q] . . . fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended . . . and that the information contained in the [1Q 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

69. The statements referenced in ¶¶ 27-68 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) KushCo made material accounting errors in connection with its acquisitions of

CMP Wellness, Summit, and Hybrid; (ii) as a result, KushCo's previously issued financial statements as of and for the fiscal years ended August 31, 2018 and August 31, 2017, included in the Company's Annual Reports on Form 10-K for such periods, and financial statements as of and for the quarterly periods ended May 31, 2017, November 30, 2017, February 28, 2018, May 31, 2018 and November 30, 2018, included in the Company's Quarterly Reports on Form 10-Q for such periods, could not be relied upon; (iii) KushCo's net loss for the fiscal year ended August 31, 2018, was more than twice as high than previously reported; (iv) KushCo and its management's assurances that its financial statements for those fiscal years and periods were accurate and fairly reported could not be relied upon; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

70.    On April 9, 2019, KushCo issued a press release, attached as an exhibit to the Company's Current Report on Form 8-K, announcing the Company's decision to restate prior period financial statements for fiscal years 2017 and 2018 for non-cash items related to acquisitions of CMP Wellness, Summit, and Hybrid.

71.    Specifically, the April 2019 8-K disclosed that KushCo had inaccurately accounted for certain shared-settled contingent consideration relating to its CMP Wellness, Summit, and Hybrid acquisitions, by recording their respective earnout arrangements as equity rather than as liabilities, stating, in relevant part:

On April 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of KushCo Holdings, Inc. (the "Company"), after discussion with management of the Company and the Company's independent registered public accounting firm, RBSM LLP ("RBSM"), concluded that *the Company's previously issued audited consolidated financial statements as of and for the fiscal years ended August 31, 2018 and 2017 included in the Company's Annual Reports on Form 10-K for such periods and unaudited condensed consolidated interim financial statements as of and for the fiscal periods ended May 31, 2017, November 30, 2017, February 28, 2018, May 31, 2018 and November 30, 2018 included in the Company's Quarterly Reports on Form 10-Q for such periods should no longer be relied upon. Similarly, management's reports on the effectiveness of internal controls over financial reporting, earnings releases, and investor communications describing the financial statements for the periods described above should no longer be relied upon.*

As part of preparing its condensed consolidated interim financial statements as of and for the fiscal period ended February 28, 2019, *the Company identified inadvertent errors in the accounting for certain shared-settled contingent consideration ("Contingent Consideration") relating to the Company's acquisition of CMP Wellness in May 2017, Summit Innovations in May 2018, and Hybrid Creative in July 2018. In connection with those acquisitions, Contingent Consideration relating to the respective earnout arrangements were recorded as equity. Upon further evaluation, the Company determined that the Contingent Consideration should have been accounted for as liabilities with changes in the fair value recorded in the Company's consolidated statements of operations.*

\* \* \*

The Company expects the corrected misstatements to have the following impact on its restated annual consolidated financial statements:

- *Increase net loss from $10.2 million to $24.3 million during its fiscal year ended August 31, 2018*;
- Increase net income from $0.1 million to $1.7 million during its fiscal year ended August 31, 2017;
- No impact on its net revenue or gross profit for any of the restated fiscal periods; and
- No impact on its cash flows from operations for any of the restated fiscal periods.

The Company intends to file such amended reports as soon as practicable.

***Management has concluded that the Company's internal control over financial reporting and its disclosure controls and procedures were not effective as of the end of the respective restatement periods.*** The Company will amend any disclosures pertaining to its evaluation of such internal controls and procedures, as appropriate, in connection with the amended 10-K and 10-Q filings. In February 2019, the Company engaged a national accounting advisory firm to assist with the design and implementation of its internal controls over financial reporting based on the criteria established in *Internal Control - Integrated Framework (2013)* issued by the Committee of Sponsoring Organizations of the Treadway Commission.

(Emphases added).

72.     On this news, KushCo's stock price fell $0.45 per share, or 7.76%, to close at $5.35 on April 10, 2019.

73.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of KushCo' securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired KushCo securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

75. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, KushCo securities were actively traded on the OTCQB. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by KushCo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

76. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

77. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

78. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of KushCo;

- whether the Individual Defendants caused KushCo to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of KushCo securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

79.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

80.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- KushCo  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTCQB and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold KushCo securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

81.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

82.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

83.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

85.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material

facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of KushCo securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire KushCo securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

86.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for KushCo securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about KushCo's finances and business prospects.

87.     By virtue of their positions at KushCo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or

refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

88.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of KushCo, the Individual Defendants had knowledge of the details of KushCo's internal affairs.

89.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of KushCo.  As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to KushCo's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of KushCo securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning KushCo's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired KushCo securities at artificially inflated prices and relied upon the price of the securities,

the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

90.     During the Class Period, KushCo securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of KushCo securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of KushCo securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of KushCo securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

91.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period,

upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

93.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     During the Class Period, the Individual Defendants participated in the operation and management of KushCo, and conducted and participated, directly and indirectly, in the conduct of KushCo's business affairs.  Because of their senior positions, they knew the adverse non-public information about KushCo's misstatement of income and expenses and false financial statements.

95.     As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to KushCo's financial condition and results of operations, and to correct promptly any public statements issued by KushCo which had become materially false or misleading.

96.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which KushCo disseminated in the marketplace during the Class Period concerning KushCo's results of operations.  Throughout the Class Period,

the Individual Defendants exercised their power and authority to cause KushCo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of KushCo within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of KushCo securities.

97.     Each of the Individual Defendants, therefore, acted as a controlling person of KushCo.  By reason of their senior management positions and/or being directors of KushCo, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, KushCo to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of KushCo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

98.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by KushCo.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 30, 2019                    Respectfully submitted,


                                          **POMERANTZ LLP**


                                          */s/ Jennifer Pafiti*
                                          Jennifer Pafiti (SBN 282790)
                                          1100 Glendon Avenue, 15th Floor
                                          Los Angeles, CA 90024
                                          Telephone:  (310) 405-7190
                                          Email:  jpafiti@pomlaw.com

                                          **POMERANTZ LLP**
                                          Jeremy A. Lieberman
                                          J. Alexander Hood II
                                          Jonathan Lindenfeld
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone: (212) 661-1100
                                          Facsimile: (212) 661-8665
                                          Email: jalieberman@pomlaw.com

ahood@pomlaw.com
jlindenfeld@pomlaw.com


**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.   I, _Joe W. May_, make this

declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities

Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against KushCo Holdings, Inc. ("KushCo" or the "Company"), and

authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire KushCo securities at the direction of plaintiffs counsel, or in order to

participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired KushCo securities during the class period, including providing testimony at deposition and trial, if

necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in KushCo

securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

{00322898:1 }

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _4-25-19_
                (Date)

_Joe W. May_
(Signature)

_Joe W. May_
(Type or Print Name)

**KushCo Holdings, Inc (KSHB)**                                                    **May, Joe, W.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|------------------------|----------------------|
| 1/8/2019 | Purchase | 20 | $6.0000 |