1
2
3
4
5

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

6
7
8
9
10
11
12

**GLANCY PRONGAY**
       **& MURRAY LLP**
Robert V. Prongay (SBN 270796)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

13

*Counsel for Lead Plaintiffs and the Class*

14
15

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JOE W. MAY, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>KUSHCO HOLDINGS, INC., NICHOLAS KOVACEVICH, CHRISTOPHER TEDFORD, JIM MCCORMICK, CHRIS MARTIN, and RBSM LLP,<br><br>        Defendants. | Case No. 8:19-CV-00798-JLS-KES<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Lead Plaintiffs Richard Diamond, Charles Capp, and Mun Fye Chang ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their undersigned attorneys, allege the following against Defendants Kushco Holdings, Inc's ("KushCo" or "Company"), Nicholas Kovacevich ("Kovacevich"), Christopher Tedford ("Tedford"), Jim McCormick ("McCormick"), Chris Martin ("Martin" and together with KushCo, Kovacevich, and McCormick, "KushCo Defendants"), and RBSM LLP ("RBSM" and together with the KushCo Defendants, "Defendants"), based upon personal knowledge as to Plaintiffs' own acts, and information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, review and analysis of Defendant Kushco's conference call transcripts, public disclosures, including press releases, United States Securities and Exchange Commission ("SEC") filings, analysts' reports and advisories about the Company, and information readily available from public sources. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action against Defendants on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired KushCo's publicly traded securities from July 13, 2017 through April 9, 2019, both dates inclusive (the "Class Period"). Plaintiffs seek to recover compensable damages Defendants' violations of the federal securities laws caused and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.

2. On April 9, 2019, the KushCo Defendants disclosed that the financial statements the Company publicly disclosed and included in SEC filings during the Class Period **were materially false**. Restating the Company's results for those periods, the KushCo Defendants disclosed that KushCo had materially understated

Amended Class Action Complaint for Violation of the Federal Securities Laws

the liabilities on its balance sheets and, as a result, materially understated its net losses. For Fiscal Year 2018 ("FY2018"),[1] Defendants admitted, they had **understated the $10.2 million net loss Kushco improperly reported by $14.1 million or 238%**. Properly calculated, in FY2018, KushCo suffered a $24.3 million net loss.

3.    On this news, the stock dropped 7.76%, falling $0.45 per share to close at $5.35. As a direct and proximate result of Defendants' knowing or reckless dissemination of materially false financial statements, Plaintiffs and the Class suffered damages.

4.    The KushCo Defendants knew or recklessly disregarded that they had falsified the Company's Class Period financial statements. KushCo is a packaging supplier to the cannabis industry. In 2017 and 2018 KushCo expanded materially, purchasing three companies CMP Wellness, LLC ("CMP") in May 2017, and Summit Innovations, LLC ("Summit") and The Hybrid Creative ("Hybrid") in May and July 2018, respectively. The after the CMP acquisition, for example, KushCo's assets increase nearly five-fold from $9.2 million to approximately $43.7 million. As part of the consideration for each acquisition, Kushco agreed to contingent future stock consideration, commonly referred to as stock "earnouts." That is, KushCo agreed to pay KushCo stock to the sellers of the three companies in amounts related to each acquired company's future performance. These performance based stock awards were variable, dependent on the earnings of the acquired companies post-acquisition .

5.    Generally Accepted Accounting Principles ("GAAP") relating to contingent future stock consideration in business combinations such as Kushco's three acquisitions are simple and straightforward, requiring no judgment whatsoever. Because the stock earnouts were contingent—variable based upon the

---

[1] Kushco's fiscal year ends August 31.

Amended Class Action Complaint for Violation of the Federal Securities Laws

acquired company's performance—GAAP *required* KushCo to record that contingent consideration as a liability. Instead, Defendants recorded those shares as shareholder equity, effectively hiding their true impact on KushCo's financial results.

6.      The KushCo Defendants stated publicly that they applied Accounting Standards Codification ("ASC")[2] Section 805, *Business Combinations* to their accounting for the stock earnouts. To account for contingent stock consideration, ASC 805 plainly refers the issuer to ASC 480, *Distinguishing Liabilities from Equity*. ASC 480-10-25-14 leaves no room for judgment whatsoever. Because Kushco paid contingent consideration in Company shares that varied based on post-acquisition performance, GAAP required KushCo to classify the stock earnouts as liabilities.

7.      Despite claiming to have applied ASC 805, Defendants knowingly or recklessly misclassified as equity instead of liabilities the share earnouts for each acquisition. At the same time, Defendants recorded *properly* as a liability the far smaller amount of post-acquisition, performance-based variable *cash* consideration for the three acquisitions, indicating they knew how to follow ASC 805.

8.      By classifying the stock earnouts as equity instead of liabilities, KushCo avoided having to remeasure periodically the fair value of the stock earnouts, even as, by the end of the Class Period, the combined change in estimated fair value of future stock earnouts rose by over $12 million. Each quarter during the Class Period, therefore, KushCo's financial statements were materially false, hiding from investors the true cost of the acquisitions, materially understating its net losses for almost every quarter, and hiding the potential dilutive effect of the acquisitions on KushCo's stock. Moreover, misclassifying the stock earnouts enabled the

---

[2] The ASC are the current standards that comprise GAAP, the accounting standards that all U.S. public issuers must apply.

Amended Class Action Complaint for Violation of the Federal Securities Laws

Company to avoid earnings volatility associated with accounting for changes in the fair value of these obligations.

9. With knowledge or reckless disregard of their materially false financial statements, the KushCo Defendants in part used KushCo's stock, artificially inflated by their GAAP violations in accounting for the CMP purchase, to pay for the Summit and Hybrid acquisitions. Similarly, during the Class Period KushCo raised money, issuing stock with the benefit of the inflated price of its stock.

10. Defendant RBSM, Kushco's independent registered public accounting firm, certified the Company's financial results for FY2017 and FY2018, stating that Kushco's annual "consolidated financial statements present fairly, in all material respects, the financial position of the Company as of August 31, 2018 and 2017, and the consolidated results of its operations and its cash flows for each of the two years in the period ended August 31, 2018." RBSM concluded that Kushco's financial statements conformed "with accounting principles generally accepted in the United States of America."

11. RBSM's audits, however, were grossly deficient, ignoring Public Company Accounting Oversight Board ("PCAOB") auditing standards. PCAOB auditing standards required RBSM to examine the acquisitions and specifically the accounting for the stock earnouts. KushCo's financial statements, however, failed to comply with simple, straightforward GAAP, requiring no judgment. The simplicity of the GAAP involved together with the impact of the misclassification renders RBSM's opinion, certifying the material accuracy of KushCo's financial statements, knowingly or recklessly false.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

- 4 -

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

14.     Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as KushCo is headquartered in this District, all Defendants conduct business in this District, and a significant portion of both the KushCo Defendants' and RBSM's actions took place within this District.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

16.     Plaintiffs Diamond, Chang, and Capp purchased KushCo common stock during the Class Period as stated in their Certifications (ECF No. 34-2) and Loss Chart (ECF No. 34-3) and suffered losses upon the revelation of the alleged corrective disclosure.

17.     Defendant KushCo was founded in 2010 and is a Nevada corporation with its principal executive offices located at 11958 Monarch Street, Garden Grove, California 92841. KushCo's securities trade in an efficient market on the OTC Market Group's OTC:QB Over-the-Counter Bulletin Board ("OTCQB") under the ticker symbol "KSHB."

18.     Defendant Kovacevich, one of KushCo's co-founders, served as KushCo's Chief Executive Officer ("CEO") at all relevant times and has served as Chairman of KushCo since November 18, 2017. During the Class Period, Kovacevich signed the following SEC filings: the July 13, 2017 10-Q ("3Q 2017 10-Q"); November 28, 2017 10-K ("2017 10-K"); January 16, 2018 10-Q ("1Q 2018 10-Q"); April 13, 2018 10-Q ("2Q 2018 10-Q"); July 13, 2018 10-Q ("3Q 2018 10-Q"); November 29, 2018 10-K ("2018 10-K"); January 8, 2019 10-Q ("1Q

Amended Class Action Complaint for Violation of the Federal Securities Laws

2019 10-Q"). In addition, during the Class Period, Kovacevich signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attached as exhibits to the following SEC filings: 3Q 2017 10-Q; 2017 10-K; 1Q 2018 10-Q; 2Q 2018 10-Q; 3Q 2018 10-Q; 2018 10-K; 1Q 2019 10-Q.

19.    Defendant Tedford has served as KushCo's Chief Financial Officer ("CFO") since November 2018. Tedford lists his own strengths as including SOX Compliance and Business combinations (Integration). Prior to joining KushCo, Tedford was CFO at Confie Seguros and at Pacific Sunwear. During the Class Period, Tedford signed the following SEC filings: 2018 10-K; 1Q 2019 10-Q. In addition, during the Class Period, Tedford signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attached as exhibits to the following SEC filings: 2018 10-K; 1Q 2019 10-Q.

20.    Defendant McCormick served as KushCo's CFO from August 2017 until November 2018, and as KushCo's Chief Operating Officer ("COO") from January 2018 until March 2019. Prior to his time at KushCo, McCormick, a CPA and Certified Internal Auditor ("CIA"), was a regional CFO and CEO for British American Tobacco, CFO of Federal Flange, Inc., CFO of Sodexo's $1.6 billion Corporate Services division, and Executive Vice President at Electronic Cigarettes International Group, Ltd., where he managed all finance functions. During the Class Period, McCormick signed the following SEC filings: 2017 10-K; 1Q 2018 10-Q; 2Q 2018 10-Q; 3Q 2018 10-Q. In addition, during the Class Period, McCormick signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attached as exhibits to the following SEC filings: 2017 10-K; 1Q 2018 10-Q; 2Q 2018 10-Q; 3Q 2018 10-Q. In an August 3, 2017 press release, KushCo announced that it had appointed McCormick as CFO, effective August 1, 2017. About McCormick, the press release stated:

> Mr. McCormick has extensive CFO experience and has demonstrated financial and strategic leadership in his previous roles in the cannabis and tobacco industries. In

- 6 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

his role as Chief Financial Officer, Jim McCormick will lead Kush Bottles' financial operations. He will also be responsible for managing liquidity, balance sheet risk, and capital market transactions to ensure Kush Bottles remains well positioned to capitalize on growth opportunities. He will report directly to Nick Kovacevich, co-founder and CEO.

Mr. McCormick has recently served as a management consultant where he led business development initiatives in the California cannabis sector. Prior to this role, he was Chief Financial Officer at Electronic Cigarettes Group International. Previously, he was also Senior Vice President and CFO, Corporate Services Division at Sodexo. Mr. McCormick spent the majority of his career in British American Tobacco where he held multiple general management and CFO roles internationally over his sixteen year tenure with the firm.

Nick Kovacevich, Co-Founder & CEO, Kush Bottles, commented, "I am pleased to welcome Jim to the Kush Bottles team. Jim is a highly successful senior leader with extensive CFO experience at both start-ups and global companies, complemented by an entrepreneurial spirit. His deep cross-functional understanding of developing and executing financial strategies is expected to help drive sustainable revenue and earnings performance at Kush Bottles. Furthermore, his lobbying experience and network from his time working in both the cannabis and tobacco sectors will be useful assets to the Company as we navigate the complexities of the cannabis industry."

Mr. Kovacevich added, "I would also like to thank Chris for all his contributions as CFO over the past three years. He has been instrumental in building Kush Bottles into the dynamic company it is today and I wish him all the best for his future endeavors."

Jim McCormick, Chief Financial Officer, commented, "Kush Bottles is key player in the emergent legal cannabis industry and I am excited to join the company at a time when it is on the cusp of achieving rapid growth. I hope that, under my strategic direction and leveraging my experience in dynamic regulated industries, the company will go on to achieve even stronger financial results."

21.   Defendant Martin served as KushCo's CFO from July 2014 until July 31, 2017. Before joining KushCo, Martin, a CPA, was the Manager for ten years at the accounting firm Haskell & White, which specializes in assisting clients with accounting services, including auditing, due diligence for mergers and acquisitions,

Amended Class Action Complaint for Violation of the Federal Securities Laws

Sarbanes-Oxley compliance, and ongoing SEC filings. He was subsequently Manager at Billabong, an apparel and fashion company. During the Class Period, Martin signed the following SEC filings: 3Q 2017 10-Q. In addition, during the Class Period, Martin signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attached as exhibits to the following SEC filings: 3Q 2017 10-Q.

22.   Defendant RBSM is an independent registered public accounting firm, claiming to operate offices in eight major cities in the United States, Europe, and Asia. RBSM provides auditing services to publicly and privately held companies, and claims to specialize in both public company audits and SEC reporting. RBSM's headquarters are at 805 Third Avenue, New York, NY 10022. During the Class Period, RBSM audited KushCo's FY2017 and FY2018 consolidated financial statements, issuing Reports Of Independent Registered Public Accounting Firm that KushCo included in its 2017 10-K and its 2018 10-K. In each report, RBSM opined that the Company's financial statements conformed with GAAP "present[ing] fairly, in all material respects, the financial position of the Company as of August 31, 2018 and 2017, and the consolidated results of its operations and its cash flows for the each of the two years in the period ended August 31, 2018." RBSM's office, located at 101 Larkspur Landing, Suite 321, Larkspur, CA 94939, signed the Reports KushCo included in its 2017 10-K and its 2018 10-K.

23.   Defendants Kovacevich, Tedford, McCormick, and Martin are sometimes referred to herein, collectively, as the "Individual Defendants."

24.   The Individual Defendants and Defendant KushCo are referred to herein, collectively, as the "KushCo Defendants."

25.   The KushCo Defendants and Defendant RBSM are referred to herein, collectively, as "Defendants."

26.   Each of the Individual Defendants:

(a)   directly participated in the management of the Company;

Amended Class Action Complaint for Violation of the Federal Securities Laws

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating some or all of the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company;

(g)     signed false certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), attesting to the material accuracy of financial statements and effectiveness of the Company's internal controls; and/or

(g)     approved or ratified false and misleading statements in violation of the federal securities laws.

27.     In each SOX Certification referenced in this Amended Complaint contains the signatory certified that:

1.     I have reviewed this [Quarterly or Annual] Report on Form [10-Q or 10-K] of [Defendant KushCo];

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report,

- 9 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a.  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles ….

28.    In addition, for each periodic report KushCo filed with the SEC, it included a Certification of Periodic Financial Report Pursuant to 18 U.S.C. Section 1350, stating:

The undersigned officer of KushCo Holdings, Inc. (the "Company") hereby certifies to his knowledge that the Company's Annual Report on Form 10-K for the fiscal year ended August 31, 2018 (the "Report") to which this certification is being furnished as an exhibit, as filed with the Securities and Exchange Commission on the date hereof, fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and that the information contained in the Report fairly presents, in

- 10 -

1  all material respects, the financial condition and results of
2  operations of the Company. This certification is provided
   solely pursuant to 18 U.S.C. Section 1350 and Item
3  601(b)(32) of Regulation S-K ("Item 601(b)(32)")
   promulgated under the Securities Act of 1933, as
4  amended (the "Securities Act"), and the Exchange Act. In
   accordance with clause (ii) of Item 601(b)(32), this
5  certification (A) shall not be deemed "filed" for purposes
   of Section 18 of the Exchange Act, or otherwise subject to
6  the liability of that section, and (B) shall not be deemed to
   be incorporated by reference into any filing under the
7  Securities Act or the Exchange Act, except to the extent
   that the Company specifically incorporates it by reference.

8       29.    KushCo is liable for the acts of the Individual Defendants and its

9  employees under the doctrine of *respondeat superior* and common law principles of

10 agency because all of the wrongful acts complained of herein were carried out

11 within the scope of their employment.

12      30.    The scienter of the Individual Defendants and other employees and

13 agents of the Company is similarly imputed to the Company under *respondeat*

14 *superior* and agency principles.

15               **SUBSTANTIVE ALLEGATIONS**

16 *Background and the Acquisitions*

17      31.    KushCo, formerly known as Kush Bottles, Inc.,[3] is a leading ancillary

18 supplier of products and services, supplying packaging, solvents, accessories, and

19 branding solutions to the legal cannabis (medical and recreational) and CBD

20 industries in the United States and internationally. KushCo markets itself as a "one-

21 stop-shop packaging solutions provider." KushCo's largest segment is accessories

22 and cartridges to the Vape industry. Its other segments are Packaging & Labeling,

23 Energy & Natural Products, and Papers & Supplies.

24      32.    In 2017 and 2018 KushCo materially expanded, acquiring three

25 companies, one of which alone increased KushCo's assets nearly five-fold. In 2017

26 _____

27 [3] On September 1, 2018, Kush Bottles, Inc. changed its name to KushCo Holdings,
   Inc. For the sake of clarity, this Amended Complaint will refer to both KushCo
28 Holdings, Inc. and Kush Bottles, Inc. as "KushCo."

Amended Class Action Complaint for Violation of the Federal Securities Laws

it acquired CMP, a privately held distributor of vaporizers, supplies, accessories, and branding solutions for the cannabis industry. In 2018 it acquired Summit, a leading distributor of hydrocarbons to the cannabis industry. Later in 2018 KushCo acquired Hybrid, a premier creative design agency for cannabis and non-cannabis brands.

33.    On May 4, 2017, KushCo filed a Form 8-K announcing the CMP acquisition. The Form 8-K indicated that part of the consideration to be paid for CMP was contingent, namely a variable amount of KushCo stock and/or cash earnouts in the future, depending on the financial performance of CMP after the acquisition.

34.    On April 10, 2018, KushCo filed a Form 8-K announcing the Summit acquisition. The Form 8-K stated that part of the consideration paid for Summit was contingent, namely a variable amount of KushCo stock earnouts in the future, depending on the financial performance of Summit after the acquisition.

35.    On July 12, 2018, KushCo filed a Form 8-K announcing the Hybrid acquisition. The Form 8-K indicated that part of the consideration to be paid for Hybrid was contingent, namely a variable amount of KushCo stock and/or cash earnouts in the future, depending on the financial performance of Hybrid after the acquisition.

*GAAP – Generally*

36.    Generally Accepted Accounting Principles constitute those standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time, and are the common set of accounting principles, standards, and procedures that companies in the United States use to prepare their financial statements.

37.    The SEC has the statutory authority for the promulgation of GAAP for public companies and has delegated that authority to the Financial Accounting Standards Board ("FASB"). FASB's Accounting Standards Codification ("ASC"),

Amended Class Action Complaint for Violation of the Federal Securities Laws

as well as SEC Rules and interpretive releases, represent sources of authoritative GAAP for SEC registrants. ASC 105-10-05-1.

38.     FASB's Statements of Financial Accounting Concepts ("CON __") provide the framework for financial accounting. As stated in FASB's CON 8, "Conceptual Framework for Financial Reporting," the "objective of general purpose financial reporting is to provide financial information about the reporting entity that is useful to existing and potential investors, lenders, and other creditors in making decisions about providing resources to the entity." CON 8 ¶ OB2.

39.     CON 8 provides that financial reports play an important role in the financial decisions of individuals and firms:

> General purpose financial reports provide information about the financial position of a reporting entity, which is information about the entity's economic resources and the claims against the reporting entity. Financial reports also provide information about the effects of transactions and other events that change a reporting entity's economic resources and claims. Both types of information provide useful input for decisions about providing resources to an entity. CON 8 ¶ OB12.

40.     Faithful representation is a primary quality rendering financial information useful. Faithfully represented information must be complete, neutral, and free from error. CON 8 ¶ QC12. To be complete, financial information must include all information necessary for a user to understand the subject depicted, including all necessary descriptions and explanations. CON 8 ¶ QC13. To be neutral, financial information must present financial information without bias in the selection of information presented. CON 8 ¶ QC14. To be free from error does not mean perfectly accurate in all respects; instead, it means that there are no errors or omissions in the description of the phenomenon and the process used to produce the reported information was selected and applied with no errors. CON 8 ¶ QC15.

41.     Another key characteristic of financial information is relevance. Financial information is relevant if it is capable of making a difference in the

Amended Class Action Complaint for Violation of the Federal Securities Laws

decisions made by users. CON 8 ¶ QC6. Information is capable of making a difference if it has predictive value, confirmative value, or both. CON 8 ¶ QC7.[4]

***GAAP for "Business Combinations" and "Distinguishing Liabilities From Equity" – ASC 805 and ASC 480***

42.    GAAP provision ASC 805, "Business Combinations," requires businesses to account for combinations using the acquisition method of accounting. ASC 805-10-25-1. Applying the acquisition method involves allocating purchase price to identifiable assets acquired and liabilities assumed in a business combination as well as recording goodwill.[5] ASC 805-10-05-4. Purchase price (or consideration transferred in a business combination) is generally measured at fair value as the sum of the acquisition date fair values of: assets transferred by the buyer to the seller, the liabilities incurred by the buyer to former owners of the acquired business, and the equity interests issued by the acquirer. Examples of forms of consideration include cash, other assets, contingent consideration, and common or preferred equity instruments. ASC 805-30-30-7. GAAP defines "fair value" as the price that would be received from the sale of an asset or paid to transfer a liability in an orderly transaction between market participants. ASC 820-10-20.

[4] "Financial information has predictive value if it can be used as an input to processes employed by users to predict future outcomes. Financial information need not be a prediction or forecast to have predictive value. Financial information with predictive value is employed by users in making their own predictions. Financial information has confirmatory value if it provides feedback (confirms or changes) about previous evaluations. The predictive value and confirmatory value of financial information are interrelated. Information that has predictive value often also has confirmatory value." CON 8 ¶¶ QC8 – QC10.

[5] Goodwill = consideration transferred (–) Identifiable assets acquired (+) Identifiable liabilities assumed. ASC 805-30-30-1; ASC 805-30-30-7.

Amended Class Action Complaint for Violation of the Federal Securities Laws

43.    "Contingent consideration" – or earnouts – are obligation(s) of the acquirer to transfer additional assets or equity interests to the selling shareholders if future events occur or conditions are met. ASC 805-30-20. Contingent consideration is measured at fair value as of the acquisition date. ASC 805-30-25-5. Earnouts enable the buyer and seller to agree on the terms of a business combination, even though the ultimate value of the business acquired has not been determined. The fair value of a contingent consideration reflects both probability of payment and the time value of money.

44.    A contingent consideration arrangement that is required to be settled in *cash* or other (non-stock) assets must be classified as a liability.[6] However, a contingent consideration arrangement that is required to be (or at the issuer's option can be) settled in *shares* can be classified as either a liability or as equity. ASC 805-30-25-6 directs financial filers to ASC 480-10 for instruction on whether contingent stock consideration should be classified as a liability or as equity, stating "[t]he acquirer shall classify an obligation to pay contingent consideration as a liability or as equity in accordance with Subtopic[] 480-10 …."

45.    A conditional obligation that the issuer must (or may) settle by issuing a variable number of its equity shares **must** be classified as a liability if, at inception, the monetary value of the obligation is based solely or predominantly on, *inter alia*, variations in something other than the fair value of the acquirer's equity shares. ASC 480-10-25-14. Future performance of the acquired company is an example of "something other than the fair value of the acquirer's equity shares."

46.    If all accounting measurements cannot be completed by the first reporting period after the acquisition, the buyer must report its best estimates in the

---

[6] FASB's CON 6, "Elements of Financial Statements," defines a liability as "probable future sacrifices of economic benefits arising from present obligations of a particular entity to transfer assets or provide services to other entities in the future as a result of past transactions or events."

Amended Class Action Complaint for Violation of the Federal Securities Laws

first reporting period, and then adjust those provisional figures and finalize the accounting for business combinations in future reporting periods extending no more than one year (the "measurement period"). ASC 805-10-25-13 through 15. Adjustment is required for assets and liabilities if new information is obtained about the facts and circumstances that existed as of the acquisition date that, if known, would have resulted in the recognition of those assets and liabilities as of that date. ASC 805-10-25-14. Among the required adjustments is consideration paid to the acquirer, including contingent consideration.

47.     During the measurement period, any changes in the fair value of contingent consideration because of information learned after the initial reporting about facts and circumstances that existed at the acquisition date requires a corresponding adjustment to goodwill in the same reporting period(s). The acquirer must recognize in each relevant reporting period the full effect of any change to the provisional amounts calculated as if the accounting had been completed at the acquisition date. ASC 805-10-25-17; ASC 805-30-35-1.

48.     In announcing each of the CMP, Summit, and Hybrid acquisitions, KushCo acknowledged in its SEC filings that ASC 805 governed the accounting for each transaction.

49.     During the Class Period, KushCo represented that it had processes in place for analyzing GAAP provisions relevant to its accounting, including ASC 805, monitored publications for changes or proposed changes in those provisions, and analyzed any changes with respect to their effect on KushCo's accounting. For example, in both the 2017 10-K and 2018 10-K, in the Notes to its consolidated financial statements, under the heading "Recently Issued Accounting Pronouncements," KushCo stated:

> In January 2017, the FASB issued ASU No. 2017-01, *Business Combinations (**Topic 805**): Clarifying the Definition of a Business* (ASU 2017-01), which revises

> the definition of a business and provides new guidance in evaluating when a set of transferred assets and activities is a business. This guidance will be effective for the Company in the first fiscal quarter of 2018 on a prospective basis, and early adoption is permitted. The Company does not expect the standard to have a material impact on our consolidated financial statements. (Emphasis added).

50. While the January 2017 change to ASC 805 is irrelevant to the accounting here, KushCo's Notes in its 10-Ks shows that it analyzed ASC 805 and understood its correct application. KushCo described several other "Recently Issued Accounting Pronouncements" in each 10-K and analyzed the effect of the changed ASC provisions on their financial statements. KushCo further stated that it was aware of even more changes or proposed changes in standards issued by FASB, but it declined to list or discuss those that were unrelated to its financial condition or disclosures.

51. KushCo thus told investors that it was aware of ASC 805's application to its acquisitions, that it understood and had analyzed the earlier version of 805 before applying it to its acquisitions, that it was actively monitoring changes in GAAP standards and procedures, and that upon discovering changes in ASC 805, or other GAAP provisions relevant to its accounting, it analyzed the revised provision to see if the changes affected its accounting for previous or future financial statements.

### Application of ASC 805 and ASC 480 to the CMP, Summit, and Hybrid Acquisitions

52. The analysis of classification of a contingent cash earnout begins with ASC 805. GAAP directs that contingent *cash* earnouts are classified as liabilities. Both the CMP and Hybrid acquisitions involved cash payments. KushCo estimated the fair value of such cash earnouts in each acquisition in amounts far lower than it estimated the fair value of contingent stock earnouts. KushCo understood the GAAP requirements for both types of earnout but applied ASC 805 only to the

- 17 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

smaller cash earnout numbers, correctly classifying the contingent cash earnouts as liabilities. As detailed, *infra.*, when KushCo believed, in a later reporting period, that applying ASC 805 correctly to cash earnouts would negatively impact its income statement, it misapplied ASC 805 with respect to contingent cash earnouts.

53.    ASC 805 also controls classification of contingent *stock* consideration. ASC 805-30-25-6 states that contingent stock consideration must be classified as either liability or shareholders' equity. The distinction is vital, because if classified as a liability, as KushCo belatedly admitted in its restatement should have occurred here with respect to all three acquisitions, the fair value is measured initially *and* in each subsequent reporting period, with changes recognized each reporting period in the Company's income statement. Thus, if classified as a liability, changes in fair value during the subsequent reporting periods would affect earnings, and, if the estimate of fair value of contingent stock payments increased, alert investors to the increased cost of a transaction over the original estimate of consideration transferred to the sellers. If classified as equity, however, contingent stock consideration is not remeasured in subsequent reporting periods and is not accounted for in the income statement, thus hiding from investors the impact of changes in fair value of contingent stock payments on the Company's earnings. ASC 805-30-35-1.

54.    KushCo admitted throughout the Class Period that it knew and understood all of the above. In the July 13, 2017, 3Q 2017 10-Q, issued at the start of the Class Period, discussing the CMP acquisition, KushCo wrote:

> The acquisition is accounted for under the acquisition method of accounting in accordance with Accounting Standards Codification Topic 805, Business Combinations ("ASC 805"). As such, CMP's assets acquired and liabilities assumed are recorded at their acquisition-date fair values. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of assets acquired and

- 18 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

liabilities assumed is allocated to goodwill. ***Pursuant to ASC 805, the contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period***.

55.     With respect to the contingent stock earnout provisions in each of the three deals, ASC 805 directed KushCo's accountants to ASC 480, "Distinguishing Liabilities from Equity," and more specifically to ASC 480-10-25-14, for analysis of whether the contingent stock consideration in each of the three acquisitions was liability or shareholders' equity. As described in detail, *infra.*, in all three of the acquisitions at issue here KushCo stated that the amount of the contingent stock earnout was based on the performance of each acquired entity, and ***not*** on KushCo's share price.

56.     ASC 480-10-25-14 states that:

"a financial instrument other than an outstanding share that embodies a conditional obligation, that the issuer must or may settle by issuing a variable number of its equity shares ***shall be classified as a liability*** if, at inception, the monetary value of the obligation is based solely or predominantly on any one of the following: …. b. ***variations in something other than the fair value of the issuer's equity shares*** …."

57.     Application of GAAP to the facts here is simple and straightforward. The facts here ***mandate*** that the earnout "***shall be classified as a liability***," with absolutely no weighing or judgment of competing factors either required or allowed. KushCo itself disclosed, for each acquisition, that part of the purchase price was a ***conditional obligation*** that it would pay by ***issuing a variable number of its equity shares*** and the extent of the obligation was not based in any way on KushCo's own share price, but on the acquired company's financial performance in periods following the transactions, *i.e.*, ***something other than the fair value of the***

- 19 -

*issuer's equity shares*. Classifying contingent share earnout here as anything other than a liability is an obvious violation of a straightforward GAAP provision, and, at minimum, reckless.

### Accounting for the CMP Acquisition

58.     On May 4, 2017, KushCo filed a Form 8-K announcing the May 4, 2017 CMP acquisition. The transaction summary in the Form 8-K indicated that the two sellers of CMP may be entitled to receive additional consideration in the future (i.e., an earnout) in the form of cash and shares of KushCo's stock:

> The purchase price payable to Jason Manasse and Theodore Nicols at the closing of the merger in exchange for consummating the merger was comprised of an aggregate of $1.5 million in cash, unsecured promissory notes in the aggregate principal amount of approximately $0.77 million, having a one-year maturity, and an aggregate of 7.8 million shares of the Company's common stock. The purchase price is subject to customary post-closing adjustments with respect to confirmation of the levels of working capital and cash held by CMP Wellness, LLC as of the closing**.** During the one year period following the closing, Jason Manasse and Theodore Nicols may become entitled to receive ***up to*** an additional approximately $1.9 million in cash, in the aggregate, and approximately 4.7 million shares of common stock of the Company, in the aggregate, ***based on the future performance of CMP Wellness, LLC.***
>
> \* \* \*
>
> ***The Company may be obligated to issue up to an aggregate of approximately 4.7 million additional shares of the Company's common stock*** to Jason Manasse and Theodore Nicols ***based on the future performance of CMP Wellness, LLC.*** The number of shares issued at closing, and the number of shares that may be issuable after closing, were calculated based on a negotiated price per share of common stock of the Company of $2.50.

59.     By stating that it might have to issue "up to" 4.7 million shares as earnout, KushCo conveyed that its conditional stock obligation ***would be settled by issuing a variable number of its equity shares***. Further, in disclosing that the contingent share earnouts would be based on the future performance of CMP,

Amended Class Action Complaint for Violation of the Federal Securities Laws

1  KushCo admitted that *its conditional obligation was based on something other*
2  *than the price of KushCo's equity shares*.

3      60.     Thus, by May 4, 2017, more than 2 months before the start of the Class
4  Period and more than 2 months before KushCo would first have to account for the
5  CMP acquisition in its financial statements, KushCo knew that application of ASC
6  805 and ASC 480 mandated classifying the contingent stock earnout as a liability to
7  be remeasured during each subsequent reporting period, with changes recorded in
8  the income statement.

9      61.     The CMP Merger Agreement was attached to the May 4, 2017 8-K.
10  The schedule laying out the thresholds for the variable levels of share earnouts was
11  an attachment to the Agreement, but KushCo chose not to publish that schedule,
12  withholding from investors the profit levels necessary to be achieved in order to pay
13  earnouts. KushCo never disclosed the key inputs it used in determining the fair
14  value of contingent considerations, such as specific profitability targets, and its
15  estimation of the probability of CMP reaching each of those gross profit levels in
16  the year after the acquisition.

17      62.     On July 6, 2017, in a Form 8-K/A, KushCo revealed that the value of
18  the potential share earnout was far larger than the potential cash earnout. KushCo
19  again listed the details concerning the CMP earnout provisions, details which
20  mandated classifying the contingent stock earnouts as a liability. Choosing to ignore
21  the straightforward application of ASC 805 and ASC 480, KushCo announced that
22  it would classify contingent stock earnouts differently from contingent cash
23  earnouts:

24          The acquisition consideration consisted of a cash payment
25          of $1,500,000, unsecured promissory notes in the
            aggregate principal amount of approximately $770,820,
26          having a one-year maturity, and an aggregate of 7,800,000
            restricted shares of the Company's common stock. During
            the one-year period following the closing, Jason Manasse
27          and Theodore Nicols may become entitled to receive *up*
            *to* an additional $1,905,000 in cash, in the aggregate, and
28          4,740,960 shares of common stock of the Company, in the

- 21 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

aggregate, ***based on the gross profit generated by CMP for the period from May 1, 2017 to April 30, 2018***. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the preliminary post-closing working capital adjustments amounted to $110,604, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $660,216. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability of CMP reaching certain gross profit earnout targets. ***The Company recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent equity consideration of $10,763,760.***

\* \* \*

The equity consideration received by CMP members was calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price on the acquisition date. The contingent equity consideration was also calculated based on the negotiated price per share of common stock of the Company of $2.50, which approximated the quoted market price.

63. On July 13, 2017, the start of the Class Period, KushCo filed its 3Q 2017 10-Q. The financial statements described the CMP acquisition and the application of ASC 805 to that acquisition:

<u>Acquisition of CMP Wellness, LLC</u>

On May 1, 2017, the Company entered into an agreement of merger agreement with Lancer West Enterprises, Inc, a California corporation, Walnut Ventures, a California corporation, Jason Manasse, an individual, and Theodore Nicols, an individual, pursuant to which each of Lancer West Enterprises, Inc and Walnut Ventures were merged with and into Merger Sub, with Merger Sub as the surviving corporation, resulting in the Company's indirect acquisition of CMP Wellness, LLC, a California limited liability company, which prior to the merger, was owned 100% by Lancer West Enterprises, Inc and Walnut Ventures. CMP Wellness, LLC is a distributor of vaporizers, cartridges and accessories.

***The acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations***. The purchase price payable to Jason Manasse and Theodore Nicols at the closing of the merger in exchange for consummating the merger was

Amended Class Action Complaint for Violation of the Federal Securities Laws

comprised of an aggregate of $1,500,000 in cash, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock. The purchase price is subject to customary post-closing adjustments with respect to confirmation of the levels of working capital and cash held by CMP Wellness, LLC as of the closing. During the one year period following the closing, Jason Manasse and Theodore Nicols may become entitled to receive ***up to*** an additional approximately $1,905,000 in cash, in the aggregate, and approximately 4,740,960 shares of common stock of the Company, in the aggregate, ***based on the future performance of CMP Wellness, LLC*** (See Note 2)**.**

64. In the 3Q 2017 10-Q financial statements, KushCo listed the "Total estimated acquisition consideration" for CMP as $34,159,351:

| Acquisition Consideration: | | |
|---|---|---|
| Cash | $ | 1,500,000 |
| Fair value of common shares issued to CMP members | | 19,500,000 |
| Promissory notes | | 660,216 |
| Estimated fair value contingent cash consideration | | 1,735,375 |
| Estimated fair value contingent equity consideration | | 10,763,760 |
| Total estimated acquisition consideration | $ | 34,159,351 |

65. Despite stating in the 3Q 2017 10-Q that ASC 805 controlled the accounting of the CMP acquisition, KushCo "recorded a contingent liability for the contingent cash consideration of $1,735,375 and ***recorded contingent equity consideration of $10,763,760***. The fair value of the contingent equity consideration is recorded in additional paid in capital." By misclassifying the contingent share earnout as equity rather than liability, KushCo guaranteed that it would never need to remeasure the fair value of the stock earnout even if CMP greatly exceeded or missed its target thresholds for share earnouts. KushCo thus guaranteed that shareholders would be unable to discover if the total consideration paid for CMP was materially higher than KushCo's approximately $34 million estimation because of changes in the estimated share earnouts, and that such changes in estimation would not introduce earnings volatility in KushCo's income statement.

- 23 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

66.     KushCo's failure to correctly apply GAAP even as it repeatedly cited to the applicable GAAP provisions and admitted that the contingent stock earnout was both variable and based on something other than the price of KushCo's shares, was conduct taken recklessly or knowingly.

67.     Further, KushCo's classification of the share earnout as equity allowed it to avoid disclosing the actual value of the shares to be issued in the future to settle the contingent share obligation when the obligation became due at the end of FY 2018. Indeed, in a July 19, 2018 Form 8-K KushCo announced the number of shares it had distributed on July 16, 2018 to Manasse and Nicols,[7] but not the *value* of those shares, leaving investors in the dark as to whether the original $10,763,760 estimate of the value of the earnout shares had proved accurate, or was off by millions of dollars, and whether the total consideration paid for CMP remained approximately $34 million, or was materially higher.

68.     In the 2018 10-K, KushCo again disclosed the number of shares issued as stock earnout, but because it had classified the earnouts as equity rather than as liability, it was listed in the Consolidated Statement of Stockholder's Equity as a mere zero-impact "memo entry." KushCo thus continued avoiding revealing the true cost of the CMP acquisition, and avoided revealing a material hit to its earnings:

---

[7] The July 19, 2018 8-K states that "On July 16, 2018, the Company issued an aggregate of 3,740,960 Earnout Shares to Messrs. Manasse and Nicols in accordance with the terms of the Merger Agreement."

Amended Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12

**KUSHCO HOLDINGS, INC.**
Consolidated Statements of Stockholders' Equity

| | Common Stock | | | | Additional Paid-in Capital | Accumulated Deficit | Total Stockholders' Equity |
|---|---|---|---|---|---|---|---|
| | Shares Issued | | Amount | | | | |
| **Balances at August 31, 2016** | 48,300,162 | $ | 48,300 | $ | 5,278,284 | $ (676,708) | $ 4,649,876 |
| Stock sold to investors | 1,776,250 | | 1,776 | | 3,023,121 | - | 3,024,897 |
| Stock option amortization | - | | - | | 527,572 | - | 527,572 |
| Stock option exercises | 225,557 | | 226 | | 218,774 | - | 219,000 |
| Stock issued for services | 305,097 | | 305 | | 671,132 | - | 671,437 |
| Acquisition of CMP Wellness, LLC | 7,800,000 | | 7,800 | | 31,344,600 | - | 31,352,400 |
| Acquisition of roll-un-bowl.com | 200,000 | | 200 | | 465,800 | - | 466,000 |
| Net income | - | | - | | - | 69,464 | 69,464 |
| **Balances at August 31, 2017** | 58,607,066 | $ | 58,607 | $ | 41,529,283 | $ (607,244) | $ 40,980,646 |
| Stock sold to investors | 5,901,859 | | 5,902 | | 16,418,821 | - | 16,424,723 |
| Stock option exercises | 1,181,072 | | 1,181 | | 611,166 | - | 612,347 |
| Stock issued for services | 499,724 | | 500 | | 4,858,405 | - | 4,858,905 |
| Stock issued for Summit Acquisition | 639,999 | | 640 | | 9,586,946 | - | 9,587,586 |
| Stock issued for Hybrid Creative Acquisition | 198,000 | | 198 | | 2,799,002 | - | 2,799,200 |
| Stock issued for CMP Wellness Earnout | 3,740,960 | | 3,741 | | (3,741) | - | - |
| Issuance of common stock and warrants for cash, net of offering costs | 7,504,444 | | 7,504 | | 18,866,807 | - | 18,874,311 |
| Net loss | - | | - | | - | (10,198,872) | (10,198,872) |
| **Balances at August 31, 2018** | 78,273,124 | $ | 78,273 | $ | 94,666,689 | $ (10,806,116) | $ 83,938,846 |

13   69.   All of the subsequent financial statements during the Class Period after
14 the 3Q 2017 10-Q, namely the 2017 10-K; 1Q 2018 10-Q; 2Q 2018 10-Q; 3Q 2018
15 10-Q; 2018 10-K; and the 1Q 2019 10-Q, were similarly materially false. The
16 KushCo Defendants never reclassified the contingent stock earnouts as liability, and
17 never included any changes in the estimated fair value of the contingent stock
18 earnouts in the income statements, thus hiding the true cost of the CMP acquisition
19 from investors, and overstating earnings (actually understating losses).

20   70.   On April 9, 2019, KushCo filed a Form 8-K admitting that the stock
21 earnouts should have been classified as a liability, and stating that the Class Period
22 financial statements should not be relied upon. Revealing what it called "material
23 misstatements," KushCo announced that it would restate all of the financial
24 statements for the quarters and years at issue in this Action.

25   71.   On April 11, 2019, KushCo filed a Form 10-K/A with restated
26 financial statements for Class Period 10-Qs, as well as for the 2017 10-K and 2018
27 10-K. With respect to the CMP acquisition, the restated financials finally revealed
28 the much higher, true cost of the CMP acquisition. The value of the issued

- 25 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

1  contingent stock payments was $26,217,509, ***almost $15.5 million more, and 145%***
2  ***higher, than the never-remeasured $10.7 million figure***. By misclassifying the
3  stock earnout as equity, KushCo hid from investors that the true cost of the CMP
4  acquisition was approximately $50 million, and not $34 million.

5        72.   In the 10-K/A containing the restatements, KushCo recorded
6  adjustments in its quarterly earnings statements for each quarter of FY 2018, as
7  KushCo acknowledged that contingent stock payments were almost 145% higher
8  than initially wrongly recorded as equity. The restated 1Q 2018 income statement
9  adjustment lowered income by approximately $4.5 million. The restated 2Q 2018
10  income statement adjustment lowered income by approximately $6.7 million. The
11  restated 3Q 2018 income statement adjustment lowered income by approximately
12  $7 million. The total FY 2018 income statement adjustment due to the CMP
13  acquisition lowered earnings (actually raised losses) by approximately $17.2
14  million. When considered with adjustments to FY 2017, the restated income
15  numbers showed an increased loss of approximately $15.6 million due solely to
16  changes in the value of the stock earnout obligation related to the CMP deal.

17        73.   KushCo committed further GAAP violations with respect to the CMP
18  acquisition that show that it chose to correctly or incorrectly apply ASC 805 based
19  not on GAAP's requirements but on whether correctly applying GAAP would
20  negatively affect KushCo's income statement.

21        74.   In reporting results for the fourth quarter of FY 2017, KushCo
22  increased the fair values of the contingent cash and equity (shares) consideration by
23  a total of $1,258,265 ($169,625 for cash and $1,088,640 for equity) under the guise
24  of measurement period adjustments, *i.e.*, adjustments for facts and circumstances
25  that existed as of the acquisition date:

26

27

28

Amended Class Action Complaint for Violation of the Federal Securities Laws

| | May 1, 2017 (As initially reported) | Measurement Period Adjustments (1) | August 31, 2017 (As adjusted) |
|---|---|---|---|
| Cash | $ 1,500,000 | $ - | $ 1,500,000 |
| Fair value of common shares issued to CMP members | 19,500,000 | - | 19,500,000 |
| Promissory notes | 660,216 | 6,572 | 666,788 |
| Estimated fair value contingent cash consideration | 1,735,375 | 169,625 | 1,905,000 |
| Estimated fair value contingent equity consideration | 10,763,760 | 1,088,640 | 11,852,400 |
| Total estimated acquisition consideration | $ 34,159,351 | $ 1,264,837 | $ 35,424,188 |

(1)    As of August 31, 2017, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and the Company revised its estimate of the contingent equity consideration from $10,763,760 to $11,852,400, to reflect the increased probability of the sellers of CMP reaching the maximum earnouts available. An additional post-closing adjustment of $6,572 was recorded, which resulted in an increase of the promissory notes from $660,216 to $666,788.

75.    The restatement revealed, however, that those adjustments did *not* exist as of the acquisition date. KushCo avoided reducing FY 2017 earnings for the entire $1,258,265, allowing it to materially overstate goodwill while understating Kushco's losses on the income statement.

76.    With respect to the $169,625 in contingent cash consideration, KushCo had at the time of the CMP acquisition correctly applied ASC 805 and classified contingent cash consideration as a liability. In its 2017 10-K, however, KushCo chose to ***misapply*** ASC 805 and recorded the effect of an increase in the value of the estimated contingent cash consideration as an increase in goodwill rather than an expense that would have negatively affected KushCo's earnings. KushCo mischaracterized the $169,625 in cash consideration as a "measurement period adjustment" when GAAP required it to be recorded in the earnings statement as an adjustment in fair value, *i.e.*, a subsequent change based on information that occurred *after* the acquisition date, not based on conditions that existed *as of* the acquisition date. By playing with their application of ASC 805, KushCo hid from investors that the CMP acquisition cost more than originally reported. KushCo restated this amount as a reduction in earnings at the end of the Class Period.

77.    KushCo further violated GAAP's ASC 805 and ASC 480 by recording the $1,088,640 adjustment to the contingent equity (stock) consideration in stockholder's equity rather than as a liability as GAAP required, treating it as if the

Amended Class Action Complaint for Violation of the Federal Securities Laws

adjustment was based on conditions that existed *as of* the acquisition date, when it should have been accounted for as a subsequent change based on information that occurred *after* the acquisition date, thus hiding the amount's negative effect on earnings. Kushco reversed this adjustment and classified the entire contingent equity consideration as a liability in 2019. KushCo's improper accounting enabled it to inflate its goodwill by the full $1,258,265 without impacting its earnings. This goodwill overstatement continued to be reported in all of KushCo's subsequent Class Period financial statements. KushCo admitted to this goodwill error in the restatement.

### *Accounting for the Summit Acquisition*

78.     On April 10, 2018, KushCo filed a Form 8-K announcing the Summit acquisition. The Form 8-K appended the April 10, 2018 Agreement and Plan of Merger. The transaction summary in the Form 8-K stated Summit's members may be entitled to receive contingent stock earnouts in the future:

> The consideration payable to the members of Summit (the "Members") at the closing of the merger will be comprised of an aggregate of $3.2 million in cash (the "Cash Consideration") and an aggregate of 1,280,000 shares (the "Share Consideration") of the Company's common stock (the "Common Stock"). The purchase price will be subject to customary post-closing adjustments with respect to confirmation of Summit's working capital and indebtedness as of the closing date. $500,000 of the Cash Consideration and 640,000 shares of Common Stock from the Share Consideration will be held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants contained in the Merger Agreement.
>
> During the one year period following the closing, the Members may become entitled to receive **up to** an additional 1,280,000 shares of Common Stock, in the aggregate, **based on the performance of the Summit business during that period**.

Amended Class Action Complaint for Violation of the Federal Securities Laws

79.     Section 2.15 of the Merger Agreement showed that the number of contingent shares awarded was based on Summit's "Eligible Net Revenue" in the year following the acquisition. Further, the Summit members would be entitled to more or fewer contingent shares based on the total net revenue.

80.     As with the CMP acquisition, the plain language KushCo itself wrote into the Summit agreement demonstrates that the contingent stock earnout was variable in the number of shares Summit's members could earn, and was based on something other than the price of KushCo's stock. As such, application of ASC 805 and ASC 480 required no judgment, and was simple: the estimated fair value of the contingent shares *must* be recorded as a liability on the income statement, and the fair value remeasured and changes recorded on the income statement in each subsequent reporting period.

81.     KushCo again cited to the correct GAAP standard even as it failed to apply it. In the July 13, 2018, 3Q 2018 10-Q KushCo wrote:

> The acquisition was accounted for using the acquisition method of accounting in accordance with *ASC 805, Business Combinations*. The consideration paid to the Members of Summit at the closing included the Cash Consideration, consisting of an aggregate of $1.4 million in cash, net of cash received and the Share Consideration, consisting of an aggregate of 1,280,000 shares common stock. $500,000 of the Cash Consideration and approximately 640,000 shares of common stock from the Share Consideration were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants contained in the Merger Agreement. The Members may become entitled to receive earn-out consideration of *up to* an additional 1,280,000 shares of common stock, in the aggregate, *based on the net revenue performance of the Summit business* during a one-year period following the closing.

Amended Class Action Complaint for Violation of the Federal Securities Laws

82.     The 3Q 2018 10-Q valued the contingent stock earnout at $7,155,200:

| | Shares | Dollars |
|---|---|---|
| Company stock | 640,000 | $ 3,577,600 |
| Company stock held back | 640,000 | 3,577,600 |
| Contingent company stock consideration | 1,280,000 | 7,155,200 |
| Cash, net of cash received | - | 945,218 |
| Cash held back | - | 500,000 |
| Total purchase price | 2,560,000 | $15,755,618 |

83.     In violation of straightforward GAAP provisions, in the 3Q 2018 10-Q, KushCo recklessly or knowingly classified the contingent stock consideration as additional paid in capital as part of stockholders' equity rather than as a liability, writing that the Company "recorded the earn-out consideration of the additional 1,280,000 shares of common stock in stockholders' equity."

84.     KushCo wrongly accounted for the contingent stock earnouts as equity in both the subsequent 2018 10-K and the 1Q 2019 10-Q. In the restated financials it corrected the classification from equity to a liability and reported changes in the fair value of contingent consideration on the Company's income statement.

**Accounting for the Hybrid Acquisition**

85.     On July 12, 2018, KushCo filed a Form 8-K announcing its financial results for the quarter ended May 31, 2018. The attached press release included a statement announcing the Hybrid acquisition under the heading of "recent operational summary," disclosing, "Acquired Zack Darling Creative Associates, LLC ("ZDCA") along with its wholly-owned subsidiary, The Hybrid Creative, LLC ("Hybrid") on July 11, 2018, a specialist design agency based in Santa Rosa, California."

86.     To date, KushCo has not filed or made otherwise available the merger agreement with Hybrid.

87.     In its November 29, 2018 10-K, KushCo once again cited to the correct GAAP standard for accounting for an acquisition, even as it refused to apply it.

Amended Class Action Complaint for Violation of the Federal Securities Laws

The acquisition was accounted for using the acquisition method of accounting in accordance with ***ASC 805, Business Combinations***. The consideration paid to the Members of Hybrid at the closing included the Cash Consideration, consisting of an aggregate of $847,187 in cash, net of cash received, $82,106 in cash held back and the Share Consideration, consisting of an aggregate of 360,000 shares common stock. $82,106 of the Cash Consideration and 162,000 shares of common stock from the Share Consideration were held back by the Company issuable on January 1, 2019. The Members may become entitled to receive earn-out payments of ***up to*** $1.37 million, through a combination of cash and stock payments, ***based on the net revenue performance of the Hybrid business*** during the period September 1, 2018 through August 31, 2019.

88.    KushCo included substantially similar disclosures in its 1Q 2019 10-Q.

89.    As with the CMP and Summit acquisitions, the plain language of KushCo's SEC-filed disclosure demonstrates that the contingent stock earnout in the Hybrid deal was variable in the number of shares Hybrid members could be paid, and was based on something other than the price of KushCo's stock. As such, application of ASC 805 and ASC 480 required no judgment, and was simple: the estimated fair value of the contingent shares must be recorded as a liability on the income statement, and remeasured and changes in fair value recorded on the income statement in each subsequent reporting period.

90.    In the 2018 10-K, KushCo initially valued its aggregate consideration for the Hybrid purchase at $4.2 million as of the July 11, 2018 acquisition date, including $450,000 for contingent cash consideration and $920,000 for contingent equity (stock) consideration:

|  | August 31, 2018 |
|---|---|
| Cash | $          847,186 |
| Cash held back | 82,106 |
| Fair value of common shares issued to Hybrid members | 1,879,200 |
| Estimated fair value contingent cash consideration | 450,000 |
| Estimated fair value contingent equity consideration | 920,000 |
| Total estimated acquisition consideration | $        4,178,492 |

91.    If KushCo had correctly classified the stock earnouts as liability, it would have been required to remeasure its estimated fair value and account for any

Amended Class Action Complaint for Violation of the Federal Securities Laws

changes in its subsequent income statements. By plainly violating straightforward GAAP provisions ASC 805 and ASC 480, KushCo avoided, from the announcement of the merger, any obligation to measure and record changes to the fair value of its contingent equity consideration in the income statements and avoid disclosing any potential negative impact of such changes in fair value on the Company's earnings, hiding the true cost of the acquisition from investors.

***Combined Effect of the Violations of ASC 805 and ASC 480
on Kushco's Income Statements During the Class Period***

92.   On April 9, 2019, KushCo filed a Form 8-K stating that the financial statements in each 10-Q and 10-K filed during the Class Period contained "material misstatements" in the accounting for contingent consideration related to the CMP, Summit, and Hybrid acquisitions, and that those financial statements should no longer be relied upon. KushCo admitted that estimated contingent stock consideration for all three acquisitions should always have been classified as liabilities.

93.   On April 11, 2019, KushCo filed a 2018 10-K/A and 1Q 2019 10-Q/A, which restated the financial statements for all Class Period Forms 10-Q and 10-K. The 10-K/A and 10-Q/A contained specific adjustments for each relevant financial quarter.

94.   The following chart, based on the information provided in the 10-K/A and 10-Q/A, shows the effect of the restated financial statements on KushCo's income statements:

| | | Restatement Adjustment due to Change in Fair Value of Contingent Consideration (in $) | | | Income (Loss) from Operations | | Net Income (Loss) | |
|---|---|---|---|---|---|---|---|---|
| | | *Increase (Decrease) in Earnings* | | | | | | |
| Reporting Period | Reporting Period End Date | CMP | Summit/ Hybrid | Total | Originally Reported | Restated | Originally Reported | Restated |
| 3Q 2017 | May 31, 2017 | 1,291,651 | | 1,291,651 | 8,739 | 1,300,390 | 6,119 | 1,297,770 |

- 32 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| FY 2017 (full year) | August 31, 2017 | 1,586,311 | | 1,586,311 | 380,539 | 1,966,670 | 69,464 | 1,655,775 |
| 1Q 2018 | Nov. 30, 2017 | (4,456,503) | | (4,456,503) | 151,443 | (4,305,060) | 94,615 | (4,361,888) |
| 2Q 2018 | Feb. 28, 2018 | (6,684,754) | | (6,684,754) | (879,970) | (7,564,724) | (920,314) | (7,605,068) |
| 3Q 2018 | May 31, 2018 | (7,041,229) | | (7,041,229) | (2,084,378) | (9,125,607) | (2,165,740) | (9,206,969) |
| FY 2018 (full year) | August 31, 2018 | (17,209,686) | 3,071,792 | (14,137,894) | (12,383,620) | (26,521,515) | (10,198,872) | (24,336,767) |
| 1Q 2019 | Nov. 30, 2018 | | (394,265) | (394,265) | (8,064,086) | (8,458,351) | (8,185,050) | (8,579,315) |
| **Totals** | **3Q 2017-1Q 2019** | **(15,623,375)** | **2,677,526** | **(12,945,848)** | **(20,067,347)** | **(33,013,196)** | **(18,314,458)** | **(31,260,307)** |

95.     In total, for the period from 3Q 2017 through 1Q 2019, KushCo materially understated its losses by failing to record an additional $12,945,848 million in expenses due to changes in fair value of contingent equity (stock) consideration payable related to the CMP, Summit, and Hybrid acquisitions. KushCo's refusal to apply the straightforward and simple GAAP provisions and to account for its stock consideration obligations as liabilities, or to perform subsequent remeasurements of these obligations in the financial statements in each reporting period and record changes in the earnings statement, led to materially misstated financial statements throughout the Class Period. KushCo has admitted all of this.

***PCAOB Standards and RBSM's Audit Opinions***

96.     The PCAOB establishes auditing and related professional practice standards registered public accounting firms must follow in the preparation and issuance of audit reports. The PCAOB auditing standards are codified in "AS" sections.

97.     RBSM, KushCo's independent auditor, gave unqualified, clean audit opinions on KushCo's financial statements in the 2017 10-K and 2018 10-K. RBSM represented that it conducted each audit in accordance with PCAOB auditing standards. It did not. RBSM represented that KushCo's financial statements

Amended Class Action Complaint for Violation of the Federal Securities Laws

complied with GAAP. They did not. KushCo's financial statements deviated materially from GAAP, and RBSM's audit opinions were materially false and misleading.

98.   The 2017 10-K included the "Report of Independent Registered Public Accounting Firm." The Report, signed by RBSM LLP in Larkspur, California, stated:

> We have audited the accompanying consolidated balance sheets of Kush Bottles, Inc. as of August 31, 2017 and 2016, and the related consolidated statements of operations, stockholders' equity, and cash flows for each of the years in the two-year period ended August 31, 2017. Kush Bottles Inc.'s management is responsible for these financial statements. Our responsibility is to express an opinion on these financial statements based on our audits.
>
> ***We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.*** The company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.
>
> ***In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Kush Bottles, Inc. as of August 31, 2017 and 2016, and the results of its operations and its cash flows for each of the years in the two-year period ended August 31, 2017, in conformity with accounting principles generally accepted in the United States of America.***

- 34 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

99.     The 2018 10-K included the "Report of Independent Registered Public Accounting Firm." The Report, signed by RBSM LLP in Larkspur, California, stated:

### Opinion on the Financial Statements

We have audited the accompanying consolidated balance sheets of KushCo Holdings, Inc. (the Company) as of August 31, 2018 and 2017, and the related consolidated statements of operations, stockholders' equity, and cash flows for the fiscal years ended August 31, 2018 and 2017, and the related notes (collectively referred to as the consolidated financial statements). ***In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of August 31, 2018 and 2017, and the consolidated results of its operations and its cash flows for the each of the two years in the period ended August 31, 2018, in conformity with accounting principles generally accepted in the United States of America.***

\*\*\*

### Basis for Opinion

These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on the Company's consolidated financial statements based on our audits. ***We are a public accounting firm registered with the Public Company Accounting Oversight Board (United States) (PCAOB)*** and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

***We conducted our audits in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether due to error or fraud***. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. As part of our audits, we are required to obtain an understanding of internal control over financial reporting, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion.

Amended Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6

> Our audits included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements. Our audit also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that our audits provides a reasonable basis for our opinion.

7
8
9
10

100.   The PCAOB requires that an auditor exercise due professional care in planning and performing an audit. AS 1015.01. Due professional care requires the auditor to exercise "professional skepticism, which is an attitude that includes a questioning mind and a critical assessment of audit evidence." AS 1015.07.

11
12
13
14
15
16

101.   The auditor must plan and perform its audits to obtain reasonable assurance about whether the Company's financial statements were free of material misstatement, whether caused by error or fraud. AS 1001.02. The auditor is required to plan and perform its audit procedures to obtain sufficient appropriate audit evidence to provide a reasonable basis for its opinion on financial statements. AS 1105.04.

17
18
19

102.   The auditor must evaluate the results of its audits to determine whether the audit evidence it obtained was sufficient and appropriate to support the unqualified opinions it expresses about financial statements. AS 2810.02.

20
21
22
23
24
25
26

103.   To obtain "reasonable assurance" that the financial statements are free of material misstatement, the auditor should plan and perform audit procedures to detect misstatements that, individually or in combination with other misstatements, would result in material misstatement of the financial statements. This includes being alert while planning and performing audit procedures for misstatements that could be material due to quantitative or qualitative factors.[8] AS 2105.03.

27
28

---

[8] PCAOB standards provide the following guidance for evaluating materiality in the context of an audit: "[i]n interpreting the federal securities laws, the Supreme Court of the United States has held that a fact is material if there is 'a substantial

Amended Class Action Complaint for Violation of the Federal Securities Laws

104. Planning the audit requires establishing an audit strategy and developing an audit plan, which includes, specifically, planned "risk assessment procedures" and planned responses to the risks of material misstatement. AS 2101.05. The risk of material misstatement refers to the risk that the financial statements are materially misstated. AS 1101.05.

105. Audit procedures for obtaining evidence are classified as: a) risk assessment procedures; and b) further audit procedures including substantive procedures such as testing details of accounts and disclosures and substantive analytic procedures. AS 1105.13; AS 2301 n. 9.

106. PCAOB standards required RBSM to develop and perform "risk assessment procedures" sufficient to provide a reasonable basis for identifying and assessing the risks of material misstatement, whether due to error or fraud, and designing further audit procedures. AS 2110.04–.06. PCAOB standards literally state that an auditor should ask herself "what could go wrong" in determining likely sources of potential misstatements. AS 2110.61.

107. The analytical risk assessment procedures should be designed to "[i]dentify areas that might represent specific risks relevant to the audit, *including the existence of unusual transactions and events* …." AS 2110.46. Further, the PCAOB lists certain matters which if present "are relevant to the necessary understanding of the company's selection and application of accounting principles, including related disclosures" including *"[t]he methods the company uses to account for significant transactions that are outside the normal course of business for the company* or that otherwise appear to be unusual due to their

---

likelihood that the … fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' As the Supreme Court has noted, determinations of materiality require 'delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him ….'" AS 2105.02.

Amended Class Action Complaint for Violation of the Federal Securities Laws

timing, size, or nature ('**significant unusual transactions**') …." AS 2110.13. Once identified as a "significant unusual transaction," the auditor "**must evaluate** whether" such transactions "have been properly accounted for and disclosed in the financial statements," AS 2401.67A, because "significant unusual transactions can affect the risk of material misstatement due to error or fraud …." AS 2301.11A.

108.    The CMP, Summit, and Hybrid acquisitions were all "significant unusual transactions" that were "outside the normal course of business for" KushCo.[9] In the April 12, 2017 10-Q filed immediately before the CMP acquisition, KushCo listed total assets of approximately $9.2 million. Following the purchase of CMP in May 2017 for what KushCo stated publicly was $34 million in consideration, in the July 13, 2017 10-Q, KushCo listed total assets of approximately $43.7 million. The transaction that increased KushCo's assets almost five-fold was a "significant unusual transaction" requiring RBSM to evaluate whether the CMP purchase was "properly accounted for and disclosed in the financial statements." AS 2401.67A. RBSM was **required** to obtain an understanding of Kushco's selection and application of accounting principles, including related disclosures, for accounting for these acquisitions and evaluating whether the Company's selection and application of accounting principles was consistent with GAAP. AS 2110.12–.13.

109.    Thus, RBSM was required to examine the accounting for the CMP, Summit, and Hybrid acquisitions, including the contingent stock earnout provisions. Such an analysis for the contingent stock earnouts would have been short.

---

[9] The PCAOB maintains a website entitled "Audit Committee Dialogue" "providing insights from our oversight activities," which treats "business combinations" as "significant unusual transactions." Under "Potential Questions for Your Auditor" PCAOB lists "What is your auditor's approach to evaluating the company's controls over financial reporting for significant unusual transactions or events, such as the acquisition of assets and assumption of liabilities in a business combination." *See* https://pcaobus.org/sites/digitalpublications/audit-committee-dialogue.

Amended Class Action Complaint for Violation of the Federal Securities Laws

KushCo's public filings show that it identified the correct GAAP provisions, ASC 805 and ASC 480, but recklessly or knowingly reached the wrong conclusion regarding classifying the stock earnouts as equity rather than as liabilities. Reaching the correct conclusion does not allow for judgment. Any auditor would have seen the misclassification of contingent stock earnout in the CMP acquisition, and refused to provide a clean audit opinion unless the accounting was corrected. If RBSM did not perform the analysis *required by the PCAOB* and identify and evaluate the accounting for the "significant unusual transaction[s]," then RBSM's audit opinion asserting that it performed its analysis in accordance with PCAOB standards was knowingly or recklessly false, as was its clean audit opinion in KushCo's 2017 10-K and 2018 10-K.

110. The "significant unusual transactions" analysis was not the only PCAOB analytic thread that required RBSM to analyze the accounting for the contingent share earnout provisions in the three acquisitions. All roads lead to, indeed require, that analysis.

111. As part of the risk assessment analysis, proper application of the PCAOB's provisions required RBSM to identify "significant accounts and disclosures" and their "relevant assertions." AS 2110.59-.61. An account or disclosure is a "significant account or disclosure" if there is a reasonable possibility that the account or disclosure could contain a misstatement that, individually or when aggregated with others, has a material effect on the financial statements, considering the risks of both overstatement and understatement. The determination of whether an account or disclosure is significant is based on inherent risk, without regard to the effect of controls. AS 2110.59 n. 33.  A "relevant assertion" is a financial statement assertion that has a reasonable possibility of containing a misstatement or misstatements that would cause the financial statements to be materially misstated. The determination of whether an assertion is a relevant

Amended Class Action Complaint for Violation of the Federal Securities Laws

1    assertion is based on inherent risk, without regard to the effect of controls. AS
2    2110.59 n. 34.

3        112.   PCAOB standards required RBSM to "perform substantive procedures
4    for each relevant assertion of each significant account and disclosure …." AS
5    2301.36. Moreover, the PCAOB provides a list of "significant accounts and
6    disclosures" and their "relevant assertions" including the "***possibility of significant
7    contingent liabilities arising from the activities reflected in the account or
8    disclosure***." AS 2110.60. The contingent stock earnouts in each of the three
9    acquisitions were possible "significant contingent liabilities arising from the
10   activities reflected in the account or disclosure." Thus, PCAOB standards ***required***
11   RBSM to examine KushCo's accounting for the contingent stock earnout provisions
12   and its application of GAAP to those contingent stock earnouts.[10] As with the
13   earlier path to this same analysis, the actual analysis does not allow for judgment
14   and would have showed that the contingent stock consideration, wrongly classified
15   as equity, must be classified as liabilities to be remeasured in each reporting period.
16   RBSM having stated in its audit opinions that it properly applied PCAOB standards
17   when it did not and having provided clean audit opinions stating that KushCo's
18   financial statements complied with GAAP when they did not, RBSM's audit
19   opinions were knowingly or recklessly false.

20       113.   To comply with PCAOB standards, RBSM was required to (a)
21   examine the relevant earnout provisions in the CMP, Summit, and Hybrid merger
22   agreements, (b) determine the appropriate accounting treatment of the contingent
23   consideration encompassed in these agreements, and (c) determine whether Kushco
24   followed GAAP in accounting for the contingent stock consideration during the
25   periods of acquisitions and in subsequent reporting periods. Had RBSM done so it

26   ───────────────
27   [10] In a list of examples of audit procedures to be performed in response to an
     assessed risk of fraud, PCAOB lists as a fraud risk "management estimates …
28   relating to specific transactions (such as acquisitions)." AS 2401.54.

Amended Class Action Complaint for Violation of the Federal Securities Laws

1   would have learned that Kushco's accounting for contingent stock consideration
2   violated ASC 805 and ASC 480 and that the financial statements in the 2017 10-K
3   and 2018 10-K were materially wrong. Whether RBSM failed to evaluate Kushco's
4   accounting for contingent consideration, or performed the evaluation and
5   disregarded the results of its audit procedures indicating that the Company had
6   improperly accounted for the contingent stock consideration, its actions were
7   knowing or reckless, and its audit opinions false. RBSM's audits amounted to no
8   audit at all.

9   <u>**FALSE AND MISLEADING STATEMENTS AND OMISSIONS**</u>

10   114.   On July 13, 2017, Kushco filed its 3Q 2017 10-Q, including financial
11   statements for the quarter ended May 31, 2017. Defendants Kovacevich and Martin
12   signed the 3Q 2017 10-Q, certifying under SOX the accuracy of the document,
13   including its financial statements. In the 3Q 2017 10-Q, about the CMP acquisition,
14   Defendants KushCo Kovacevich and Martin stated:

> The [CMP] acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock (equal to 13% of the Company's common stock outstanding as of May 31, 2017). During the one-year period following the closing, the two sellers of CMP may become entitled to receive up to an additional $1,905,000 in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the preliminary post-closing working capital adjustments amounted to $110,604, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $660,216*. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent*

- 41 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

*equity consideration of $10,763,760. The fair value of the contingent equity consideration is recorded in additional paid in capital.*

The acquisition is accounted for under the acquisition method of accounting in accordance with Accounting Standards Codification Topic 805, Business Combinations ("ASC 805"). As such, CMP's assets acquired and liabilities assumed are recorded at their acquisition-date fair values. The results of operations of CMP were consolidated beginning on the date of the merger. Acquisition-related transaction costs are not included as a component of consideration transferred, but are accounted for as an expense in the period in which the costs are incurred. Any excess of the acquisition consideration over the fair value of assets acquired and liabilities assumed is allocated to goodwill. *Pursuant to ASC 805, the contingent consideration was recorded at its estimated fair value as of the acquisition date. The subsequent accounting for contingent consideration depends on whether the contingent consideration is classified as a liability or equity. The portion of contingent consideration classified as equity is not remeasured in subsequent accounting periods. However, contingent consideration classified as a liability is remeasured to its fair value at the end of each reporting period and the change in fair value is reflected in income or expense during that period. Any changes within the measurement period resulting from facts and circumstances that existed as of the acquisition date may result in retrospective adjustments to the provisional amounts recorded at the acquisition date.*

115. In addition, on its balance sheet, KushCo recorded Total Stockholders' Equity of $49,440,334, and Total Liabilities of $4,261,522.

116. The foregoing was materially false and/or misleading because Defendants KushCo, Kovacevich, and Martin knowingly or recklessly:

    a. In violation of GAAP provisions ASC 805 and ASC 480, incorrectly classified the fair value of contingent stock consideration for the CMP acquisition as equity instead of as a liability, thereby improperly impacting KushCo's accounting for the contingent stock consideration in subsequent periods;

    b. understated Kushco's Total Liabilities for the quarter and overstated its Total Shareholders' Equity by $9,472,109 million;

Amended Class Action Complaint for Violation of the Federal Securities Laws

1
2
3

      c.  In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 3Q 2017 10-Q, it admitted that these errors were "material misstatements."

4
5
6
7
8

    117.  On November 28, 2017, Kushco filed its 2017 10-K, including financial statements for the fiscal year ended August 31, 2017. Defendants Kovacevich and McCormick signed the 2017 10-K, certifying under SOX the accuracy of the document, including its financial statements. In the 2017 10-K, Defendants stated:

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

> On May 1, 2017 ("Merger Date"), the Company and KBCMP, Inc., a Delaware corporation and newly formed wholly-owned subsidiary of the Company ("Merger Sub"), entered into an Agreement of Merger (the "Merger Agreement") with Lancer West Enterprises, Inc, a California corporation and Walnut Ventures, a California corporation, pursuant to which each of Lancer West Enterprises, Inc and Walnut Ventures were merged with and into Merger Sub, with Merger Sub as the surviving corporation, resulting in the Company's indirect acquisition of CMP Wellness, LLC ("CMP"), a California limited liability company, which prior to the merger, was owned 100% by Lancer West Enterprises, Inc and Walnut Ventures. Membership interest in CMP was the sole and only asset of Lancer West Enterprises, Inc and Walnut Ventures. As a result, CMP became a wholly-owned subsidiary of the Company. CMP is a distributor of vaporizers, cartridges and accessories. The Company's Directors believed the acquisition of CMP and the product offerings of CMP leveraged the Company's existing product development program and provided the Company with the possibility of generating near term revenue and operating cash flow, as well as establishing a commercial platform whereby other cannabis industry-support products may be accessed in the future. Going forward, the existing product offering and other product licensing opportunities, will be the basis of the Company's long-term product portfolio.

24
25
26
27
28

> The acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock (equal to 13% of the Company's common stock outstanding as of August 31, 2017). During the one-year period following the closing, the two sellers of CMP may

Amended Class Action Complaint for Violation of the Federal Securities Laws

become entitled to receive up to an additional $1,905,000 in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP product line for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the post-closing working capital adjustments amounted to $104,032, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $666,788. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. ***The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 $1,905,000 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. The fair value of the contingent equity consideration is recorded in additional paid in capital***.

118.   In addition, in the 2017 10-K, on its Balance Sheet, KushCo recorded Total Stockholders' Equity of $40,980,646, Goodwill of $34,247,344, and Total Liabilities of $6,001,211. Defendant KushCo reprinted these financial statements in a November 28, 2017 press release in which Defendant Kovacevich touted his management team, stating:

We also made ***significant progress in 2017 strengthening our management team by appointing of a new CFO***, a VP of Supply Chain, a VP of Sales, and launching a new robust sales structure, supported by highly efficient distribution facilities spread across three of the largest cannabis markets – California, Colorado, and Washington. Today, we believe that ***Kush Bottles not only has the strong leadership and financial platform necessary to achieve our vision***, but we believe that we have developed an infrastructure that can scale, especially in new surging cannabis markets like Nevada and California. Our strategy for 2018 is to effectively leverage our current position to drive top line sales and achieve net income growth. When adult use sales in Nevada commenced in July 2017, we experienced a ramp in demand for our products. With California adult-use sales expected to start in early 2018, we are poised for

Amended Class Action Complaint for Violation of the Federal Securities Laws

potentially even more rapid growth and a significant scaling in our business. We are excited about this major opportunity in our home market and look forward to seeing the impact of our initiatives continue to drive growth throughout fiscal year 2018

119. The foregoing statements were materially false and/or misleading because Defendants KushCo, Kovacevich, and McCormick knowingly or recklessly:

a. In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for the CMP acquisition as equity instead of as a liability;

b. overstated Kushco's Goodwill by $1,258,265, understated its Total Liabilities by $9,007,824, and overstated its Total Stockholders' Equity by $10,266,089;

c. In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 2017 10-K, it admitted that these errors were "material misstatements."

120. KushCo's 2017 10-K included the following Report Of Independent Registered Public Accounting Firm, in which RSMB stated, in relevant part:

We have audited the accompanying consolidated balance sheets of Kush Bottles, Inc. as of August 31, 2017 and 2016, and the related consolidated statements of operations, stockholders' equity, and cash flows for each of the years in the two-year period ended August 31, 2017. Kush Bottles Inc.'s management is responsible for these financial statements. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose

- 45 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

of expressing an opinion on the effectiveness of the company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Kush Bottles, Inc. as of August 31, 2017 and 2016, and the results of its operations and its cash flows for each of the years in the two-year period ended August 31, 2017, in conformity with accounting principles generally accepted in the United States of America.

121. The foregoing audit opinion was false and misleading because, as described above in detail, RBSM knowingly or recklessly:

a. failed to exercise due professional care in planning and performing its audit, and failed to follow required PCAOB standards;

b. failed to analyze the contingent stock earnout provisions in the CPM acquisition, as required by PCAOB standards;

c. failed to determine that Kushco had incorrectly applied the simple, straightforward GAAP provisions ASC 805 and ASC 480 in accounting for contingent stock consideration during the periods of acquisitions and in subsequent reporting periods;

d. disregarded that KushCo's classifying contingent stock consideration from the CMP acquisition as equity rather than as a liability was materially false;

e. certified KushCo's financial statements as materially accurate notwithstanding that KushCo overstated its Goodwill by $1,258,265, understated its Total Liabilities by $9,007,824, and overstated its Total Shareholders' Equity by $10,266,089;

f. issued a clean audit opinion, stating that it applied PCAOB standards and that KushCo's financial statements presented fairly its financial

- 46 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

position and were in accordance with GAAP when that opinion constituted an egregious refusal to see the obvious, a refusal to investigate what was not just doubtful but plainly wrong, and was severely reckless.

122. On January 16, 2018, KushCo filed its 1Q 2018 10-Q, including financial statements for the quarter ended November 30, 2017. Defendants Kovacevich and McCormick signed the 1Q 2018 10-Q, certifying under SOX the accuracy of the document, including its financial statements. After reiterating the background to the CMP acquisition, KushCo stated:

> The acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock (equal to 13.0% of the Company's common stock outstanding as of November 30, 2017). During the one-year period following the closing, the two sellers of CMP may become entitled to receive up to an additional $1,905,000 in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP product line for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the post-closing working capital adjustments amounted to $104,032, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $666,788. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 $1,905,000 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. The fair value of the contingent equity consideration is recorded in additional paid in capital.

Amended Class Action Complaint for Violation of the Federal Securities Laws

123.  In addition, in the 1Q 2018 10-Q, on its Consolidated Statement of Operations, KushCo recorded Net Income of $94,615.  On its Balance Sheet, KushCo recorded Total Stockholders' Equity of $45,952,924, Goodwill of $34,247,344, and Total Liabilities of $8,197,678. Defendant KushCo reprinted these financial statements in a January 16, 2018 press release.

124.  The foregoing statements were materially false and/or misleading because Defendants KushCo, Kovacevich, and McCormick knowingly or recklessly:

   a.  In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for the CMP acquisition as equity instead of as a liability;

   b.  Recorded Net Income when KushCo suffered a $4,361,888 Net Loss for the quarter, overstated its Goodwill by $1,258,265, understated its Total Liabilities by $13,464,326, and overstated its Total Shareholders' Equity by $14,722,591;

   c.  In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 1Q 2018 10-Q, it admitted that these errors were "material misstatements."

125.  On April 13, 2018, Kushco filed its 2Q 2018 10-Q, including financial statements for the quarter ended February 28, 2018. Defendants Kovacevich and McCormick signed the 2Q 2018 10-Q, certifying under SOX the accuracy of the document, including its financial statements. After reiterating the background to the CMP acquisition, KushCo stated:

> The acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock (equal to 12% of the Company's common stock outstanding as of February 28, 2018). During the one-year period following the closing, the two sellers of CMP may become entitled to receive up to an additional $1,905,000

Amended Class Action Complaint for Violation of the Federal Securities Laws

in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP product line for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the post-closing working capital adjustments amounted to $104,032, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $666,788. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000. During the six months ended February, a payment of $170,000 was made towards this liability, resulting in a net liability of $1,650,000. During the three months ended February 28, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,650,000.

126.    In addition, in the 2Q 2018 10-Q, on its Consolidated Statement of Operations, KushCo recorded Net Loss of $920,314.  On its Balance Sheet, KushCo recorded Total Stockholders' Equity of $ 53,057,775, Goodwill of $34,247,344, and Total Liabilities of $8,271,509. Defendant KushCo reprinted these financial statements in an April 11, 2018 press release.

127.    The foregoing SEC filing was materially false and/or misleading because Defendants KushCo, Kovacevich, and McCormick knowingly or recklessly:

    a.    In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for the CMP acquisition as equity instead of as a liability;

- 49 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

b. Understated KushCo's loss for the quarter by $6,684,754, overstated its Goodwill by $1,258,265, understated its Total Liabilities by $20,149,080, and overstated its Total Shareholders' Equity by $21,407,345;

c. In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 2Q 2018 10-Q, it admitted that these errors were "material misstatements."

128. On June 8, 2018, Defendant KushCo filed with the SEC a Prospectus Supplement on Form 424B5, alerting investors to the sale of up to 7,500,000 shares of KushCo common stock and warrants to purchase 3,7500,000 shares of common stock at a combined purchase price of $4.80 per share. Defendants completed the offering on June 12, 2018, raising $32.9 million "after deducting the placement agent fees and other estimated offering expenses." In the Prospectus Supplement, Defendant KushCo stated:

**INCORPORATION OF CERTAIN INFORMATION BY REFERENCE**

The SEC allows us to incorporate by reference the information and reports we file with them, which means that we can disclose important information to you by referring you to those publicly available documents. The information incorporated by reference is an important part of this prospectus supplement, and information that we file later with the SEC will automatically update and supersede the information already incorporated by reference. We are incorporating by reference the documents listed below, which we have already filed with the SEC, and any future filings we make with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act, except as to any portion of any future report or document that is not deemed filed under such provisions, prior to the completion or termination of the offering of the securities described in this prospectus supplement:

- Our Annual Report on Form 10-K for the year ended August 31, 2017 filed with the SEC on November 28, 2017;

Amended Class Action Complaint for Violation of the Federal Securities Laws

- Our Quarterly Report on Form 10-Q for the three months ended November 30, 2017 filed with the SEC on January 16, 2018;

- Our Quarterly Report on Form 10-Q for the three months ended February 28, 2018 filed with the SEC on April 13, 2018;

\*\*\*

129.   As such, for all of the reasons the 2017 10-K, the 1Q 2018 10-Q, and the 2Q 2018 10-Q were materially false and misleading, Defendant KushCo, Kovacevich, and McCormick knew or recklessly disregarded that the Prospectus Supplement was materially false and misleading.

130.   On July 13, 2018, KushCo filed its 3Q 2018 10-Q, including financial statements for the quarter ended May 31, 2018. Defendants Kovacevich and McCormick signed the 3Q 2018 10-Q, certifying under SOX the accuracy of the document, including its financial statements. After reiterating the background to the CMP acquisition, KushCo stated:

> The acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock (equal to 12% of the Company's common stock outstanding as of May 31, 2018). During the one-year period following the closing, the two sellers of CMP may become entitled to receive up to an additional $1,905,000 in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP product line for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the post-closing working capital adjustments amounted to $104,032, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $666,788. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration

Amended Class Action Complaint for Violation of the Federal Securities Laws

of $1,735,375 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. A payment of $85,000 was made towards this liability during the year ended August 31, 2017, resulting in a net liability of $1,820,000. During the six months ended February, a payment of $170,000 was made towards this liability, resulting in a net liability of $1,650,000. During the three months ended May 31, 2018, the Company did not recognize any change in the fair value of its contingent consideration liability of $1,650,000.

131. About the Summit acquisition, Defendants stated in the 3Q 2018 10-Q:

On May 2, 2018, the Company completed its acquisition of Summit, a leading distributor of hydrocarbon gases to the legal cannabis industry. Pursuant to the terms of the Merger Agreement with Summit, Summit merged with and into KCH, a wholly-owned subsidiary of the Company, with KCH as the surviving entity.

The acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations.  The consideration paid to the Members of Summit at the closing included the Cash Consideration, consisting of an aggregate of $1.4 million in cash, net of cash received and the Share Consideration, consisting of an aggregate of 1,280,000 shares common stock.  $500,000 of the Cash Consideration and approximately 640,000 shares of common stock from the Share Consideration were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants contained in the Merger Agreement. The Members may become entitled to receive earn-out consideration of up to an additional 1,280,000 shares of common stock, in the aggregate, based on the net revenue performance of the Summit business during a one-year period following the closing.

The Company estimated the probability of the contingent consideration at 100% and recorded the earn-out consideration of the additional 1,280,000 shares of common stock in stockholders' equity.

Amended Class Action Complaint for Violation of the Federal Securities Laws

132.   In addition, in the 3Q 2018 10-Q, on its Consolidated Statement of Operations, KushCo recorded Net Loss of $2,165,740. On its Balance Sheet, KushCo recorded Total Stockholders' Equity of $72,305,929, Goodwill of $51,281,279, and Total Liabilities of $12,237,001. Defendant KushCo reprinted these financial statements in a July 12, 2018 press release in which Defendant Kovacevich stated:

> Finally, our recently completed capital raise providing net proceeds of almost $33 million will provide the financial foundation for continued expansion in support of our growth strategy. All of these activities place us in a unique position to identify market demands, develop innovative products and bring them to market. As we head toward the end of our fiscal year we look forward to driving continued organic and acquisitive growth, supported by our strong leadership team and expanded, diversified offering.

133.   The foregoing SEC filing was materially false and/or misleading because Defendants KushCo, Kovacevich, and McCormick knowingly or recklessly:

a. In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for both the CMP and Summit acquisitions as equity instead of as liabilities;

b. Understated KushCo's Net Loss for the quarter by $7,041,229, overstated its Goodwill by $1,258,265, understated its Total Liabilities by $8,128,000, and overstated its Total Shareholders' Equity by $9,386,265;

c. In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 3Q 2018 10-Q, it admitted that these errors were "material misstatements."

134.   On November 29, 2018, filed its 2018 10-K, including financial statements for the fiscal year ended August 31, 2018. Defendants Kovacevich and Tedford signed the 2018 10-K, certifying under SOX the accuracy of the document,

Amended Class Action Complaint for Violation of the Federal Securities Laws

including its financial statements. About the CMP, Summit, and Hybrid acquisitions, Defendants stated:

> The [CMP] acquisition consideration consisted of a cash payment of $1,500,000, unsecured promissory notes in the aggregate principal amount of approximately $770,820, having a one-year maturity, and an aggregate of 7,800,000 restricted shares of the Company's common stock. During the one-year period following the closing, the two sellers of CMP may become entitled to receive up to an additional $1,905,000 in cash, in the aggregate, and 4,740,960 shares of common stock of the Company, in the aggregate, based on the gross profit generated by CMP product line for the period from May 1, 2017 to April 30, 2018. Per the terms of the Merger Agreement, post-closing adjustments to CMP's working capital is directly offset to the unsecured promissory notes payable. Management has estimated that the post-closing working capital adjustments amounted to $104,032, which management estimates will result in a decrease of the unsecured promissory notes payable from $770,820 to $666,788. In accordance with ASC 805, management has evaluated the estimated fair value of the contingent consideration based a probability-weighted assessment of the occurrence of CMP reaching certain gross profit earnout targets. The Company initially recorded a contingent liability for the contingent cash consideration of $1,735,375 $1,905,000 and recorded contingent equity consideration of $10,763,760. Based on information obtained during the fourth fiscal quarter, the Company revised its estimate of the contingent cash consideration from $1,735,375 to $1,905,000, and its estimate of the contingent equity consideration from $10,763,760 to $11,852,400. The fair value of the contingent equity consideration is recorded in additional paid in capital.

> ***

> The [Summit] acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations. The consideration paid to the Members of Summit at the closing included the Cash Consideration, consisting of an aggregate of $905,231 in cash, net of cash received, $187,849 in cash held back and the Share Consideration, consisting of an aggregate of 1,280,000 shares common stock. $187,849 of the Cash Consideration and approximately 640,000 shares of common stock from the Share Consideration were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things,

- 54 -

breaches of representations, warranties and covenants contained in the Merger Agreement. The Members may become entitled to receive earn-out consideration of up to an additional 1,280,000 shares of common stock, in the aggregate, based on the net revenue performance of the Summit business during a one-year period following the closing.

\*\*\*

On July 11, 2018, the Company completed its acquisition of Hybrid, a specialist design agency. Pursuant to the terms of the Agreement with the members of ZDCA, parent of wholly-owned subsidiary, Hybrid, the Company purchased the entire issued member interest of ZDCA. Following the acquisition, ZDCA operates as a wholly-owned subsidiary of the Company, with Hybrid continuing to operate as wholly-owned subsidiary of ZDCA.

The acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations.  The consideration paid to the Members of Hybrid at the closing included the Cash Consideration, consisting of an aggregate of $847,187 in cash, net of cash received, $82,106 in cash held back and the Share Consideration, consisting of an aggregate of 360,000 shares common stock. $82,106 of the Cash Consideration and 162,000 shares of common stock from the Share Consideration were held back by the Company issuable on January 1, 2019. The Members may become entitled to receive earn-out payments of up to $1.37 million, through a combination of cash and stock payments, based on the net revenue performance of the Hybrid business during the period September 1, 2018 through August 31, 2019.

135.   In addition, in the 2018 10-K, on its Consolidated Statement of Operations, KushCo recorded Net Loss of $10,198,872.  On its Balance Sheet, KushCo recorded Additional paid-in capital of $94,666,689, Goodwill of $49,564,325, and Total Liabilities of $22,003,086. Defendant KushCo reprinted these financial statements in a November 26, 2018 press release.

136.   The foregoing SEC filing was materially false and/or misleading because Defendants KushCo, Kovacevich, and Tedford knowingly or recklessly:

a.   In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for the

Amended Class Action Complaint for Violation of the Federal Securities Laws

CMP, Summit, and Hybrid acquisitions as equity instead of as liabilities;

b. Understated KushCo's Net Loss for FY 2018 by $14,137,894, understated its Goodwill by $2,703,028, understated its Total Liabilities by $5,003,409, and overstated its Additional paid-in capial by $10,251,202;

c. In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 2018 10-K, it admitted that these errors were "material misstatements."

137.   KushCo's 2018 10-K included the following Report Of Independent Registered Public Accounting Firm, in which RSMB stated, in relevant part:

**Opinion on the Financial Statements**

We have audited the accompanying consolidated balance sheets of KushCo Holdings, Inc. (the Company) as of August 31, 2018 and 2017, and the related consolidated statements of operations, stockholders' equity, and cash flows for the fiscal years ended August 31, 2018 and 2017, and the related notes (collectively referred to as the consolidated financial statements). In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company as of August 31, 2018 and 2017, and the consolidated results of its operations and its cash flows for the each of the two years in the period ended August 31, 2018, in conformity with accounting principles generally accepted in the United States of America.

***

**Basis for Opinion**

These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on the Company's consolidated financial statements based on our audits. We are a public accounting firm registered with the Public Company Accounting Oversight Board (United States) (PCAOB) and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of

Amended Class Action Complaint for Violation of the Federal Securities Laws

the Securities and Exchange Commission and the PCAOB.

We conducted our audits in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether due to error or fraud. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. As part of our audits, we are required to obtain an understanding of internal control over financial reporting, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion.

Our audits included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements. Our audit also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that our audit provides a reasonable basis for our opinion. (Emphasis in original).

138. The foregoing audit opinion was false and misleading because, as described above in detail, RBSM knowingly or recklessly:

a. failed to exercise due professional care in planning and performing its audit, and failed to follow required PCAOB standards;

b. failed to analyze the contingent stock earnout provisions in the CPM acquisition, as required by PCAOB standards;

c. failed to determine that Kushco had incorrectly applied the simple, straightforward GAAP provisions ASC 805 and ASC 480 in accounting for contingent stock consideration during the periods of acquisitions and in subsequent reporting periods;

d. disregarded that KushCo's classifying contingent stock consideration from the CMP acquisition as equity rather than as a liability was materially false;

- 57 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

e. certified KushCo's financial statements as materially accurate notwithstanding that KushCo understated its Net Loss by $14,137,894, understated its Goodwill by $2,703,028, understated its Total Liabilities by $5,003,409, and overstated its Additional paid-in capital by $10,251,202;

f. issued a clean audit opinion, stating that it applied PCAOB standards and that KushCo's financial statements presented fairly its financial position and were in accordance with GAAP when that opinion constituted an egregious refusal to see the obvious, a refusal to investigate what was not just doubtful but plainly wrong, and was severely reckless.

139. On January 8, 2019, Kushco filed its 1Q 2019 10-Q, including financial statements for the quarter ended November 30, 2018. Defendants Kovacevich and Tedford signed the 1Q 2019 10-Q, certifying under SOX the accuracy of the document, including its financial statements. About the Summit and Hybrid acquisitions, Defendants KushCo, Kovacevich and Tedford stated:

> NOTE 2 - ACQUISITION OF SUMMIT INNOVATIONS, LLC
>
> On May 2, 2018, the Company completed its acquisition of Summit Innovations, LLC ("Summit"), a leading distributor of hydrocarbon gases to the legal cannabis industry. Pursuant to the terms of the merger agreement with Summit, Summit merged with and into KCH Energy, LLC, a wholly-owned subsidiary of the Company, with KCH Energy, LLC as the surviving entity.
>
> The acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations. Total purchase consideration at closing consisted of 640,000 shares of common stock with a fair value of $3,577,600 and cash consideration of $905,231, net of cash received. Cash consideration of $187,849 and approximately 640,000 shares of common stock were held back by the Company for a period of 15 months for potential post-closing working capital and/or indemnification claims relating to, among other things, breaches of representations, warranties and covenants

Amended Class Action Complaint for Violation of the Federal Securities Laws

contained in the merger agreement. The former members of Summit may become entitled to receive earn-out consideration of up to an additional 1,280,000 shares of the Company's common stock, in the aggregate, based on the net revenue performance of the Summit business during a one-year period following the closing.

NOTE 3 - ACQUISITION OF THE HYBRID CREATIVE, LLC

On July 11, 2018, the Company completed its acquisition of Zack Darling Creative Associates ("ZDCA"), and its wholly-owned subsidiary The Hybrid Creative, LLC ("Hybrid"), which together operated as a specialist design agency. Pursuant to the terms of the purchase agreement with the members of ZDCA, the Company purchased the entire issued member interest of ZDCA. Following the acquisition, ZDCA operates as a wholly-owned subsidiary of the Company, with Hybrid continuing to operate as wholly-owned subsidiary of ZDCA.

The acquisition was accounted for using the acquisition method of accounting in accordance with ASC 805, Business Combinations. The consideration paid to the members of Hybrid at the closing included cash consideration consisting of an aggregate of $847,187 in cash, net of cash received, $82,106 in cash held back and share consideration consisting of an aggregate of 360,000 shares of the Company's common stock. The former members of ZDCA may become entitled to receive earn-out payments of up to $1.37 million consisting of a combination of cash and stock payments, based on the net revenue performance of Hybrid during the period September 1, 2018 through August 31, 2019.

140. In addition, in the 1Q 2019 10-Q, on its Consolidated Statement of Operations, KushCo recorded Net Loss of $8,185,050. On its Balance Sheet, KushCo recorded Additional paid-in capital and Total Stockholders' Equity of $75,838,222 and $72,305,929 respectively, including the contingent equity consideration related to the CMP and Summit acquisitions, Goodwill of $49,564,325, and Total Liabilities of $34,561,056. Defendant KushCo reprinted these financial statements in a January 8, 2019 press release.

141. The foregoing SEC filing was materially false and/or misleading because Defendants KushCo, Kovacevich and Tedford knowingly or recklessly:

Amended Class Action Complaint for Violation of the Federal Securities Laws

a. In violation of GAAP provisions ASC 805 and ASC 480, incorrectly accounted for the fair value of contingent stock consideration for the CMP, Summit, and Hybrid acquisitions as equity instead of as a liability;

b. Understated KushCo's Net Loss for the quarter by $394,265, understated its Goodwill by $2,703,028, understated its Total Liabilities by $5,397,675, and overstated its Total Shareholders' Equity by $2,694,647;

c. In Kushco's April 9, 2019 8-K announcing the restatement of the financial statements in the 1Q 2019 10-Q, it admitted that these errors were "material misstatements."

## THE TRUTH EMERGES

142. On April 9, 2019, after the close of trading, KushCo filed a Form 8-K and attached press release stating that the financial statements in each 10-Q and 10-K it filed with the SEC during the Class Period contained "material misstatements" related to the accounting for contingent consideration related to the CMP, Summit, and Hybrid acquisitions, and that those financial statements should no longer be relied upon. KushCo admitted that contingent stock consideration should always have been classified as liability.

143. In the April 9, 2019 8-K and attached press release Kushco revealed that the restated financial statements for FY 2018 would show a $14.1 million increase in net loss, from $10.2 million to $24.3 million, stating:

**Decision to Restate Prior Period Financial Statements for Fiscal 2018 and 2017**

The Company identified inadvertent errors in the accounting for certain shared-settled contingent consideration ("Contingent Consideration") relating to its acquisition of CMP Wellness in May 2017, Summit Innovations in May 2018, and Hybrid Creative in July 2018. In connection with those acquisitions, Contingent Consideration relating to the respective earnout

- 60 -

arrangements were recorded as equity. Upon further evaluation, the Company determined that the Contingent Consideration should have been accounted for as liabilities with changes in the fair value recorded in the Company's consolidated statements of operations.

The Company expects the corrected misstatements to have the following impact on its restated annual consolidated financial statements:

- Increase net loss from $10.2 million to $24.3 million during its fiscal year ended August 31, 2018;

- Increase net income from $0.1 million to $1.7 million during its fiscal year ended August 31, 2017;

- No impact on its net revenue or gross profit for any of the restated fiscal periods; and

- No impact on its cash flows from operations for any of the restated fiscal periods.

The Company intends to file such amended reports as soon as practicable.

144.   On this news, KushCo's stock price dropped 7.76%, falling $0.45 per share in trading on April 10, 2019 to close at $5.35 on relatively heavy volume of over 2.8 million shares traded versus average daily volume during the Class Period of 383,000. As a direct and proximate result of Defendants' knowing or reckless wrongdoing, Plaintiffs and the Class suffered damages.

## ADDITIONAL SCIENTER ALLEGATIONS

145.   By violating GAAP provisions ASC 805 and ASC 480, KushCo understated its losses from the CMP acquisition, alone, in the reporting periods immediately preceding the Summit acquisition, by approximately $9.6 million. Kushco falsely reported losses of only approximately $756,000 during this period, but its actual losses were over $10.3 million, or almost 1,300% higher than reported.

Amended Class Action Complaint for Violation of the Federal Securities Laws

146.   By violating GAAP provisions ASC 805 and ASC 480, KushCo understated its losses from the CMP acquisition, alone, in the reporting periods immediately preceding the Hybrid acquisition, by approximately $16.6 million. Kushco falsely reported losses of only approximately $2.9 million during this period, but its actual losses were over $19.5 million, or 568% higher than reported.

147.   As a result of hiding material financial information relating to the CMP acquisition from investors, KushCo's stock price was artificially inflated. The KushCo Defendants had motive to and indeed then took advantage of the artificially inflated stock price to use Company stock as consideration for the specific Summit acquisition. The KushCo Defendants stated that the purchase price included 640,000 Kushco shares (excluding contingent shares) valued at a total of $3,577,600. Defendants' reckless or knowing GAAP violations following the CMP acquisition allowed KushCo to use fewer shares (of artificially inflated stock) to acquire Summit.

148.   The KushCo Defendants had motive to and indeed took advantage of the artificially inflated stock price to use Company stock as consideration for the specific Hybrid acquisition. The KushCo Defendants stated that the purchase price included Kushco stock (excluding contingent shares) valued at $1,879,200. The KushCo Defendants' reckless or knowing GAAP violations following the CMP acquisition allowed KushCo to use fewer shares (of artificially inflated stock) to acquire Hybrid.

149.   The KushCo Defendants had motive to and indeed took advantage of Kushco's artificially inflated stock price during the Class Period to raise working capital cheaper.

150.   On June 8, 2018, KushCo filed a "Prospectus Supplement" with the SEC. The Supplement described a public offering of 7,500,000 shares of KushCo common stock, and warrants to purchase up to 3,750,000 shares of KushCo

Amended Class Action Complaint for Violation of the Federal Securities Laws

common stock. The common stock was offered at $4.80 per share. In the 3Q 2018 10-Q, under subsequent events, about the capital raise, Defendants stated:

> On June 7, 2018, the Company entered into a securities purchase agreement (the "Purchase Agreement") with certain accredited investors (the "Purchasers") pursuant to which the Company agreed to issue and sell an aggregate of 7,500,000 shares of its common stock and warrants to purchase 3,750,000 shares of common stock in a registered direct offering (the "Offering"). The securities were offered by the Company pursuant to its shelf registration statement on Form S-3 (File No. 333-221910). Subject to certain ownership limitations, the warrants are immediately exercisable at an exercise price equal to $5.28 per share of common stock. The warrants are exercisable for five years from the date of issuance. The combined per share purchase price for a share of common stock and half of a warrant was $4.80.

> The Company completed the Offering on June 12, 2018 for aggregate gross proceeds of $36.0 million and net proceeds, after deducting the placement agent fees and other estimated offering expenses, of approximately $32.9 million. A.G.P./Alliance Global Partners (the "Placement Agent") acted as the placement agent for the Offering. The Company agreed to pay the Placement Agent an aggregate cash fee equal to 7% of the aggregate gross proceeds raised in the Offering. The Company also agreed to reimburse the Placement Agent for up to $120,000 of certain of its expenses with respect to the Offering and to pay the Placement Agent a non-accountable expense allowance equal to 1% of the aggregate gross proceeds raised in the Offering.

151.   The KushCo Defendants' reckless or knowing GAAP violations following the CMP acquisition, which artificially inflated KushCo's stock price, allowed KushCo to raise working capital more cheaply, by issuing fewer shares to raise the desired amount of capital.

152.   On January 16, 2019, KushCo filed a "Prospectus Supplement" with the SEC. The Supplement described a public offering of 6,476,190 shares of KushCo common stock, and warrants to purchase up to 3,238,095 shares of KushCo common stock. The common stock was offered at $5.25 per share.

Amended Class Action Complaint for Violation of the Federal Securities Laws

153.   KushCo announced that it expected to raise $31.3 million net of placement fees to raise working capital.

154.   The KushCo Defendants' reckless or knowing GAAP violations following the CMP, Summit, and Hybrid acquisitions, which artificially inflated KushCo's stock price, allowed KushCo to raise working capital more cheaply, by issuing fewer shares to raise the desired amount of capital.

155.   The Prospectus Supplement described earlier similar uses of KushCo's artificially inflated stock price to raise capital cheaper. Between September 1, 2018 and January 7, 2019, KushCo sold approximately 2.6 million unregistered shares, raising $10.4 million.

156.   The KushCo Defendants' reckless or knowing GAAP violations following the CMP, Summit, and Hybrid acquisitions, which artificially inflated KushCo's stock price, allowed KushCo to raise capital more cheaply, by issuing fewer shares to raise the desired amount of capital.

## **PLAINTIFFS' CLASS ACTION ALLEGATIONS**

157.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of KushCo during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company and of RBSM, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

158.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the OTCQB. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the

proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

159.   Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

160.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

161.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)   whether Defendants' acts as alleged violated the federal securities laws;

(b)   whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of KushCo;

(c)   whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)   whether the Individual Defendants caused KushCo to issue false and misleading SEC filings and public statements during the Class Period;

(e)   whether the KushCo Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

Amended Class Action Complaint for Violation of the Federal Securities Laws

(f)     whether Defendant RBSM acted knowingly or recklessly in issuing false and misleading audit opinions in the 2017 10-K and the 2018 10-K;

(g)     whether the prices of KushCo's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(h)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

162.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

163.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     throughout the Class Period, the Company's securities are traded in an efficient market;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period, averaging just over 383,000 shares traded daily;

(e)     the Company traded on the OTCQB, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities;

Amended Class Action Complaint for Violation of the Federal Securities Laws

1    Plaintiffs and members of the Class purchased and/or sold the
2    Company's securities between the time the Defendants failed to
3    disclose or misrepresented material facts and the time the true facts
4    were disclosed, without knowledge of the omitted or misrepresented
5    facts; and

6    (g)   Unexpected material news about the Company was rapidly reflected in
7          and incorporated into the Company's stock price during the Class
8          Period.

9    164.   Based upon the foregoing, Plaintiffs and the members of the Class are
10   entitled to a presumption of reliance upon the integrity of the market.

11   165.   Alternatively, Plaintiffs and the members of the Class are entitled to
12   the presumption of reliance established by the Supreme Court in *Affiliated Ute*
13   *Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972),
14   as Defendants omitted material information in their Class Period statements in
15   violation of a duty to disclose such information, as detailed above.

16   <u>**NO SAFE HARBOR**</u>

17   166.   The statutory safe harbor provided for forward-looking statements
18   under certain circumstances does not apply to any of the allegedly false statements
19   pleaded in this Complaint. The statements alleged to be false and misleading herein
20   all relate to then-existing facts and conditions. In addition, to the extent certain of
21   the statements alleged to be false may be characterized as forward-looking, they
22   were not identified as "forward-looking statements" when made and there were no
23   meaningful cautionary statements identifying important factors that could cause
24   actual results to differ materially from those in the purportedly forward-looking
25   statements. In the alternative, to the extent that the statutory safe harbor is
26   determined to apply to any forward-looking statements pleaded herein, Defendants
27   are liable for those false forward-looking statements because at the time each of
28   those forward-looking statements was made, the speaker had actual knowledge that

the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of KushCo who knew that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

167.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

168.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

169.   During the Class Period, the KushCo Defendants and RBSM, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and omitted material facts.

170.   The KushCo Defendants and RBSM violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

Amended Class Action Complaint for Violation of the Federal Securities Laws

171.   The KushCo Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading and omitted material information; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements or material omissions, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein. Information showing that the KushCo Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the KushCo Defendants' knowledge and control. As the senior managers and/or directors of KushCo, the Individual Defendants had knowledge of the details of KushCo's internal affairs.

172.   RBSM acted with scienter in that it knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading and omitted material information; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. RBSM, by virtue of its receipt of information reflecting the true facts of the Company, its control over its allegedly materially misleading statements or material omissions, and/or its associations with the Company which made it privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein. Information showing that RBSM acted

Amended Class Action Complaint for Violation of the Federal Securities Laws

1    knowingly or with reckless disregard for the truth is peculiarly within RBSM's
2    knowledge and control.

3          173.    The Individual Defendants, who are the senior officers and/or
4    directors of the Company, had actual knowledge of the material omissions and/or
5    the falsity of the material statements set forth above, and intended to deceive
6    Plaintiffs and the other members of the Class, or, in the alternative, acted with
7    reckless disregard for the truth when they failed to ascertain and disclose the true
8    facts in the statements made by them or other personnel of the Company to
9    members of the investing public, including Plaintiffs and the Class.

10         174.    RBSM had actual knowledge of the material omissions and/or the
11   falsity of the material statements set forth above, and intended to deceive Plaintiffs
12   and the other members of the Class, or, in the alternative, acted with reckless
13   disregard for the truth when it failed to ascertain and disclose the true facts in the
14   statements made by it to members of the investing public, including Plaintiffs and
15   the Class.

16         175.    As a result of the foregoing, the market price of the Company's
17   securities was artificially inflated during the Class Period. In ignorance of the falsity
18   of Defendants' statements, Plaintiffs and the other members of the Class relied on
19   the statements described above and/or on the integrity of the market price of the
20   Company's securities during the Class Period in purchasing the Company's
21   securities at prices that were artificially inflated as a result of Defendants' false and
22   misleading statements and omissions.

23         176.    Had Plaintiffs and the other members of the Class been aware that the
24   market price of the Company's securities had been artificially and falsely inflated
25   by Defendants' misleading statements and by the material adverse information
26   which Defendants did not disclose, they would not have purchased the Company's
27   securities at the artificially inflated prices that they did, or at all.

28

Amended Class Action Complaint for Violation of the Federal Securities Laws

177.   As a result of the wrongful conduct alleged herein, Plaintiffs and other members of the Class have suffered damages in an amount to be established at trial.

178.   By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

179.   Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

180.   During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of KushCo's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's financial position and business practices.

181.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by KushCo which had become materially false or misleading.

182.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which KushCo disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual

- 71 -

Amended Class Action Complaint for Violation of the Federal Securities Laws

Defendants exercised their power and authority to cause KushCo to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of KushCo's securities.

183.   Each of the Individual Defendants, therefore, acted as a controlling person of KushCo. By reason of their senior management positions and/or being directors of KushCo, each of the Individual Defendants had the power to direct the actions of, and exercised the same, to cause KushCo to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of KushCo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

184.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Lead Plaintiffs demand judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as Class representatives;

B.   Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

Amended Class Action Complaint for Violation of the Federal Securities Laws

1    D.    Awarding such other and further relief as this Court may deem just and

2  proper.

3                       <u>**DEMAND FOR TRIAL BY JURY**</u>

4         Plaintiffs hereby demand a trial by jury.

5  Dated: November 8, 2019              Respectfully submitted,

6                                       **THE ROSEN LAW FIRM, P.A.**

7

8                                       By: /s/ *Laurence M. Rosen*
                                        Laurence M. Rosen, Esq. (SBN 219683)

9                                       355 S. Grand Avenue, Suite 2450

10                                      Los Angeles, CA 90071
                                        Telephone: (213) 785-2610

11                                      Facsimile: (213) 226-4684

12                                      Email: lrosen@rosenlegal.com

13                                      and

14

15                                      **THE ROSEN LAW FIRM, P.A.**
                                        Jacob A. Goldberg, *pro hac vice*

16                                      Gonen Haklay, *pro hac vice*

17                                      101 Greenwood Avenue, Suite 440
                                        Jenkintown, PA 19046

18                                      Telephone: (215) 600-2817

19                                      Facsimile: (212) 202-3827
                                        Email: jgoldberg@rosenlegal.com

20                                      Email: ghaklay@rosenlegal.com

21

22                                      and

23

24

25

26

27

28

                                   - 73 -
Amended Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: kwolke@glancylaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

Amended Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2017, I electronically filed the foregoing *Amended Class Action Complaint for Violation of the Federal Securities Laws* with the Clerk of Court using the CM/ECF system, which will send notification of such to all CM/ECF participants.

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Gonen Haklay*
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
E-M: ghaklay@rosenlegal.com

*Lead Counsel for Lead Plaintiffs and the Class*

- 75 -

Amended Class Action Complaint for Violation of the Federal Securities Laws