**MAYER BROWN LLP**
Glenn K. Vanzura (238057)
*gvanzura@mayerbrown.com*
350 S. Grand Ave., 25th Floor
Los Angeles, California  90071
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Kevin C. Kelly (*pro hac vice*)
*kkelly@mayerbrown.com*
1221 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 506-2500
Facsimile:    (212) 506-2500

*Attorneys for Defendants*
*KushCo Holdings, Inc., Nicholas*
*Kovacevich, Christopher Tedford,*
*Jim McCormick and Chris Martin*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE W. MAY,<br><br>            Plaintiff,<br><br>    vs.<br><br>KUSHCO HOLDINGS, INC.,<br>NICHOLAS KOVACEVICH,<br>CHRISTOPHER TEDFORD, JIM<br>MCCORMICK, CHRIS MARTIN, and<br>RBSM LLP,<br><br>            Defendants. | Case No. 8:19-cv-00798-JLS-KES<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF GLENN K. VANZURA FILED CONCURRENTLY HEREWITH]*<br><br>Date:     May 15, 2020<br>Time:    10:30 a.m.<br><br>Judge:    Hon. Josephine L. Staton<br>Ctrm.:    10A<br><br>Trial Date:              N/A<br>Date Action Filed:    April 30, 2019 |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on May 15, 2020, at 10:30 a.m., or as soon thereafter as the matter may be heard, at the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, Courtroom 10A, before the Honorable Josephine L. Staton, Defendants KushCo Holdings, Inc., Nicholas Kovacevich, Christopher Tedford, Jim McCormick, and Chris Martin will and hereby do jointly move for an order dismissing Plaintiffs' First Amended Complaint (Dkt. No. 59) for failure to state a claim upon which relief can be granted.

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, the Declaration of Glenn K. Vanzura, the exhibits to the Declaration of Glenn K. Vanzura, the pleadings and papers on file herein, such arguments and evidence as may be presented in supplemental memoranda or as may be presented at the hearing, and any other matters of which the Court may take notice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 27, 2019.

1   Dated:  February 18, 2020                    Respectfully submitted,

2                                               **MAYER BROWN LLP**
                                                GLENN K. VANZURA
3                                               KEVIN C. KELLY

4

5                                               By: */s/ Glenn K. Vanzura*
                                                      Glenn K. Vanzura
6
                                                    *Attorneys for Defendants KushCo*
7                                                   *Holdings, Inc., Nicholas*
                                                    *Kovacevich, Christopher Tedford,*
8                                                   *Jim McCormick and Chris Martin*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT .................................................................. 1

II.    BACKGROUND ......................................................................................... 2

    A.    KushCo ....................................................................................... 2

    B.    KushCo's Acquisitions ............................................................... 4

    C.    KushCo's Voluntary Restatement And Alleged Misstatements ........... 5

    D.    Relevant Accounting Standards .................................................. 6

III.   LEGAL STANDARDS .............................................................................. 7

    A.    Dismissing Section 10(b) and SEC Rule 10b-5 Claims ...................... 7

    B.    The PSLRA Imposes Heightened And Exacting Standards For
          Pleading Scienter ....................................................................... 9

IV.    ARGUMENT ............................................................................................ 12

    A.    Merely Alleging A Restatement Falls Far Short Of Pleading
          Scienter .................................................................................... 13

    B.    The FAC Does Not Allege Any Facts To Show That Any
          Individual Defendant Knew The Accounting Was Erroneous ........... 14

    C.    The FAC's Tacked-On Motive Allegations Do Not Save Its
          Insufficient Scienter Pleading ................................................... 16

    D.    A Holistic Review Of The FAC Reveals The More Plausible
          Inference Of An Honest Accounting Error .................................... 18

    E.    The Section 20(a) Claims Must Also Be Dismissed ...................... 21

V.     CONCLUSION ......................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
  2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ........................................ 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................... 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  65 F. Supp. 3d 840 (N.D. Cal. 2014), *aff'd* 856 F.3d 605 (9th Cir. 2017) .......................................................................... 14, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ................................................... 13

*In re Connetics Corp. Sec. Litig.*,
  542 F. Supp. 2d 996 (N.D. Cal. 2008) .......................................... 14

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017) .................................................. 9

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ................................................... 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................. 11

*Garcia v. Hetong Guo*,
  2016 WL 102213 (C.D. Cal. Jan. 7, 2016) ...................................... 18

*Glazer Capital Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) .................................. 10, 14, 16, 17

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ................................................... 10

*In re Immersion Corp. Sec. Litig.*,
    2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) .................................................16

*In re Guess?, Inc. Sec. Litig.*,
    174 F. Supp. 2d 1067 (C.D. Cal. 2001).................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) .......................................................................8, 11, 18

*In re Medicis Pharm. Corp. Sec. Litig.*,
    689 F. Supp. 2d 1192 (D. Ariz. 2009).........................................................10, 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)........................................................11, 13, 16, 21

*In re Mun. Mortg. & Equity*,
    Case No. 1:08-md-01961-MJG (D. Md.) ....................................................17, 18

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*,
    876 F. Supp. 2d 616 (D. Md. 2012), *aff'd sub nom. Yates v. Mun.*
    *Mortg. & Equity, LLC* .........................................................................18

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
    50 F. Supp. 3d 1328 (C.D. Cal. 2014)..........................................9, 10, 13, 15, 21

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,
    169 F. Supp. 2d 1160 (N.D. Cal. 2001)..............................................................15

*Prodanova v. H.C. Wainwright & Co., LLC*,
    2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) ...................................................17

*Ryan v. Hyden*,
    708 F. App'x 319 (9th Cir. 2017)..........................................................................8

*Schaffer Family Inv'rs, LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015)................................................................18

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999)...............................................................10, 11, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...............................................................................*passim*

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012)................................................................9, 11, 12

- ii -

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..........................................................................*passim*

**Statutes**

15 U.S.C. § 78u-4 ............................................................................. 8, 10

Sarbanes-Oxley Act of 2002, § 404, 15 U.S.C.A. § 7262 ..............................3, 12, 16

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ........................................................................7, 8

H.R. Conf. Rep. 104-369, at 31, 32 (1995) .................................................. 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## I.    PRELIMINARY STATEMENT

4

In early 2019, KushCo Holdings, Inc. ("KushCo" or the "Company")

5    discovered and announced an error in its accounting and financial reporting in

6    connection with certain acquisitions the Company completed in 2017 and 2018.

7    Specifically, the Company determined that it had properly classified the contingent

8    *cash* consideration it had paid to acquire three companies, but had inadvertently

9    misclassified the contingent *stock* consideration it had also paid—classifying the

10   contingent stock consideration on its balance sheets as equity, rather than as a

11   liability.  As a result, KushCo restated its financial reports for 2017 and 2018.

12   Plaintiffs initiated this securities fraud action against KushCo, its CEO and

13   current and former CFOs (the "Individual Defendants" and, together with KushCo,

14   "Defendants"), alleging that they all intended to misclassify the contingent stock

15   consideration.[1]  To sustain their claims under Sections 10(b) and 20(a) of the

16   Securities Exchange Act, though, Plaintiffs are strictly required to satisfy the

17   stringent, heightened pleading requirements of the Private Securities Litigation

18   Reform Act of 1995 (the "PSLRA").  Among other things, the PSLRA requires

19   Plaintiffs to plead in their First Amended Complaint (the "FAC") *particularized*

20   *facts* giving rise to a *strong inference* that Defendants acted with the required state

21   of mind (scienter)—either an "intent to deceive, manipulate, or defraud," or

22   "deliberate recklessness."  *Webb v. Solarcity Corp.*, 884 F.3d 844, 850- 51 (9th Cir.

23   2018).

24   The FAC should be dismissed because it does not come close to meeting the

25   PSLRA's standard for pleading scienter.  Indeed, the FAC does not plead *any*

26

27   [1] In this Motion, "Defendants" does not refer to or include RBSM, LLP, which is
separately represented in this case and may separately respond to the First
28   Amended Complaint.

particularized facts to show any Defendant's scienter.  Instead, the FAC lumps all Defendants together—a pleading tactic courts routinely reject—and makes three kinds of generalized, boilerplate scienter allegations that have consistently been deemed insufficient to plead scienter.

*First*, the FAC suggests that the mere fact that KushCo restated certain prior period financial statements is indicative of all Defendants' scienter.  The Ninth Circuit has expressly held, though, that the mere publication of a restatement does not plead scienter.

*Second*, the FAC lumps the Individual Defendants together and indiscriminately lobs generalized allegations that they all must have known of the Company's accounting error because they were supposedly involved in KushCo's financial reporting and signed financial statement certifications.  A legion of cases, though, have expressly held that these types of allegations, without much more, do not adequately plead scienter.

*Third*, the FAC theorizes that all Defendants had a motive to make the accounting error, because it would supposedly allow the Company to complete acquisitions and raise capital more cheaply.  Not only is this theory factually nonsensical (because Defendants indisputably could not have known at the time how the error would affect future reported financial results), but also, once again, the Ninth Circuit has expressly rejected such generalized allegations of "motive and opportunity."

As demonstrated by recent, binding Ninth Circuit law, the FAC's allegations are clearly insufficient to plead scienter—whether the allegations are examined individually or holistically.  Accordingly, the FAC should be dismissed.

## II.   BACKGROUND

### A.   KushCo

KushCo markets and sells a variety of complementary products and services to customers doing business in the regulated medical and recreational cannabis and

cannabidiol industries.  FAC ¶¶ 17, 31.  KushCo is primarily a packaging company, offering legislatively compliant bottles, bags, tubes and containers to its customers. *Id*. ¶ 4.  The Company also offers sophisticated labeling, customization and marketing capabilities.  *Id*.

KushCo's principal offices are located in Cypress, California.  The Company was co-founded by Mr. Kovacevich and, in February 2014, was incorporated in Nevada.  *Id*. ¶¶ 17, 18.  In December 2015, KushCo was first listed on the OTC Market Group's OTC:QB Over-the-Counter Bulletin Board ("OTCQB").  *Id*. ¶ 17. KushCo qualifies as an "emerging growth company" under the Jumpstart Our Business Startups Act of 2012 (the "JOBS Act").  *See* Declaration of Glenn K. Vanzura ("Vanzura Decl."), Ex. A at 9.  KushCo is therefore exempt from various financial reporting requirements applicable to other public companies; for example, the Company is not required to comply with the auditor attestation requirements of Section 404 of the Sarbanes-Oxley Act.  *Id*.

KushCo has experienced tremendous growth since its inception.  In 2014, its first fiscal year of incorporation, the Company earned just $1.7 million in revenue. *Id*., Ex. B at 9.  By 2017, the year of the first acquisition at issue in this litigation, the Company's revenue had multiplied more than ten-fold, to $18.8 million.  *Id*., Ex. C at 22.  Just two years later, for fiscal year 2019, the Company reported $149 million in revenue.  *Id*., Ex. D at 29.  Overall, revenue is up nearly one hundred-fold from just five years ago.  The Company's employee headcount has similarly exploded.  In 2015, KushCo had just 29 full-time employees.  *Id*., Ex. B at 6.  By November 2019, KushCo employed 217 individuals, with the majority located in Orange County.  *Id*., Ex. D at 9.

**B.    KushCo's Acquisitions**

KushCo achieved some of its growth through strategic mergers and acquisitions designed to increase the Company's footprint in the legal cannabis industry.  KushCo's accounting for three such initiatives are at the center of this action:

- On May 1, 2017, KushCo completed an indirect acquisition of CMP Wellness, LLC ("CMP").  FAC ¶ 63.

- On May 2, 2018, KushCo completed the acquisition of Summit Innovations, LLC ("Summit"), a leading distributor of hydrocarbon gases.  *Id*. ¶ 131.

- On July 11, 2018, KushCo completed the purchase of the entire issued membership interest of Zack Darling Creative Associates, LLC ("ZDCA"), parent of a wholly-owned subsidiary, The Hybrid Creative, LLC ("Hybrid").  *Id*. ¶ 134.  Following the acquisition, ZDCA operates as a wholly-owned subsidiary of KushCo, with Hybrid continuing to operate as a wholly-owned subsidiary of ZDCA.  *Id*.

On May 4, 2017, April 10, 2018, and July 12, 2018, KushCo filed SEC Forms 8-K announcing the transactions whereby the Company acquired CMP, Summit, and Hybrid, respectively.  *Id*. ¶¶ 33-35.  Of relevance to this litigation, the Company's 8-Ks explained that part of the consideration paid for each acquisition was in the form of contingent stock (equity) consideration —*i.e.*, KushCo may be obligated to pay the acquiree a variable amount of KushCo stock in the future, depending on the future financial performance of each acquired company.  *Id*.

The alleged Class Period (July 13, 2017 through April 9, 2019) covers eight KushCo quarterly or annual financial reports (Forms 10-Q and 10-K).  *Id*. ¶¶ 114-41.  In its reports, KushCo made robust disclosures to investors about its acquisitions.  Importantly, the disclosures included detailed descriptions about the

manner in which the Company recorded and accounted for its acquisitions, including the manner in which it recorded and accounted for the contingent stock consideration associated with each transaction.  For example, the reports disclosed that the CMP, Summit, and Hybrid acquisitions were accounted for using the acquisition method of accounting in accordance with ASC 805.  *Id*. ¶¶ 48, 63, 81, 87.  The reports further disclosed that the purchase price for each acquisition consisted of certain amounts of cash and shares of KushCo stock that the sellers may be entitled to receive based on future performance of the acquired companies.  *Id*. ¶¶ 63, 81, 87.  For each acquisition, KushCo also disclosed that it had recorded the contingent *cash* consideration as a contingent *liability* and the contingent *stock* consideration as *equity*.  *Id*. ¶¶ 65, 83, 90.

### C.    KushCo's Voluntary Restatement And Alleged Misstatements

In early 2019, KushCo discovered that it had not correctly classified the contingent stock consideration component of the CMP, Summit, and Hybrid acquisitions.  The Company had correctly identified the contingent stock consideration for investors, but had recorded the consideration on the wrong line item of the Company's balance sheets.  As a result, the Company also had not re-measured the corresponding liabilities to fair value each reporting period, as required by GAAP.  Accordingly, on April 9, 2019, KushCo forthrightly and expeditiously announced that the estimated contingent stock consideration for all three acquisitions should have been classified as a liability, rather than as equity, and that the Company would therefore restate its financial statements for fiscal years 2017 and 2018 and the first fiscal quarter of 2019.  *Id*. ¶ 92.

The Company further advised the investing public that the balance sheet misclassification had *no impact* on KushCo's net revenues or gross profits, and *no impact* on its cash flows from operations, for any of the restated fiscal periods.  *Id*. ¶ 143.  However, the balance sheet misclassifications did impact the Company's income statements, which, as restated, reflected an increase in net loss from $10.2

million to $24.3 million during the fiscal year ended August 31, 2018.  *Id*.  On the other hand, the misclassification actually increased reported net income from $0.1 million to $1.7 million during the fiscal year ended August 31, 2017.  *Id*.

On April 10, 2019, KushCo's stock price fell $0.45 per share.  *Id*. ¶ 144.  This suit followed shortly thereafter.  Plaintiffs do not allege that Defendants mis-reported the fair value of the contingent cash and stock consideration at the time of each acquisition.  Nor do Plaintiffs allege that Defendants inaccurately described the manner in which KushCo accounted for the consideration.  Instead, Plaintiffs allege that each of the Company's eight financial reports during the Class Period was materially false and/or misleading because Defendants incorrectly classified the contingent stock consideration, by recording the consideration as equity, rather than as a liability.  *Id*. ¶¶ 116, 119, 124, 127, 133, 136, 141.

### D.    Relevant Accounting Standards

Generally Accepted Accounting Principles ("GAAP") are a common set of accounting principles, standards, and procedures issued by the Financial Accounting Standards Board ("FASB") that public companies in the United States follow to prepare their financial statements.  *See*, *e.g.*, *id*. ¶¶ 36, 37.  In connection with an acquisition, companies with GAAP-based financial statements must comply with the guidance set forth in FASB Accounting Standards Codification ("ASC") 805, recognizing and allocating total purchase consideration to all identifiable assets acquired and liabilities assumed, with the excess amount, if any, recorded as goodwill.  *Id*. ¶ 42.  ASC 805 requires the use of the acquisition method, which in turn requires, among other items, exercising an accounting judgment to determine how to classify the consideration transferred in the transaction.  *Id*.

One form of purchase consideration in an acquisition—contingent consideration (which is commonly referred to as an "earnout")—represents an obligation of the acquirer to transfer additional cash or equity if certain specified future financial targets are met by the acquired company.  *Id*. ¶ 43.  Contingent

consideration is measured at fair value as of the acquisition date.  *Id*.  The classification of many contingent consideration arrangements is evident.  For example, arrangements are classified as liabilities if they obligate the acquirer to deliver to the seller cash on a future date.  *Id*. ¶ 44.  If, however, a contingent consideration arrangement obligates the acquirer to deliver its own equity instruments to the seller, determining the classification can be challenging and requires some accounting judgment.  Accordingly, ASC 805 directs financial filers to ASC 480-10 for further guidance.  *Id*.

ASC 480-10 requires a freestanding financial instrument, such as stock, to be classified as a liability if the instrument has any one of a handful of characteristics.  If classified as a liability, the fair value of the contingent stock consideration is measured initially at fair value, and is then re-measured prospectively in each subsequent reporting period at fair value, with changes recognized each reporting period in the company's income statement.  *Id*. ¶ 53.  "If classified as equity, however, contingent stock consideration is not re-measured in subsequent reporting periods and is not accounted for in the income statement …."  *Id*.  Crucially, a company cannot determine ***at the time of classification*** whether electing to treat the contingent consideration as a liability (re-measurement required) versus equity (no re-measurement required) will have a positive, negative or neutral impact on earnings reported in the future.  *See id*. ¶ 53.  In other words, when KushCo originally determined to record the contingent stock consideration for each of the CMP, Summit and Hybrid acquisitions as equity rather than as a liability, the Defendants ***could not have known*** whether that determination would make future reported earnings better or worse.

## III.   LEGAL STANDARDS

### A.   Dismissing Section 10(b) and SEC Rule 10b-5 Claims

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it does not contain "enough facts to state a claim for relief that is

- 7 -

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitled to relief.'" *Id*. (*quoting Twombly*, 550 U.S. at 557).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 678-79.  As such, conclusory allegations and legal conclusions will not defeat a motion to dismiss. *Id*.; *see also Ryan v. Hyden*, 708 F. App'x 319, 320 (9th Cir. 2017).

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, Plaintiffs must adequately plead ***each*** of the following elements:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

To survive this motion to dismiss, the FAC must also satisfy the "[e]xacting pleading requirements" of the PSLRA (codified in relevant part at 15 U.S.C. § 78u-4).  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Failure to satisfy the PSLRA's heightened pleading standards for any one of the six elements of a Rule 10b-5 claim requires dismissal of the entire claim.  *In re Guess?, Inc. Sec. Litig.*, 174 F. Supp. 2d 1067, 1074 (C.D. Cal. 2001) (citing 15 U.S.C. §78u-4(b)(3)(A)) ("If a complaint does not meet the pleading requirements of the PSLRA, the court, upon motion of the defendant, ***shall*** dismiss the complaint.") (emphasis added).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and

1    matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.[2]

2    ## B.    The PSLRA Imposes Heightened And Exacting Standards For
3    ## Pleading Scienter

4      Congress passed the PSLRA for the express purpose of "protect[ing]

5    investors, issuers, and all who are associated with our capital markets from abusive

6    securities litigation," and to implement much needed procedural protections to

7    "discourage frivolous litigation."  H.R. Conf. Rep. 104-369, at 31, 32 (1995).  As

8    part of Congress's mission to curb the filing of meritless shareholder lawsuits, the

9    PSLRA imposed pleading requirements even higher than those of Federal Rule of

10   Civil Procedure 9(b).[3]  Congress specifically intended that the PSLRA's heightened

11   pleading requirements weed out inadequately pleaded claims at the pleading stage,

12   so as to preclude shareholder plaintiffs from bringing claims "with only faint hope

13   that the discovery process might lead eventually to some plausible cause of action."

14   *Id.*  This is because Congress recognized that shareholder plaintiffs could misuse

15   the discovery process "to impose costs so burdensome that it [was] often

16   economical for the victimized party to settle," even where the claims lack any

17   merit.  *Id.*

18     Complaints in securities fraud cases are often dismissed for failure to meet

19   the PSLRA's heightened pleading requirements for the second element of a

20   Rule 10b-5 claim—scienter.  *See*, *e.g.*, *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th

21   Cir. 2017) (affirming dismissal with prejudice of plaintiffs' securities fraud

22   complaint because plaintiff did not adequately plead scienter); *Oklahoma*

23   ──────────────

24   [2] *See also* Request For Judicial Notice In Support Of Defendants' Motion To
     Dismiss First Amended Complaint, filed concurrently herewith, at 2.

25
26   [3] Of course, a securities fraud complaint must additionally satisfy the heightened
     pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a

27   plaintiff to "state with particularity the circumstances constituting fraud …."  *In re
     VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (quoting Fed.

28   R. Civ. P. 9(b)).

- 9 -

*Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1371 (C.D. Cal. 2014) (granting motion to dismiss second amended complaint, including section 10(b) and 20(a) claims, in its entirety for failure to adequately plead scienter); *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192 (D. Ariz. 2009) (dismissing action where corporation erroneously applied accounting standard; other than pointing to the corporation's accounting error and restatement, plaintiffs failed to plead particularized facts giving rise to a strong inference of scienter).

As to scienter, the PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). The "required state of mind" is a mental state that is either an "intent to deceive, manipulate, or defraud," or "deliberate recklessness." *Solarcity*, 884 F.3d 844 at 850-51. "Deliberate recklessness is an extreme departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* (quotation marks and citation omitted).

The Ninth Circuit has held that shareholder plaintiffs must do more than make mere allegations to adequately plead scienter under the PSLRA—they must actually allege ***particularized facts*** demonstrating each defendant's "intent to deceive, manipulate, or defraud" or "deliberate recklessness." *VISX*, 298 F.3d at 897 ("we believe Congress made it crystal clear that the PSLRA's pleading requirements were put in place so that only complaints with particularized facts giving rise to a strong inference of wrongdoing survive a motion to dismiss"). The PSLRA's particularity requirement cannot be overstated. "[P]laintiffs proceeding under the PSLRA can no longer aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state ***specific facts*** indicating no less than a degree of recklessness that strongly suggests actual intent." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008) (emphasis added); *see*

- 10 -

*also In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983-84 (9th Cir. 1999) ("Although the words 'facts' and 'particularity' are not defined in the statute, their meaning is plain …. A fact is an event or circumstance, or a truth known by actual experience or observation. Particularity refers to the quality or state of being particular, *i.e.*, dealing with or giving details; detailed; minute; circumstantial. Thus, we read the statutory command that a plaintiff plead all the 'facts' with 'particularity' to mean that a plaintiff must provide a list of all relevant circumstances in great detail.") (quotation marks and citations omitted).

Finally, pleading particularized facts giving rise to a "strong inference" that each defendant acted with scienter requires more than an inference that is "merely plausible or reasonable." *Tellabs*, 551 U.S. at 314. Rather, the inference must be "cogent and compelling." *Id*. at 324. Thus, "a complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. The Court "must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Metzler*, 540 F.3d at 1061 (quotation marks omitted). "[T]his is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).[4]

---

[4] The Supreme Court has also explained that courts must "review 'all the allegations holistically'" to determine whether scienter has been adequately pleaded. *Matrixx*, 131 S. Ct. at 1324 (quoting *Tellabs*, 551 U.S. at 326)). In *Zucco Partners, LLC v. Digimarc Corporation*, the Ninth Circuit articulated a "dual inquiry" for scienter allegations, following the Supreme Court's decision in *Tellabs*. 552 F.3d 981, 991-92 (9th Cir. 2009). First, the court must focus on "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter[.]" *Id*. at 992. Second, if no individual allegations are sufficient, the court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id*. In *VeriFone*, the Ninth Circuit further clarified that courts may continue to follow this two-step approach, or alternatively may "conduct only a holistic analysis," as long as courts are

- 11 -

## IV.   **ARGUMENT**

The shareholder Plaintiffs here attempt to plead scienter in the FAC by making three types of boilerplate allegations:

*First*, the FAC suggests that the mere fact that KushCo restated certain prior period financial statements is, in itself, indicative of knowing or reckless conduct. The FAC further makes the bald assertion that the application of the relevant GAAP provisions (ASC 805 and ASC 480-10) to the contingent stock consideration in connection with the CMP, Summit and Hybrid acquisitions was so "simple and straightforward" that classifying it "as anything other than a liability is an obvious violation of a straightforward GAAP provision, and, at minimum, reckless." *Id.* ¶ 57; *see also id.* ¶¶ 66, 83, 89.

*Second*, the FAC turns to the Individual Defendants and alleges generically—and without specifying a single particularized fact—that they all were supposedly "directly or indirectly involved in drafting, producing, reviewing and/or disseminating some or all of the false and misleading statements and information alleged herein … was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company … [and] signed false certifications pursuant to the Sarbanes-Oxley Act of 2002 ('SOX'), attesting to the material accuracy of financial statements and effectiveness of the Company's internal controls."  FAC ¶ 26.  Similarly, the FAC alleges generically and without further explanation or facts that "[a]s the senior managers and/or directors of KushCo, the Individual Defendants had knowledge of the details of KushCo's internal affairs."  *Id.* ¶ 171.

*Third*, the FAC alleges that the "KushCo Defendants" had "motive" to inflate the Company's stock price so that KushCo could issue fewer shares as consideration for the Summit and Hybrid acquisitions, and could "raise working

---

mindful that such analysis not "simply ignore the individual allegations and the inferences drawn from them."  704 F.3d at 702-03.

1    capital cheaper." *Id*. ¶¶ 145-156.

2         Under the PSLRA and well-established Ninth Circuit law, it is beyond doubt

3    these allegations, whether taken individually or holistically, come nowhere close to

4    adequately pleading scienter.  Most critically, the FAC does not plead any

5    particularized facts to demonstrate that each Defendant actually knew that the

6    Company had misclassified the contingent stock consideration, or was deliberately

7    reckless as to the error.

8         **A.    Merely Alleging A Restatement Falls Far Short Of Pleading**

9              **Scienter**

10        The FAC's first defect is that it does little more than repeatedly point to the

11   fact that KushCo restated certain prior period financial statements due to the

12   contingent stock consideration misclassification.  FAC ¶¶ 57, 66, 83, 89.  The law

13   is clear that such allegations do not plead scienter.  Indeed, the Ninth Circuit has

14   repeatedly, expressly and long held that "the mere publication of inaccurate

15   accounting figures, or a failure to follow GAAP, without more, does not establish

16   scienter."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390

17   (9th Cir. 2002)) (quotation marks omitted); *see also City of Dearborn Heights Act*

18   *345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017)

19   ("a failure to follow GAAP, without more, does not establish scienter") (quotation

20   marks omitted); *Zucco Partners*, 552 F.3d at 1000 ("[i]n general, the mere

21   publication of a restatement is not enough to create a strong inference of scienter");

22   *Metzler*, 540 F.3d at 1069 (9th Cir. 2008) ("scienter cannot be established by

23   publishing inaccurate accounting figures, even when in violation of GAAP")

24   (citation omitted); *Medicis*, 689 F. Supp. 2d at 1203-04 ("Thus, as a general rule, a

25   restatement of financial data due to an accounting error, without more, is

26   insufficient to create a strong inference of scienter.").  "The same holds true for

27   alleged violations of GAAP and inaccurate Sarbanes-Oxley certifications." *IXIA*,

28   50 F. Supp. 3d at 1358 (*citing Altris Software*, 288 F.3d at 390).

**B.     The FAC Does Not Allege Any Facts To Show That Any Individual Defendant Knew The Accounting Was Erroneous**

The FAC next attempts to allege that all of the Individual Defendants somehow had scienter, but fails to plead a single fact specific to any Individual Defendant showing that he actually knew or deliberately disregarded that KushCo's financial statements misclassified the contingent stock consideration for the CMP, Summit and Hybrid acquisitions.

As an initial matter, the FAC impermissibly lumps all of the Individual Defendants together, and fails to plead any of the kinds of particularized facts specific to each individual required by the PSLRA.  Such group pleading has long been disallowed by every court in the Ninth Circuit to address it, as "group pleading is not compatible with the PSLRA's requirements."  *In re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) (citing *In re New Century*, 588 F. Supp. 2d 1206, 1223-24 (C.D. Cal. 2008) ("All of the Circuit courts that have expressly considered whether group pleading is compatible with PSLRA have concluded that it is not.")); *see also Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (affirming dismissal of second amended consolidated complaint because shareholder plaintiffs were required to plead individual, not collective scienter; and for failure to allege facts giving rise to a strong inference of the corporate officers' scienter under stringent pleading requirements of the PSLRA).

More to the point, where, as here, the alleged securities fraud is predicated on a restatement of prior period financial reports, Plaintiffs must plead with particularity that each of the Individual Defendants "knew specific facts at the time that rendered their accounting determinations fraudulent."  *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1011 (N.D. Cal. 2008) (citations omitted).[5]  In

---

[5] *See also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 860 (N.D. Cal. 2014) (plaintiffs failed to plead with "specificity" the defendants' actual knowledge that the "assumptions about goodwill was unreasonable and that the defendants knew or believed that their

*Zucco Partners*, for example, the Ninth Circuit affirmed a dismissal with prejudice notwithstanding the complaint's multitude of factual allegations, including that (i) senior management capitalized costs that they knew should have been expensed under GAAP, (ii) the CFO instructed the director of supply chain management to not write down obsolete inventory because doing so would result in the company missing market expectations, and (iii) as a result, the company was forced to issue a restatement of prior period financial statements.  552 F.3d at 993, 994-95.

Here, the FAC does not even attempt to plead particularized facts to show that any Individual Defendant knew of the relevant accounting principles, much less that each individual knew at the time of the original accounting classifications that those judgments were erroneous.  *See id.*; *IXIA*, 50 F. Supp. 3d at 1361 (in the context of a restatement, "to rely on defendants' purported violation of GAAP principles to prove scienter," a complaint must plead facts demonstrating that the individual defendants each knew of the relevant accounting principles ***and*** knew that the company was misinterpreting them) (citations omitted).  Thus, at its most basic level, the FAC fails to plead "how or when each defendant became aware of the allegedly improper accounting practices, [or] the extent of each defendant's contribution or involvement," which precludes Plaintiffs from meeting their scienter pleading burden.  *In re Pac. Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1167 (N.D. Cal. 2001).  The FAC's allegations come nowhere near the conduct alleged in *Zucco Partners* and other Ninth Circuit cases where, even with additional factual pleading, the courts rejected a restatement as indicative of scienter.  If the allegations in those cases were deemed insufficient to survive a motion to dismiss by the District Courts and Ninth Circuit, the allegations here must likewise be rejected.

Plaintiffs' boilerplate allegations that the Individual Defendants' signed SOX

---

goodwill numbers were inaccurate") (quotation marks omitted), *aff'd* 856 F.3d 605 (9th Cir. 2017).

1   certifications do not move the needle.  *See* FAC ¶ 26.  As the Ninth Circuit has

2   expressly held, "Sarbanes-Oxley certifications are not sufficient, without more, to

3   raise a strong inference of scienter." *Zucco Partners*, 552 F.3d at 1004 (*quoting*

4   *Magistri*, 549 F.3d at 747-48).  Moreover, "required certificates under Sarbanes-

5   Oxley … add nothing substantial to the scienter calculus … and do not make …

6   otherwise insufficient allegations more compelling by their presence in the same

7   complaint." *Id*. at 1003-04.

8          Finally, the FAC's bare allegations that the Individual Defendants had

9   generic knowledge of KushCo's internal affairs due to their positions with the

10  Company are also clearly insufficient to plead scienter.  *See* FAC ¶ 171.  The FAC

11  does not plead a single fact to support these boilerplate allegations.  And, once

12  again, the Ninth Circuit has expressly held that "corporate management's general

13  awareness of the day-to-day workings of the company's business does not establish

14  scienter—at least absent some additional allegation of specific information

15  conveyed to management and related to the fraud." *Metzler Inv. GMBH v.*

16  *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008); *see also Zucco*

17  *Partners*, 552 F.3d at 998 ("generalized claims about corporate knowledge are not

18  sufficient to create a strong inference of scienter"); *In re Immersion Corp. Sec.*

19  *Litig.*, 2011 WL 6303389, at *6 (N.D. Cal. Dec. 16, 2011) (finding scienter not

20  pleaded despite CEO comment that leadership "is very, very hands-on").  The FAC

21  does not make a single "additional allegation of specific information conveyed to

22  [any Individual Defendant] and related to the fraud." *Id*.  Thus, the FAC's generic

23  allegations about the Individual Defendants' supposed involvement should also be

24  rejected as insufficient to plead scienter.

25  **C.     The FAC's Tacked-On Motive Allegations Do Not Save Its**

26  **Insufficient Scienter Pleading**

27         The FAC's reliance on vague allegations of "motive" to buttress its other,

28  inadequate scienter allegations is equally unavailing.  *See* FAC ¶ 145-56.  As a

matter of law, mere allegations of "motive and opportunity" fail to satisfy the PSLRA's heightened pleading requirements.  *Silicon Graphics*, 183 F.3d at 979 (plaintiffs proceeding under the PSLRA cannot "aver intent in general terms of mere 'motive and opportunity' or 'recklessness,' but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent").

The Ninth Circuit has consistently, repeatedly and expressly held that the precise kinds of motive allegations made in the FAC are insufficient to plead scienter.  For example, in *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, the Ninth Circuit held that "allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects."  697 F.3d 869, 884 (9th Cir. 2012); *see also SolarCity*, 884 F.3d at 856 (rejecting allegations that the defendants had motive to commit GAAP violations (which later required a restatement) so that the company could, among other things, "generate badly needed cash" and "fund capital expenditures and strategic acquisitions"); *Magistri*, 549 F.3d at 748 (allegations of "mere motive and opportunity" are not enough to plead scienter under the PSLRA because, as with every transaction, a corporation will always "have a desire to complete the transaction") (citation omitted); *Prodanova v. H.C. Wainwright & Co., LLC*, 2018 WL 8017791, at *6,7 (C.D. Cal. Dec. 11, 2018) (*quoting Solarcity*, 884 F.3d at 856) ("allegations of 'routine corporate objectives,' including the motivation to boost profitability and stock prices in anticipation of an IPO or other form of stock offering, are not sufficiently particularized to meet the heightened pleading standards [of the PSLRA]").[6]  Thus, while the FAC speculates

---

[6] Nearly identical allegations have been made by Plaintiffs' counsel—and rejected by the courts—in other cases.  For example, in *In re Mun. Mortg. & Equity*, Case No. 1:08-md-01961-MJG (D. Md.), the complaint alleged that the defendants were "highly motivated to commit the fraud alleged herein in order to artificially boost

1    that Defendants were motivated to inflate KushCo's stock price so that it could

2    raise capital and fund acquisitions more cheaply, such allegations are plainly

3    insufficient under controlling Ninth Circuit precedent.

4            For each of these reasons, the FAC's generically-pleaded scienter theories as

5    to the Individual Defendants must fail as a matter of law.  Moreover, because the

6    FAC fails to plead scienter as to any Individual Defendant, and because the Ninth

7    Circuit expressly rejects "collective scienter" theories, it necessarily follows that the

8    FAC's theories also fail to plead scienter as to the Company.  *See Garcia v. Hetong*

9    *Guo*, 2016 WL 102213, at *12 (C.D. Cal. Jan. 7, 2016) ("A defendant corporation

10   is deemed to have the requisite scienter for fraud ***only if*** the individual corporate

11   officer making the statement has the requisite level of scienter.") (quotation

12   omitted) (emphasis added).[7]

13   **D.    A Holistic Review Of The FAC Reveals The More Plausible**

14   **Inference Of An Honest Accounting Error**

15          In addition to examining each specific allegation, the Court should view the

16   allegations "holistically" to determine whether they give rise to a strong inference

17   of scienter.  *Matrixx*, 131 S. Ct. at 1324.

18          The Ninth Circuit recently demonstrated such an examination, applying the

19   law to facts that are instructive here.  In *Solarcity*, 884 F.3d at 851, the plaintiff

20   ───────────────────

21   the prices of MuniMae Shares during the Class Period, which the company used as

     currency to fund corporate acquisitions."  Dkt. No. 45 (Consolidated and Am. Class

22   Action Compl.) ¶ 253.  The District Court and Fourth Circuit both found those

     allegations insufficient to plead scienter.  *See In re Mun. Mortg. & Equity, LLC,*

23   *Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 643 (D. Md. 2012), *aff'd sub nom.*

24   *Yates v. Mun. Mortg. & Equity, LLC* 744, F.3d 874 (4th Cir. 2014).

25   [7] Notably, the FAC does not even attempt to identify the "individual corporate

26   officer" allegedly responsible for each alleged misstatement, much less plead that

     individual's scienter.  *See Schaffer Family Inv'rs, LLC v. Sonnier*, 120 F. Supp. 3d

27   1028, 1038 (C.D. Cal. 2015) (the complaint "must adequately specify the

     statements it claims were false or misleading… and identify those responsible for

28   the statements").

1 | brought a Rule 10b-5 securities claim against SolarCity and its CEO and CFO
2 | following an accounting error that resulted from the company's failure to adhere to
3 | its own GAAP-compliant protocols. *Id*. at 848. SolarCity's accounting error
4 | inflated the gross margins of the company's sales, which led it to report profits
5 | inaccurately for both product sales and product leases. *Id*. This improved
6 | SolarCity's apparent financial situation, which allowed the company to expand, and
7 | even to complete an initial public offering ("IPO"). *Id*. SolarCity later realized and
8 | publicly announced its serious accounting error, and restated prior period financial
9 | statements. *Id*.

10 | As to scienter, the plaintiffs alleged that SolarCity's CEO and CFO "were
11 | involved in the company's accounting and financial decision making, understood
12 | SolarCity's accounting practices, and knew that the company's sales division had
13 | been performing poorly." *Id*. The plaintiffs' specific factual allegations included,
14 | *inter alia*: (1) eleven confidential witness statements from former SolarCity
15 | employees, some of which specifically alleged that defendants' executives were
16 | "actively involved in [defendant's] financials;" (2) that the alleged fraud was
17 | critical to the company's successful IPO, and individual defendants were major
18 | stockholders and incentivized to maintain the company's stock price, thus creating
19 | a motive to commit the fraud; (3) that a week before releasing a statement regarding
20 | the relevant accounting error, SolarCity's COO was replaced, and a few months
21 | later the CFO resigned; and (4) that it "strain[ed] credulity" that SolarCity could
22 | make such a miscalculation, yet have no idea that this calculation was erroneous.
23 | *Id*. at 853-55.

24 | The Ninth Circuit held that these allegations, viewed individually ***and***
25 | holistically, were insufficient to plead scienter. The Ninth Circuit explained that
26 | although the plaintiff "alleged facts that give us pause insofar as they indicate that
27 | all was not right at the helm of SolarCity during the Class Period," "[t]he bar set by
28 | *Tellabs* is not easy to satisfy," and "with all things relevant considered, we hold that

1   [the plaintiff's] allegations do not support a strong inference of scienter." *Id*. at
2   855-56.

3        Comparing the voluminous and detailed factual scienter allegations in
4   *Solarcity* with the FAC's sparse, non-specific, and boilerplate allegations here
5   makes exceedingly clear that the FAC does not come close to meeting the PSLRA's
6   heightened pleading standard.  Indeed, unlike in *Solarcity*, the FAC here pleads no
7   particularized facts, offers no confidential witness statements, and describes no
8   other bases from which any inference of scienter can be drawn, much less a "strong
9   inference."

10       Similarly, in *Zucco Partners*, notwithstanding a financial restatement
11   following accounting errors, the resignation of the CFO and auditing firm,
12   confidential witness allegations, and stock sales by the individual defendants, the
13   Ninth Circuit concluded that the allegations together are "not as cogent or
14   compelling as a plausible alterative inference—namely, that although [the
15   company] was experiencing problems controlling and updating its accounting and
16   inventory tracking practices, there was no specific intent to fabricate the accounting
17   misstatements at issue."  552 F.3d at 1007 (emphasis added).  As with *Solarcity*, the
18   Ninth Circuit's reasoning in *Zucco Partners* applies even more strongly here, where
19   Plaintiffs do not offer any confidential witness allegations or allege stock sales by
20   the Individual Defendants.  *See also Insight*, 2010 WL 2105448, at *11 (even
21   though the company restated financial statements and "may have engaged in sloppy
22   or negligent accounting practices," the more "plausible alternative inference" was
23   that "there was no specific intent to commit fraud") (citation omitted).

24       Here, the most plausible inference to be drawn from the FAC is that KushCo
25   made an honest mistake when making a judgment call as to whether the contingent
26   stock consideration should be classified as equity or as a liability.  The fact that
27   none of the Defendants could have known at the time of the accounting judgments
28   how they would affect future reported operating results makes the honesty of the

- 20 -

mistake even more apparent. *See*, 6-7, *supra*.[8]  Moreover, when the classification error was identified, KushCo forthrightly and expeditiously restated its prior period financial statements to correct the error.

In light of the FAC's failure to make any particularized factual allegations to support a strong inference of scienter contrary to the more plausible, innocent inference, that inference of an honestly mistaken judgment must carry the day. *See Tellabs*, 551 U.S. at 314; *Metzler*, 540 F.3d at 1061.

### E.    The Section 20(a) Claims Must Also Be Dismissed

As a matter of law, because the FAC fails to plead a primary violation of Section 10(b) by any Defendant, the derivative Section 20(a) control person claim must also be dismissed. *See IXIA*, 50 F. Supp. 3d at 1370 ("'Section 20(a) claims may be dismissed summarily ... [however,] if a plaintiff fails to adequately plead a primary violation of section 10(b).'  Because the court has dismissed plaintiffs' section 10(b) and Rule 10b–5 claims, there is no primary violation upon which to predicate section 20(a) liability.  Consequently, it dismisses plaintiffs' § 20(a) claim.") (quoting *Zucco Partners*, 552 F.3d at 990).

---

[8] This truism of basic accounting principles is evidenced by KushCo's restatement itself.  When the accounting error was corrected and the fair value of the contingent stock consideration was re-measured prospectively in the restatement, it positively impacted net earnings in some periods, and negatively impacted net earnings in other periods.  *See*, 5-6, *supra*.  Plaintiffs do not and cannot allege that any Defendant could have foreseen at the time of the original financial disclosures and contingent consideration classification judgments whether those judgments would positively or negatively affect the Company's future reported earnings.

1  **V.    CONCLUSION**

2          For the foregoing reasons, Defendants respectfully request that the Court

3  dismiss the FAC in its entirety.

4  Dated:  February 18, 2020                    Respectfully submitted,

5

6                                               **MAYER BROWN LLP**
                                                GLENN K. VANZURA
7                                               KEVIN C. KELLY

8

9                                               By: */s/ Glenn K. Vanzura*
                                                    Glenn K. Vanzura

10                                              *Attorneys for Defendants KushCo*
                                                *Holdings, Inc., Nicholas*
11                                              *Kovacevich, Christopher Tedford,*
                                                *Jim McCormick and Chris Martin*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT