UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  8:19-cv-00798-JLS-KES                    Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                                    Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING (1) KUSHCO DEFENDANTS' MOTION TO DISMISS (Doc. 78) AND (2) RBSM DEFENDANTS' MOTION TO DISMISS (Doc. 80)**

Before the Court are two motions to dismiss: one filed on behalf of Defendants KushCo Holdings, Inc. ("KushCo"), Nicholas Kovacevich, Christopher Tedford, Jim McCormick, and Chris Martin (collectively, the "KushCo Defendants"); and one filed on behalf of Defendant RBSM LLP ("RBSM").  (KushCo Mot., Doc. 78; RBSM Mot., Doc. 80).  Plaintiffs opposed both motions (Opp'n, Doc. 87), and both sets of Defendants replied.  (KushCo Reply, Doc. 90; RBSM Reply, Doc. 90).  Having considered the parties' briefs and oral argument, for the reasons set forth below, the Court GRANTS Defendants' Motions to Dismiss.

I.      **BACKGROUND**[1]

This is a federal securities class action against the publicly-traded company KushCo, several of its top executives, and an independent accounting firm that audited

---

[1] For the purposes of Defendant's Motion to Dismiss under Rule 12(b)(6), the Court deems the well-pleaded allegations of Plaintiff's Complaint to be true.

_____
CIVIL MINUTES – GENERAL                                                             1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                    Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

the financial statements relevant to this case.  (First Amended Complaint ("FAC"), Doc. 59 at ¶¶ 1; 17–22).

### A.    The Acquisitions

KushCo supplies products, services, and marketing solutions to the legal cannabis and CBD industries in the United States and internationally.  (*Id.* ¶ 31).  The company "materially expanded" in 2017 and 2018, when it acquired three companies: CMP Wellness, LLC ("CMP"), "a privately held distributor of vaporizers, supplies, accessories, and branding solutions for the cannabis industry"; Summit Innovations, LLC ("Summit"), "a leading distributor of hydrocarbons to the cannabis industry"; and the Hybrid Creative, ("Hybrid") "a premier creative design agency for cannabis and non-cannabis brands."  (*Id.* ¶¶ 32, 63, 131, 134).  These acquisitions led to significant growth for KushCo; the first acquisition alone "increased KushCo's assets nearly five-fold."  (*Id.* ¶ 32).

KushCo filed SEC Forms 8-K announcing the acquisitions.  On May 4, 2017, KushCo filed an 8-K announcing the CMP acquisition; on April 10, 2018, KushCo filed an 8-K announcing the Summit acquisition; and on July 12, 2018, KushCo filed an 8-K announcing the Hybrid acquisition.  (*Id.* ¶¶ 33–35).  The 8-Ks stated that part of the consideration paid for each of the companies included contingent stock consideration, meaning that KushCo may have to pay "a variable amount of KushCo stock earnouts in the future, depending on the financial performance" of each acquired company after acquisition.  (*Id*).  In its quarterly and annual financial reports (Forms 10-Q and 10-K) following the acquisitions, KushCo disclosed that it had recorded the contingent stock consideration as equity rather than liability.  (FAC ¶¶ 65, 83, 90).  That accounting decision is at the center of this dispute.

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                              Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

### B.     Accounting Standards

#### 1.     Generally Accepted Accounting Principles

Generally Accepted Accounting Principles ("GAAP") are "the common set of accounting principles, standards, and procedures that companies in the United States use to prepare their financial statements."  (*Id.* ¶ 36).  The SEC has delegated authority for the promulgation of GAAP to the Financial Accounting Standards Board ("FASB.")  (*Id.* ¶ 37).  FASB's Accounting Standards Codification ("ASC"), along with SEC Rules and interpretations, "represent sources of authoritative GAAP for SEC registrants."  (*Id*).  In the context of an acquisition, companies must comply with GAAP provision ASC 805, "Business Combinations," which requires businesses to use the acquisition method of accounting.  (*Id.* ¶ 42).  The acquisition method involves allocating the purchase price to "identifiable assets acquired and liabilities assumed," along with recording goodwill.  (*Id*).

Contingent consideration (also known as "earnouts") are "obligation(s) of the acquirer to transfer additional assets or equity interests to the selling shareholders if future events occur or conditions are met."  (*Id.* ¶ 43, citing ASC 805-30-20).  Contingent *cash* consideration must be classified as a liability.  (*Id.* ¶ 43).  But contingent *stock* consideration "can be classified as either a liability or an equity."  (*Id*).  To determine how to properly classify contingent stock consideration, ASC 805-30-25-6 directs financial filers to "classify an obligation to pay contingent consideration as a liability or as equity in accordance with Subtopics 480-10 and 815-40 or other applicable [GAAP]."  (*Id.* ¶ 44; ASC 805-30-25-6).  Under ASC 480-10, contingent stock consideration should be classified as a liability "if, at inception, the monetary value of the obligation is based solely or predominantly on, *inter alia*, variations in something other than the fair value of the acquirer's equity shares."  (FAC ¶ 45, citing ASC 480-10-25-14).  As Plaintiffs explain, "[f]uture performance of the acquired company is an example of 'something other than the fair value of the acquirer's equity shares.'"  (FAC ¶ 45).  Although

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:19-cv-00798-JLS-KES | Date: September 25, 2020 |
| Title:  Joe W. May v. KushCo Holdings, Inc. et al | |

Defendants initially classified the contingent stock consideration as equity, they acknowledged in announcing their restatement that it should have been classified as a liability.  (*Id.* ¶ 143).

This distinction matters because classifying contingent stock consideration as a liability or an equity determines whether the fair value of the consideration is re-measured in each subsequent reporting period.  (FAC ¶ 53).  Contingent consideration is initially "measured at fair value as of the acquisition date."  (*Id.* ¶ 43, citing ASC 805-30-25-5).  If classified as a liability, the fair value is measured both "initially *and* in each subsequent reporting period," meaning that "changes in fair value . . . would affect earnings, and, if the estimate of fair value of contingent stock payments increased, alert investors to the increased cost of a transaction over the original estimate of consideration transferred to the sellers."  (*Id.* ¶ 53).  If classified as equity, however, the consideration is not remeasured.  (*Id.*, citing ASC 805-30-35-1).  Because KushCo classified the contingent stock consideration as equity, the consideration was not remeasured after the initial acquisition, and KushCo's investors were thus unable to ascertain "the impact of changes in fair value of contingent stock payments on the Company's earnings."  (*Id*).

    **C.**    **KushCo's Restatement**

On April 9, 2019, KushCo publicly announced that it would be restating its 2017 and 2018 Forms 10-K due to "'inadvertent errors in the accounting for certain shared-settled contingent consideration'" relating to the acquisitions of CMP, Summit, and Hybrid.  (*Id.* ¶ 143).  In its press release, KushCo stated that "'[u]pon further evaluation, the Company determined that the Contingent Consideration should have been accounted for as liabilities.'"  (*Id*).  The restated financial statements reflected the following: (1) an increase in net loss from $10.2 million to $24.3 million during the fiscal year ending August 31, 2018; (2) an increase in net income from $0.1 million to $1.7 million during the fiscal year ending August 31, 2017; (3) no impact on net revenue or gross profit for any of the restated fiscal periods; and (4) no impact on cash flows from operations for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-00798-JLS-KES | Date: September 25, 2020 |
| Title: Joe W. May v. KushCo Holdings, Inc. et al | |

any of the restated fiscal periods. (*Id*). On April 10, the trading day following this announcement, KushCo's stock price dropped 7.76%, or $0.45 per share. (*Id*).

Plaintiffs allege that, as investors in KushCo securities from July 13, 2017 to April 9, 2019 (the "Class Period"), they suffered damages as a direct result of Defendants' "knowing or reckless dissemination of materially false financial statements." (*Id.* ¶¶ 1, 3).

### D. The Role of RBSM

RBSM is KushCo's independent public accounting firm that certified the company's financial results for fiscal years 2017 and 2018. (*Id.* ¶ 10). Plaintiffs allege that RBSM "gave unqualified, clean audit opinions on KushCo's financial statements in the 2017 10-K and 2018 10-K," and "represented that KushCo's financial statements complied with GAAP." (FAC ¶ 97). But because "KushCo's financial statements deviated materially from GAAP . . . RBSM's audit opinions were materially false and misleading." (*Id*). Additionally, because the acquisitions at issue represented "significant unusual transactions," RBSM was required to "evaluate whether such transactions have been properly accounted for and disclosed in the financial statements." (*Id.*, citing AS 2110.13; AS 2401.67A). Plaintiffs allege that "[a]ny auditor would have seen the misclassification of contingent stock earnout in the CMP acquisition, and refused to provide a clean audit opinion unless the accounting was corrected." (*Id.* ¶ 109). RBSM's audit opinions were therefore "knowingly or recklessly false," and "amounted to no audit at all." (*Id*. ¶¶ 109, 113).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-00798-JLS-KES                      Date: September 25, 2020
Title: Joe W. May v. KushCo Holdings, Inc. et al

## II.    LEGAL STANDARD

### A.    12(b)(6) Generally

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.    Pleading Requirements under the PSLRA

Section 10(b) of the Securities Exchange Act of 1934 makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5, promulgated under the Act, provides, "It shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(c). Finally, Section 20(a) of the Act "makes certain 'controlling' individuals also liable for violations of section 10(b) and its underlying regulations." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (citing 15 U.S.C. § 78t(a)). "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)." *Id.*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                              Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

There are five elements required to state a claim under § 10(b) and Rule 10b-5: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)).  Here, the only element at issue is scienter.  (Mot., Doc. 78 at 8; Opp'n, Doc. 87 at 19).

At this stage, "a complaint stating claims under section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ('PSLRA')]." *Zucco*, 552 F.3d at 990.  The PSLRA imposes "[e]xacting pleading requirements" on securities fraud actions, requiring that the complaint "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citing 15 U.S.C. § 78u–4(b)(2)).  To adequately plead the "required state of mind" to support the element of scienter, plaintiffs must "allege the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*, 552 F.3d at 991 (internal citations omitted).  Deliberate recklessness goes beyond "merely simple, or even inexcusable negligence"; the allegations must demonstrate "an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.*  Finally, to qualify as a "strong inference" under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

There is, then, "an inevitable tension . . . between the customary latitude granted the plaintiff on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and the heightened pleading standard set forth under the PSLRA." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  As with any Rule 12(b)(6) motion, the Court will "accept all factual allegations in the complaint as true." *Tellabs*, 551 U.S. at 322.  The Court will also "consider the complaint in its entirety, as well as other sources courts ordinarily examine

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-00798-JLS-KES                    Date: September 25, 2020
Title: Joe W. May v. KushCo Holdings, Inc. et al

when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* In the context of the PSLRA, this examination involves the "dual inquiry" of, first, "whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter," and second, a "'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco*, 552 F.3d at 992. The Ninth Circuit has further clarified that a court may continue to engage in this two-step analysis as long as it "does not unduly focus on the weakness of individual allegations to the exclusion of the whole picture"; alternatively, it may conduct only a holistic review, mindful that it does not "simply ignore the individual allegations and the inferences drawn from them." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012).

Finally, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323. To do otherwise "would be to eviscerate the PSLRA's strong inference requirement by allowing plaintiffs to plead in a vacuum." *Gompper*, 298 F.3d at 897. Courts must therefore "consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Id.*

### III. DISCUSSION

#### A. Allegations of Scienter Against the KushCo Defendants

Plaintiffs' allegations of scienter are based on KushCo's restatement of its 2017 and 2018 financial statements to reclassify the contingent stock consideration as liability, rather than equity, in light of: (1) the alleged simplicity of the relevant GAAP provisions; (2) the magnitude and impact of the GAAP violations; (3) the KushCo Defendants' alleged awareness and appreciation of the GAAP violations, based on their high-ranking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                                         Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

positions, extensive accounting experience, and the importance of the underlying transactions; (4) the KushCo Defendants' alleged "motive and opportunity to artificially inflate the Company's stock price"; and (5) the dismissals of RBSM as KushCo's accounting firm and of Defendant Tedford as CFO following the company's restatement. (Opp'n, Doc. 87, 20–33).  For the reasons stated below, the Court holds that Plaintiffs' allegations—whether considered individually or collectively—fail to allege a strong inference of scienter.

### 1. Simplicity of the Relevant GAAP Provisions

It is well-settled within the Ninth Circuit that "a failure to follow GAAP, without more, does not establish scienter." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 621 (9th Cir. 2017) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994)).  Plaintiffs argue, however, that "the simple, basic nature of the GAAP provisions violated by the KushCo Defendants supports a strong inference that they 'were aware of the violations and consciously or intentionally implemented or supported them, or were reckless in this regard.'" (Opp'n, Doc. 87 at 21–22, citing *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 638 (E.D. Va. 2000)).

As an initial matter, Plaintiffs acknowledge that under the GAAP, contingent stock consideration "can be classified as either a liability or as equity." (FAC ¶ 44 (emphasis in original)).  Under ASC 480-10, contingent stock consideration should be classified as a liability "if, at inception, the monetary value of the obligation is based solely or predominantly on, *inter alia*, variations in something other than the fair value of the acquirer's equity shares." (*Id.* ¶ 45, citing ASC 480-10-25-14).  Defendants, however, argue that this determination is neither straightforward nor devoid of any accounting judgment, contending that KushCo reasonably, though mistakenly, determined that "the monetary value of the Contingent Stock Consideration *was* based upon the fair value of KushCo stock, at least in large part." (*See* KushCo Reply, Doc. 91 at 20; RBSM Reply,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                        Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

Doc. 90 at 3).  As described above, Plaintiffs' burden here is to plead facts supporting a strong inference not that Defendants were mistaken, negligent, or even "inexcusabl[y] negligent"—but that they were "deliberate[ly] reckless."  *Zucco*, 552 F.3d at 991.  And this inference must be at least as compelling as the opposing, plausible inference that Defendants made an "honest mistake."  (Mot., Doc. 78 at 27).

      Plaintiffs' allegation here falls far short of this standard, and the case law Plaintiffs rely upon in support is readily distinguishable from this case.  In *MicroStrategy*, the Eastern District of Virginia determined that "the alleged simplicity of the GAAP rules violated here are relevant and contribute probative weight to an inference of scienter."  *MicroStrategy*, 115 F. Supp. 2d at 638.  In that case, however, the defendants had not only violated the relevant accounting principle related to when revenue could be recognized for unexecuted contracts, but had also violated the company's own "publicly acknowledged policy of not recognizing revenues from an arrangement until 'evidence of the arrangement is provided . . . by a contract signed by both parties."  *Id.* at 637.  The violation of both GAAP *and* the company's own policy related to that GAAP made it "more likely that the Defendants were aware of the violations."  *Id.*  Here, unlike in *MicroStrategy*, there is no similar allegation that Defendants had also violated an internal company policy related to the classification of contingent stock consideration, such that an inference of scienter would be more likely.

      Additionally, Plaintiffs cite to *In re Medicis Pharmaceutical Corporation* for the proposition that "where GAAP provisions are relatively straightforward or basic . . . the inference of scienter may be much stronger."  *In re Medicis Pharm. Corp. Sec. Litig.*, No. CV-08-1821-PHX-GMS, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010).  The court further clarified:

> A plaintiff, however, cannot merely point at a GAAP principle and contend that a correct interpretation was simple or obvious. At the very least, the plaintiff must present facts demonstrating that the defendant was aware of the relevant GAAP principle and that this defendant knew how that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                                          Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

> principal was being interpreted. The plaintiff must then plead facts explaining how the defendant's incorrect interpretation was so unreasonable or obviously wrong that it should give rise to an inference of deliberate wrongdoing.

*Id.* This is precisely why, for example, an "important company policy" related to the relevant accounting provision makes the "inference of scienter . . . more probable." *Id.* (citing *MicroStrategy*, 115 F Supp. 2d at 637–38). In *In re Medicis*, the plaintiffs had not only alleged that the relevant GAAP was basic and straightforward, but also "that Medicis executives . . . emphasized the importance of the Company's return methodology and stated that the Company was not 'booking revenue in advance of future quarters,'" and that this methodology was one of the company's "most 'critical accounting policies.'" *In re Medicis*, 2010 WL 3154863, at *6. Such facts demonstrated that the defendants were "well aware" of both the relevant accounting standard "and the Company's interpretation of that provision." *Id.* Additionally, other courts had specifically addressed the accounting provision at issue and "noted its relative simplicity." *Id.* Here, the FAC lacks similar factual allegations and legal support demonstrating that the GAAP at issue here is so straightforward that its violation would support a strong inference of scienter.

     Further, KushCo disclosed that it had accounted for the acquisitions in accordance with ASC 805, and also disclosed that, for each acquisition, it had recorded the contingent cash consideration as liability and the contingent stock consideration as equity. (FAC ¶¶ 48, 63, 81, 87, 90). In other words, "KushCo accurately disclosed all material information necessary to judge whether the accounting rules were properly applied." (KushCo Reply, Doc. 91 at 14). If, as Plaintiffs allege, the "plain language of KushCo's SEC-filed disclosure demonstrates that the contingent stock earnout . . . was based on something other than the price of KushCo's stock" such that "application of ASC 805 and ASC 480

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                          Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

required no judgment, and was simple," these allegations more plausibly support the inference of a mistake, rather than an intent to deceive or defraud investors. (FAC ¶ 89); *see In re Taleo Corp. Sec. Litig.*, No. C 09-00151 JSW, 2010 WL 597987, at *10 (N.D. Cal. Feb. 17, 2010) ("Indeed, the fact that Defendants applied [the accounting provision] in such a consistent and transparent manner raises a plausible inference that Defendants' error was innocent.").

In short, Plaintiffs insufficiently plead—either individually or when viewed collectively with the remaining allegations discussed below—that the relevant GAAP was so simple and straightforward that its violation supports a strong inference of scienter.

### 2. Magnitude and Impact of the GAAP Violations

Plaintiffs also argue that KushCo's GAAP violations give rise to a strong inference of scienter because they "had a significant impact on KushCo's financial results by materially understating the Company's net losses for two consecutive fiscal years." (Opp'n, Doc. 87 at 22). KushCo's total net losses increased by 59% during the Class Period, from $18,314,458 to $31,260,307. (FAC ¶ 94). Additionally, the violations "allowed [KushCo] to overstate the Company's income for each quarter of 2018" (Opp'n, Doc. 87 at 22). Plaintiffs thus argue that the violations "dramatically affected [KushCo's] financial results, and in ways that strongly suggest a typical corporate executive should have noticed them." (*Id.* at 23 (citing *Magnachip Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016)). Although "allegations regarding the nature and magnitude of the alleged accounting violations will rarely be enough by themselves to show scienter," it may nonetheless be appropriate to "draw at least some inference of scienter" within the "holistic" framework of the Court's scienter inquiry. *Magnachip*, 167 F. Supp. 3d at 1042.

"Accounting errors that prove to have a significant impact on core business operations–*i.e.* cash, revenue, profits, liquidity, or viability of a product, sometimes give

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                       Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

rise to a compelling inference of scienter." *Id.* (internal citations omitted) (finding "some inference of scienter" from the fact that defendants had inflated total revenue by $121.7 million and total net income by almost 500%); *see also Batwin v. Occam Networks, Inc.*, No. CV 07-2750 CAS (SHX), 2008 WL 2676364, at *13 (C.D. Cal. July 1, 2008) (finding strong inference of scienter where defendants had "prematurely recognized approximately $9.3 million of revenue" over two fiscal years, causing defendants to "overstate its revenues for nearly every quarter between the beginning of 2004 and the middle of 2006, at times by over 30 and 40%").

      Here, KushCo's restated financials resulted in an increase in net loss from $10.2 million to $24.3 million during the fiscal year ending August 31, 2018, but had no impact on net revenue, gross profit, or cash flows from operations for any of the restated fiscal periods.  (FAC ¶ 143).  On the other hand, the restatement resulted in an increase in net income from $0.1 million to $1.7 million during the fiscal year ending August 31, 2017. *Id.*  And as Defendants persuasively argue, KushCo "could not have had any remote idea at the time of the original classifications *how much* a different classification might impact future reported earnings." (KushCo Reply, Doc. 91 at 13 n.2).  When KushCo's accounting error was corrected, "it positively impacted net earnings in some periods, and negatively impacted net earnings in other periods." (Mot., Doc 78 at 28 n.8).  This is a crucial distinction from the cases cited above.  While it would always be the case that prematurely recognizing revenue, for example, would overstate the revenue for that period and thus the significance of the impact would be known at the time the accounting decision was made, here the Defendants could not have known the significance of the misclassification—in either direction—at the time of the decision.  The Court therefore finds that the magnitude and impact of the violation does not support an inference of scienter.

         **3.**      **Defendants' Awareness and Knowledge of the GAAP Violations**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                   Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

Plaintiffs argue that "[s]trong circumstantial evidence" supports an inference of scienter with regards to Defendants Kovacevich, Tedford, McCormick, and Martin (the "Individual Defendants").  (Opp'n, Doc. 87 at 24).

First, Plaintiffs allege that "Defendants were high-ranking officers of KushCo who signed the Company's SEC filings, and who directly participated and were involved in the Company's management and operations." (*Id.*; FAC ¶¶ 18–26).  However, Plaintiffs do not offer any specific facts to support these general claims.  The FAC instead relies on boilerplate allegations that each of the Individual Defendants was, for example, "directly involved in the day-to-day operations of the Company at the highest levels"; "directly or indirectly involved in drafting, producing, reviewing and/or disseminating some or all of the false and misleading statements and information alleged herein"; and "was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company."  (FAC ¶ 26).

As the Ninth Circuit "has noted on more than one occasion, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087–88 (9th Cir.2002)).  Here, the Complaint is completely devoid of any "additional allegation[s]," and also impermissibly groups all of the Individual Defendants together, with no particularized facts alleged as to each Defendant.  Such allegations are insufficient to satisfy the particularized pleading required of the PSLRA.  *See In re Am. Apparel, Inc. Shareholder Litig.*, No. CV 10-06352 MMM JCGX, 2013 WL 174119, at *25 (C.D. Cal. Jan. 16, 2013) ("Courts within the Ninth Circuit have also largely concluded that group pleading is not compatible with the PSLRA's requirements.") (collecting cases).

Second, Plaintiffs allege that the "Individual Defendants each certified under SOX that the Company's financial statements were accurate, despite knowing at the time that they had violated GAAP to improperly inflate the Company's financial results."  (Opp'n,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:19-cv-00798-JLS-KES | Date: September 25, 2020 |
| Title: Joe W. May v. KushCo Holdings, Inc. et al | |

Doc. 87 at 24; FAC ¶ 27). Again, these allegations plainly fail to establish a strong inference of scienter. The Ninth Circuit has expressly held that "Sarbanes–Oxley certifications are not sufficient, without more, to raise a strong inference of scienter," and do not make "otherwise insufficient allegations more compelling by their presence in the same complaint." *Zucco*, 552 F.3d at 1004 (internal citations omitted).[2] Further, "conclusory assertions about the defendants' scienter" are likewise lacking the requisite particularity to plead a strong inference of scienter. *Id.*

Third, Plaintiffs allege that the Individual Defendants have "extensive professional and educational backgrounds in finance and auditing," which "supports an inference that they knew of and appreciated their GAAP violations. (FAC ¶¶ 19–21; Opp'n Doc. 87 at 25). Plaintiffs allege that "McCormick is a CPA and CIA; Martin is a CPA who previously managed an accounting firm that specialized in auditing, due diligence for mergers and acquisitions and SOX compliance; and Tedford lists his own strengths as SOX Compliance and Business Combinations." (Opp'n, Doc. 87 at 87). Further, when announcing Tedford's hiring as CFO, KushCo "described Tedford's previous senior level positions at Big 4 accounting firms KPMG LLP and Deloite & Touche LLP." (*Id*). While courts may consider the relative sophistication and experience of the defendants in evaluating scienter, *see, e.g.*, *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1157 (S.D. Cal. 2008), Plaintiffs here fail to connect "each Defendant's general experience to actual knowledge that the specific accounting classifications at issue here were wrong." (KushCo Reply, Doc. 91 at 23) (emphasis omitted). Courts have found much more specific allegations of knowledge of underlying accounting rules to nonetheless fail to allege scienter. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (finding allegations insufficient to give rise to an inference of scienter even

---

[2] Plaintiffs selectively quote *Magnachip* to imply that SOX certifications, standing alone, can make "a compelling claim of scienter." (Opp'n, Doc. 87 at 24, citing *Magnachip* 167 F. Supp. 3d at 1043). However, the court in *Magnachip* clearly stated that such "allegations by themselves are not sufficient to plead scienter"; rather, it can be viewed as "part of a broader picture from which a court may, at the initial pleading stage, infer a compelling claim of scienter." *Id.* This is in line with this Court's earlier articulation of the "holistic" analysis of scienter allegations established by the Ninth Circuit and applied in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:19-cv-00798-JLS-KES | Date: September 25, 2020 |
| Title:  Joe W. May v. KushCo Holdings, Inc. et al | |

where confidential witness statements demonstrated that the defendants "were hands-on managers who generally understood the company's accounting obligations" and were "knowledgeable and adept with complex accounting rules and issues").  General allegations concerning Defendants' education or professional background likewise fail to support a compelling inference of scienter, absent specific allegations that the defendants were familiar with the application of the relevant accounting principle here.

Finally, Plaintiffs' remaining allegations concerning the Individual Defendants' knowledge similarly lack the particularity required under the PSLRA.  Plaintiffs generally allege that the Individual Defendants' must have had actual knowledge of the correct application of ASC 805 to the terms of the earnout agreements because Defendant Kovacevich "signed the merger agreements for the CMP and Summit acquisitions"; the KushCo Defendants represented to investors that "they had processes in place to analyze relevant GAAP provisions"; the Individual Defendants "expressly confirmed in SEC filings and other public documents" that they had "applied ASC 805 to the accounting for the KushCo Acquisitions"; and that KushCo's restated 2018 financial results noted that the company's management, including Defendants Kovacevich and Tedford, "concluded that we did not maintain effective internal control over financial reporting."  (Opp'n, Doc. 26–27).  However, for reasons similar to those stated above, these generalized allegations fail to plead specific facts related to each Defendant's knowledge of the underlying accounting principles, much less their intentional misapplication of them.  *See DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002) ("To allege a 'strong inference of deliberate recklessness,' [plaintiffs] 'must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity.'"

Nor is the fact that the three acquisitions were "major transactions that transformed the company" (FAC ¶ 108) enough to save Plaintiffs' otherwise threadbare allegations of scienter with regard to the Individual Defendants.  In *Patel v. Axesstel*, cited by Plaintiffs, the court held that while the defendants "did not have to review every detail of [five contracts accounting for 20-40% of the company's revenue], it was deliberately and consciously reckless for them to fail to at least confirm that such

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                             Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

contracts existed."  *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 631525, at *9 (S.D. Cal. Feb. 13, 2015).  The allegation here is readily distinguishable from such a fundamental failure, and does not provide support for the inference that Defendants' conduct represented "an extreme departure from the standards of ordinary care."  *Zucco*, 552 F.3d at 991.

### 4. Motive

Plaintiffs also allege that the KushCo Defendants had "the motive and opportunity to artificially inflate the Company's stock price," because, "[b]y violating GAAP, the KushCo Defendants avoided remeasuring the fair value of the contingent stock consideration, concealing the Company's actual losses and improperly inflating KushCo's financial results and stock price."  (Opp'n, Doc. 87 at 30; FAC ¶¶ 145–47).  In support, Plaintiffs rely on *Daou*, in which the complaint alleged that the company "acquired 11 companies by exchanging over 6.6 million shares of [artificially inflated company] stock."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1023 (9th Cir. 2005).  However, the defendants in *Daou* also "sold a total of 1,477,718 shares during the class period for a total of $30,512,393, and in doing so, they knowingly 'profited from the fraud.'"  *Id.* at 1024.  These sales were "made at suspicious moments . . . indicative of coordinated selling among defendants."  *Id.*  The Ninth Circuit stated that neither the "suspicious stock sales" nor the "corporate acquisitions *alone*" would likely create a strong inference of scienter, but when considered together—along with the allegations of the company's top-to-bottom management hierarchy—the court determined that plaintiffs had sufficiently pled scienter.  *Id.*

Here, in contrast, Plaintiffs' allegations of motive do not sufficiently plead scienter, whether viewed individually or holistically.  First, as described above, Defendants' alleged motive to artificially increase KushCo's stock price, in order to use fewer shares of Company stock as consideration to purchase Summit and Hybrid, are undercut by Defendants' persuasive argument that "a company cannot determine *at the*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:19-cv-00798-JLS-KES                                         Date: September 25, 2020
Title:  Joe W. May v. KushCo Holdings, Inc. et al

*time of classification* whether electing to treat the contingent consideration as a liability (re-measurement required) versus equity (no re-measurement required) will have a positive, negative or neutral impact on earnings reported in the future." (Mot., Doc. 78 at 14). Plaintiffs do not dispute this basic fact. (*See* Opp'n, Doc. 87). Second, Plaintiffs do not allege that any of the Defendants sold KushCo stock while it was artificially inflated, further undercutting their allegations of scienter. *See Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ([W]e have recognized that a lack of stock sales can detract from a scienter finding.")

### 5.     Dismissals of RBSM and Defendant Tedford

Finally, Plaintiffs allege that following KushCo's restatement, the company's audit committee "had approved the dismissal of RBSM as KushCo's independent public accounting firm." (Opp'n, Doc. 87 at 32). Additionally, on March 26, 2020, KushCo announced that "'it was determined that [Defendant] Christopher Tedford would step down' as CFO." (*Id*). Plaintiffs argue that the most plausible inference to be drawn from these dismissals is that both Tedford and RBSM "had been fired" because they "knew or should have known of accounting improprieties . . . and material weaknesses in internal controls over financial reporting that led to KushCo's restatement." (*Id*). (internal citations omitted). However, these allegations are supported only by Plaintiffs' speculations, which do not give rise to a strong inference of scienter. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (finding that the plaintiff's "corporate reshuffling allegations" were "unpersuasive," because the plaintiff pled "no facts to rebut the 'reasonable assumption' that the reshuffling 'occurred as a result of [the] restatement's issuance itself").

In sum, Plaintiffs' allegations, even when viewed holistically, fail to meet the "[e]xacting pleading requirements" of the PSLRA. *See Tellabs*, 551 U.S. at 313.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:19-cv-00798-JLS-KES            Date: September 25, 2020
Title: Joe W. May v. KushCo Holdings, Inc. et al

### B. Allegations of Scienter Against RBSM

To adequately allege scienter against an auditor, "[t]he Ninth Circuit requires a plaintiff to 'prove that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.'" *Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199, 1205 (C.D. Cal. 2012), *aff'd sub nom. Buttonwood Tree Value Partners, L.P. v. Sweeney*, 667 F. App'x 238 (9th Cir. 2016) (citing *Dannenberg v. Painewebber Inc. (In re Software Toolworks Sec. Litig.)*, 50 F.3d 615, 628 (9th Cir.1994). Sufficiently pleading a strong inference of scienter against an auditor is difficult "'because outsider auditors have more limited information than, for example, the company executives who oversee the audit' and because 'an auditor exercises complex and subjective professional judgments that courts are not ideally positioned to second guess.'" *Id.* (citing *N.M. State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1097 (9th Cir.2011)).

Here, Plaintiffs' allegations of scienter against RBSM are similarly based on KushCo's voluntary restatement in light of the following alleged facts: (1) the simplicity of the GAAP analysis; (2) the magnitude and length of the time of the GAAP violations; (3) the Defendants' alleged awareness of the relevant GAAP principles, and (4) the importance of the acquisitions to KushCo. (Opp'n, Doc. 87 at 42). The Court already addressed these allegations at length with regard to the KushCo Defendants, where it determined that these allegations were deficient to plead scienter. The Court likewise determines that Plaintiffs fail to adequately plead scienter against RSBM, particularly in light of the even more onerous standard to plead scienter against an accounting firm.

### IV. CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:19-cv-00798-JLS-KES | Date: September 25, 2020 |
| Title:  Joe W. May v. KushCo Holdings, Inc. et al | |

    For the foregoing reasons, the Defendants' Motions to Dismiss are GRANTED. Plaintiffs are granted leave to file an amended pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations.  Plaintiffs may not add claims or new defendants to their pleading.  Should Plaintiffs elect to file an amended pleading, it shall be filed within **twenty-one (21) days of the date of this Order.**  Failure to timely file an amended complaint will result in the dismissal of this action and closing of the case without further notice.

Initials of Preparer:  mku